**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| LUIS TORRES, ALLIA DEANGELIS, DARRICK INMAN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) Case No. 3:20-CV-3464-S ) |
| Plaintiffs, | ) **PLAINTIFFS' MEMORANDUM IN** ) **OPPOSITION TO DEFENDANTS'** ) **MOTION TO DISMISS THE AMENDED** ) **CLASS ACTION COMPLAINT** |
| v. | ) ) JUDGE KAREN G. SCHOLER |
| BERRY CORPORATION, ARTHUR T. SMITH, CARY BAETZ, GARY A. GROVE, BRENT S. BUCKLEY, KAJ VAZALES, and EUGENE J. VOILAND, | ) ) ) ) ) |
| Defendants. | ) ) ) ) ) |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

LEGAL STANDARDS .................................................................................................... 5

     I.      Securities Act Claims.................................................................................... 5

     II.     Exchange Act Claims.................................................................................... 7

ARGUMENT .................................................................................................................... 8

     I.      Plaintiffs Adequately Plead Section 11 Claims Pursuant to Rule 8........................ 8

     II.     Defendants Cannot Satisfy Regulation S-K's Heightened Disclosure
           Requirements .......................................................................................... 10

     III.    The Complaint Sufficiently Alleges Violations of the Exchange Act .................. 13

           A.     The CW Accounts Demonstrate Falsity .................................................. 14

                 1.     Defendants' Fictitious "Disclosure" Defense Fails ...................... 16

                 2.     Mischaracterization of Statements as "Opinions" is
                     Insufficient to Support Dismissal.................................................. 17

           B.     The Complaint Pleads a Powerful Inference of Scienter ......................... 18

           C.     The Complaint Adequately Pleads
                Loss Causation ...................................................................................... 20

CONCLUSION................................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. MiMedx Grp., Inc.*,
37 F. Supp. 3d 1271 (N.D. Ga. 2014) ........................................................................24

*Acticon AG v. China N. E. Petroleum Holdings, Ltd.*,
692 F.3d 34 (2d Cir. 2012).........................................................................................24

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................................10, 24

*Aldridge v. A.T. Cross Corp.*,
284 F.3d 72 (1st Cir. 2002).........................................................................................20

*Am. Realty Trust, Inc. v Hamilton Lane Advisors, Inc.*,
115 Fed. Appx. 662 (5th Cir. 2004)..............................................................................6

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005) ......................................................................................16

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) ..........................................................................9

*Centurytel of Chatham, LLC v. Sprint Communs. Co., L.P.*,
861 F.3d 566 (5th Cir. 2017) ......................................................................................22

*Correa v. Liberty Oilfield Servs.*,
No. 1:20-cv-00946-RBJ, 2021 U.S. Dist. LEXIS 128953 (D. Colo. July 12,
2021) ..........................................................................................................................12

*Crutchfield v. Match Grp., Inc.*,
No. 3:19-CV-2356-S, 2021 U.S. Dist. LEXIS 224412 (N.D. Tex. Nov. 19,
2021) ............................................................................................................................3

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).....................................................................................................20

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
270 F.3d 645 (8th Cir. 2001) ......................................................................................20

*Hall v. Rent-A-Center, Inc.*,
No. 4:16-cv-978, 2017 U.S. Dist. LEXIS 205847 (E.D. Tex. Dec. 14, 2017) ..........9

*Harden v. Raffensperger, Hughes & Co.*,
   65 F.3d 1392 (7th Cir. 1995) ........................................................................................16

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983)........................................................................................................5

*Holzwasser v. Staktek Holdings, Inc.*,
   No. A-05-CA-239-LY, 2006 U.S. Dist. LEXIS 100346(W.D. Tex. Mar. 30,
   2006) ............................................................................................................................5, 6

*Howard v. Arconic Inc.*,
   395 F. Supp. 3d 516 (W.D. Pa. 2019)............................................................................13

*In re Dynegy, Inc. Sec. Litig.*,
   339 F. Supp. 2d (S.D. Tex. 2004) .......................................................................5, 6, 8, 10

*In re EDS Corp. Secs. & ERISA Litig.*,
   298 F. Supp. 2d 544 (E.D. Tex. 2004)............................................................................24

*In re Enron Sec. Litig.*,
   258 F. Supp. 2d 576 (S.D. Tex. 2003) .............................................................................6

*In re Facebook, Inc.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013)............................................................................12

*In re Hous. Am. Energy Corp. Sec. Litig.*,
   970 F. Supp. 2d 613 (S.D. Tex. 2013) ...........................................................................18

*In re Initial Public Offering Sec. Litig.*,
   339 F. Supp. 2d 298 (S.D.N.Y. 2005)............................................................................22

*In re Kosmos Energy Ltd. Secs. Litig.*,
   955 F. Supp. 2d 658 (N.D. Tex. 2013) .............................................................................9

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005)............................................................................22

*In re Pilgrim's Pride Corp. Secs. Litig.*,
   No. 2:08-cv-419-TJW, 2010 U.S. Dist. LEXIS 84260 (E.D. Tex. Aug. 17,
   2010) ...........................................................................................................................6, 24

*In re Venator Materials PLC Sec. Litig.*,
   No. 4:19-cv-03464, 2021 U.S. Dist. LEXIS 130670 (S.D. Tex. July 7, 2021) ......................10

*In re Williams Sec. Litig.*,
   496 F. Supp. 2d 1195 (N.D. Okla. 2007)........................................................................22

iii

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
403 F.3d 1050 (9th Cir. 2005) ..................................................................................16

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
238 F.3d 363 (5th Cir. 2001) ......................................................................................6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2014)......................................................................................23

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ............................................................................ *passim*

*Lowthrop v. Mesa Air Grp. Inc.*,
No. CV-20-00648-PHX-MTL, No. 2021 U.S. Dist. LEXIS 136967 (D. Ariz.
July 22, 2021).............................................................................................................12

*Matrixx Initiatives, Inc. v. Siracusano*,
573 U.S. 27 (2011)......................................................................................................7

*Melder v. Morris*,
27 F.3d 1097 (5th Cir. 1994) ......................................................................................7

*Mingbo Cai v. Switch, Inc.*,
No. 2:18-cv-01471-JCM-VCF, 2019 U.S. Dist. LEXIS 116702 (D. Nev. July
12, 2019) ...................................................................................................................13

*Mun. Employees' Ret. Sys. v. Pier 1 Imps., Inc.*,
935 F.3d 424 (5th Cir. 2019) ....................................................................................20

*North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*,
929 F. Supp. 2d 740 (M.D. Tenn. 2013)....................................................................23

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019) ..............................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175, 135 S. Ct. 1318 (2015).......................................................................17

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D Cal. 2020) ........................................................................13

*Prause v. TechnipFMC, PLC*,
2019 U.S. Dist. LEXIS 44230 (S.D. Tex. Jan. 18, 2019) ..........................................8

*Ramirez v. Exxon Mobil Corp.*,
334 F. Supp. 3d 832 (N.D. Tex. 2018) ................................................................17, 18

*Ret. Sys. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ..................................................................................21, 22

*Rougier v. Applied Optoelectronics, Inc.*,
No. 4:17-CV-2399, 2019 U.S. Dist. LEXIS 199050 (S.D. Tex. Mar. 27, 2019).....................17

*SEC v. Daubenspeck*,
469 F. Supp. 3d 859 (N.D. Ill. 2020) ...........................................................................19

*Shaw v. Digital Equip. Corp.*,
82 F.3d 1194 (1st Cir. 1996)......................................................................................16

*Silverstrand Invs. v. AMAG Pharms., Inc.*,
707 F.3d 95 (1st Cir. 2013)................................................................................11, 12, 13

*Spitzberg v. Hous. Am. Energy Corp.*,
758 F.3d 676 (5th Cir. 2014) ............................................................................. *passim*

*Stratte-Mcclure v. Stanley*,
776 F.3d 94 (2d Cir. 2015)........................................................................................11

*Sundunagunta v. Nantkwest, Inc.*,
No. CV 16-01947-MWF, 2017 U.S. Dist. LEXIS 228535 (C.D. Cal. May 16,
2017) .................................................................................................................6

*Tellabs, Inv. v. Makor Issue & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................................................5, 7

*Turocy v. El Pollo Loco Holdings, Inc.*,
No. SACV 15-1343-DOC, 2017 U.S. Dist. LEXIS 123458 (C.D. Cal. Aug. 4,
2017) ................................................................................................................19

*United States ex rel. Haight v. RRSA (Commer. Div.), LLC*,
No. 3:16-CV-1975-S, 2021 U.S. Dist. LEXIS 82894 (N.D. Tex. Apr. 30,
2021) ................................................................................................................11

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991)..............................................................................................23

*Walker v. Rent-A-Center*,
No. 5:02-CV-3-DF, 2005 U.S. Dist. LEXIS 63595 (E.D. Tex. July 25, 2005).......................11

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ....................................................................................20

*Zhang Yang v. Nobilis Health Corp.*,
No. 4:19-CV-145, 2020 U.S. Dist. LEXIS 167737 (S.D. Tex. Sept. 14, 2020) ..................7, 14

**Statutes**

Securities Exchange Act of 1934 ......................................................................... *passim*

Private Securities Litigation Reform Act............................................................... *passim*

Securities Act of 1933 (15 U.S.C. § 77k) ............................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 8 ....................................................................... *passim*

Federal Rule of Civil Procedure 9(b)............................................................................6, 7

Federal Rule of Civil Procedure 12(b)...........................................................................5

**INTRODUCTION**

Plaintiffs' Amended Class Action Complaint (the "Complaint") alleges straightforward violations of Section 11 of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Exchange Act of 1934 ("Exchange Act") that arise from misrepresentations and omissions that Berry Corporation ("Berry" or the "Company") and certain officers and directors made in a Registration Statement used to raise funds from investors in a July 2018 Initial Public Offering ("IPO"), and for more than two years after. Before the Registration Statement became effective, the Company knew that the failure to secure timely permits from regulators to develop and produce oil was a major threat to its business and the Company had already failed to receive the necessary permits months before the IPO as confirmed by multiple Confidential Witnesses ("CW"), including a neutral third-party consultant specifically hired to streamline the permitting process. The Company omitted to disclose these material facts in the Registration Statement, and instead misleadingly described the risk of delays in receiving permits and the consequences thereof as remote. These facts are more than sufficient to plead Securities Act claims under Rule 8's liberal notice pleading standard. Nothing more is required.

After the Company went public, a CW states that the failure to secure timely permits became a drastic problem no later than June 2019, and six other CWs, all of whom either have direct knowledge of the drilling sites or were responsible for working on permit applications, confirm that Berry's own internal deficiencies, including the failure to appropriately plan ahead or submit error free applications, principally resulted in a lack of timely permits and ultimately caused the Company to initiate a cost reduction plan that Defendants continue to falsely blame on external factors. At this stage, these undisclosed facts are adequate to explain the misleading nature of Defendants' (1) repeated denials of a "permitting problem," (2) constant attempts to minimize the severity of the problem, and (3) objective representations that the process was then working with

1

"speed" and "efficiency" and, in fact, resulted in a large inventory of permits on-hand that would allow the Company to achieve its present and future goals. Neither the Private Securities Litigation Reform Act ("PSLRA") nor direct precedent from the Fifth Circuit requires Plaintiffs to do anything other than to plead a basis to explain *why* the statements are false. The Complaint easily passes this test.

Courts in this Circuit are clear that a plaintiff does not need to produce evidence to plead a strong inference of scienter. Nevertheless, the Complaint contains direct evidence of scienter such as text messages, contemporaneous notes of meetings where Defendants were warned that permit flow and plans did not match production targets and similar accounts of Defendants' knowledge from multiple CWs, who were in the room with Defendants when permitting problems were discussed at length. Defendants, in fact, admitted after the Class Period that the failure to secure timely permits first caused the Company to revise its goals downwards, conceding the falsity of the claim that the Company "[did] not have a permitting problem." These facts are more than sufficient to plead an inference of fraud that is as compelling as any opposing inference that can be drawn from the face of the Complaint.

Defendants' motion to dismiss is an exercise in intense deflection that engages with imagined allegations, and deliberately seeks to turn the pleading standards on their head. Defendants repeatedly reach for facts outside the pleadings to contradict the Complaint's well-pled allegations based on inappropriate and unauthenticated material that has no place on a motion to dismiss. As fully explained in Plaintiffs' Motion to Strike, the Court should not consider any document that Defendants misuse to press unsubstantiated theories about market conditions, oil price wars or COVID-19 to justify their misconduct. Inexplicably, Defendants mischaracterize Supreme Court precedent and ignore Circuit precedent in an attempt to insert improper material at

this stage to support the absurd claim that courts do not draw all inferences in favor of the plaintiffs in securities cases, ECF No. 65 at 4, but the Court is well aware that this assertion is false. *See Crutchfield v. Match Grp., Inc.*, No. 3:19-CV-2356-S, 2021 U.S. Dist. LEXIS 224412, at \*2-3 (N.D. Tex. Nov. 19, 2021) (sustaining securities fraud claims and emphasizing that the Court must accept "well-pleaded facts as true and view them in the light most favorable to the plaintiff."). In any event, Defendants' "alternative facts" are directly contradicted by CW accounts that Berry's permitting problems were of its own making and *not* caused by any regulatory changes, market conditions or negative effects related to the pandemic. As fully detailed herein, Defendants' arguments related to the elements of scienter and loss causation also directly conflict with Circuit precedent and are without any legal merit.

For these reasons, Plaintiffs respectfully request that the Court deny the motion to dismiss in full.

## STATEMENT OF FACTS

Berry almost exclusively developed and produced conventional oil reserves in California where the oil and gas industry is heavily regulated, and oil producers are required to obtain a variety of permits from the regulators to drill and efficiently produce oil. ¶¶27-29. In its SEC filings, the Company has repeatedly admitted that the recovery of oil is heavily dependent on the issuance of timely permits. ¶29. Throughout the Class Period, Defendants claimed that the risk of permitting delays was just an unrealized possibility, ¶¶71-74, the Company had already planned well in advance to mitigate such risks with "speed" and "efficiency," ¶¶84, 86, and Defendants either repeatedly denied the existence of a "permitting problem," ¶¶88, 92, 94, or minimized its severity as "a tiny issue," ¶¶90, 96, 98 in their statements to investors. In fact, Defendants affirmatively told investors that the Company had implemented an "intense permitting program" and procured hundreds of permits to drill additional wells. ¶¶100, 102, 104, 106.

3

The Complaint relies on the detailed accounts of seven CWs to plead that Defendants' statements were materially misleading when made. The CWs were drilling managers, production managers, asset managers, regulatory managers and regulatory supervisors with direct knowledge of Berry's drilling sites, production targets and permitting program. ¶¶37-39, 54, 58-59. One of the CWs is a neutral third-party consultant hired to streamline the Company's permitting process. ¶¶62-64. The interlocking accounts of the CWs corroborate that: (1) chronic internal deficiencies of Defendants' own making resulted in the failure to secure timely permits before the Company went public and senior management was then aware of this "threat" to the Company, ¶72; (2) Defendants repeatedly failed to plan sufficient lead time to secure Underground Injection Control ("UIC") Permits, which allow the injection of steam into oil wells to increase production, ¶¶4, 6, 37, 59; (3) Defendants repeatedly submitted faulty data in application packages, which resulted in the denial of permits by local regulators, ¶¶4, 44, 53, 55, or incorrect well plans that did not match the location of the permit, ¶69; (4) Defendant Grove flouted regulations that required UIC permits for cyclic steam wells, ¶¶47, 51; (5) the problems became drastic no later than June 2019, and (6) the problems actually caused the Company to fall behind on its production goals during the Class Period. ¶5.

That Defendants knew about these facts before they made inconsistent statements in public cannot be the subject of reasonable dispute. Defendants concede that Megan Silva ("Silva") was hired to address permitting risks, but have no real response to CW1's contemporaneous notes from a meeting with CW1, Smith and Baetz where Silva warned that the production targets did not match *permit flow* or the implementation plan as opposed to Defendants' manufactured excuses regarding COVID-19, oil price wars and general market conditions. ¶¶108-10. The Complaint contains the actual contents of text messages between CW1 and Grove that demonstrate Grove's

knowledge about the Company's failure to build sufficient lead time to receive permits before he made material misrepresentations. ¶¶111-12. It identifies numerous meetings where the CWs met with the Defendants to discuss permitting problems during the Class Period. ¶¶115-20. A Long Lead Planning Dashboard ("LLPD") developed by CW4, which tracked granular details about permits, including any issues that arose during the process, was regularly shown to Smith and Grove throughout the Class Period. ¶¶116-17. It is very hard to imagine what other information a plaintiff can be forced to plead without conducting a trial by paper or imposing a requirement to provide a smoking gun at the outset, both of which are not allowed under Supreme Court and Fifth Circuit precedent, if this troubling information is not sufficient to plead scienter.

## LEGAL STANDARDS

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted). Even in securities cases, courts must "accept all factual allegations in the complaint as true," *Tellabs, Inv. v. Makor Issue & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and "draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232. Dismissal is unwarranted unless the Court determines "that the plaintiff cannot prove any set of facts that would allow relief under the allegations in the complaint." *Holzwasser v. Staktek Holdings, Inc.*, No. A-05-CA-239-LY, 2006 U.S. Dist. LEXIS 100346, at *4 (W.D. Tex. Mar. 30, 2006).

## I.    Securities Act Claims

Section 11 imposes liability if a registration statement contains untrue statements or omits to state material facts. 15 U.S.C. § 77k. Liability for such claims is strict, and even innocent misstatements are actionable. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). Scienter is not required to plead these claims. *In re Dynegy, Inc. Securities Litigation*, 339 F. Supp. 2d 804, 826 (S.D. Tex. 2004). Notice pleading under Rule 8 is sufficient and the

5

particularity requirements of neither the PSLRA nor Rule 9(b) are required. *Staktek*, 2006 U.S. Dist. LEXIS 100346, at *13.

Contrary to Defendants' conclusory claims, Plaintiffs' Section 11 claims do not sound in fraud. Defs.' Mem. at 11. The mere fact that Plaintiffs assert both Section 10(b) and Section 11 claims based on related facts is wholly insufficient to circumvent Rule 8's minimal pleading burden. *Am. Realty Trust, Inc. v Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 668-69 & n.30 (5th Cir. 2004) (refusing to impose Rule 9(b) when plaintiffs properly distinguished between their fraud and negligent misrepresentation claims); *In re Pilgrim's Pride Corp. Secs. Litig.*, No. 2:08-cv-419-TJW, 2010 U.S. Dist. LEXIS 84260, at *10-11 (E.D. Tex. Aug. 17, 2010) (applying Rule 8 to Section 11 claims where, like here, the plaintiffs relied on different statements in the prospectus for their negligence claims, disclaimed reliance on fraud and did not incorporate all the allegations related to the Exchange Act claims). *See also Sundunagunta v. Nantkwest, Inc.*, No. CV 16-01947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228535, at *18 (C.D. Cal. May 16, 2017) (applying Rule 8 to Section 11 claims where the Securities Act claims and the Exchange Act claims were delineated in exactly the way that they are pled in this Action); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368-69 (5th Cir. 2001) (holding that Rule 9(b) cannot apply to claims that expressly disclaim reliance on fraud); *Dynegy*, 339 F. Supp. 2d at 827-28 (same); *In re Enron Sec. Litig.*, 258 F. Supp. 2d 576, 639 (S.D. Tex. 2003) (same).

Here, the Complaint not only expressly states that the Section 11 claims *do not* sound in fraud, ¶¶82, 139, but there are different defendants for the claims (*compare* ¶140 *with* ¶155) and the Complaint clearly organizes and distinguishes the Section 11 claims from the Exchange Act claims. *Compare* ¶¶71-75 *with* ¶¶82-123. *See Pilgrim's Pride*, 2010 U.S. Dist. LEXIS 84260 at *10-11 (declining to apply Rule 9(b) to Section 11 claims based on offering documents where the

6

same claims were not raised against the same defendants and the Exchange Act claims were predicated on different statements).  For these reasons, only Rule 8's liberal and minimal pleading standard applies to Plaintiffs' Section 11 claims.[1]

## II.        Exchange Act Claims

The elements of an Exchange Act claim under Section 10(b) are: (1) material misrepresentations or omissions; (2) scienter; (3) a connection between the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).  Here, Defendants challenge falsity, scienter and loss causation.  The Fifth Circuit has held that the PSLRA's heightened pleading standard does not apply to any element except for scienter.  *Lormand*, 565 F.3d at 267 (holding that the PSLRA does not alter the pleading standard for any element of an Exchange Act claim except for scienter); *Zhang Yang v. Nobilis Health Corp.*, No. 4:19-CV-145, 2020 U.S. Dist. LEXIS 167737, at *5 & n.1 (S.D. Tex. Sept. 14, 2020) (rejecting report and recommendation in part because the magistrate judge improperly applied a heightened pleading standard to analyze falsity).  In assessing scienter, "the court must review all the allegations holistically."  *Matrixx Initiatives, Inc.*, 563 U.S. at 48 (internal quotation marks omitted).  The inference of scienter does not need to be "irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences."  *Tellabs, Inc.*, 551 U.S. at 324 (internal quotation marks omitted).  A tie of inferences breaks in favor of the

---

[1] Defendants' reliance on *Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) is utterly misplaced. Defs.' Mem. at 11.  In that case, the claims were subject to the heightened pleading standards of Rule 9(b) "in light of the complaint's wholesale adoption of the allegations under the securities fraud claims for purposes of the Securities Act claims." There is no basis to contend that Plaintiffs engaged in "wholesale adoption" of all allegations predicated on fraud to plead their Securities Act claims. *Id.* at 1100, n.6.  To the contrary, the Securities Act claims expressly disclaim reliance on fraud and, with the exception of one paragraph related to the Registration Statement, rely on different misleading statements made at different times in completely different documents. *See e.g.*, ¶¶71-75, 82, 139-47.

Plaintiffs at the pleading stage, and Defendants must demonstrate a more compelling inference of innocence to prevail on a motion to dismiss.  *Lormand*, 565 F.3d at 254.

<div align="center">

**ARGUMENT**

</div>

### I.    Plaintiffs Adequately Plead Section 11 Claims Pursuant to Rule 8

The Complaint sufficiently pleads "(1) an omission or misstatement, (2) of a material fact required to be stated or necessary to make other statements made not misleading."  *In re Dynegy Inc. Sec. Litig.*, 339 F. Supp. 2d at 826; *see also* 15 U.S.C. § 77k(a); *Prause v. TechnipFMC, PLC*, Case No. 4:17-CV-02368, 2019 U.S. Dist. LEXIS 44230, at *11-13 (S.D. Tex. Jan. 18, 2019) (denying motion to dismiss "plausible" Section 11 claims under Rule 8).  That is all the law requires.

The Registration Statement was materially misleading because: (1) it contained misleading statements about the potential risk of permitting delays and the inability to drill oil in identified sites when these risks had either already occurred or had a high risk of occurring soon, and (2) it omitted to disclose chronic internal deficiencies that prevented the Company from obtaining certain permits.  ¶¶3, 71-75.  Specifically, the statements that Plaintiffs have alleged as materially misleading concern the Company's ability to drill its identified sites on time (or at all), *see* ¶71, as well as permitting delays that ***could*** result in delays or cancellation of drilling projects and operations.  ¶73.  CW4, CW5 and CW7 state that significant regulatory and permitting risks had already impacted the Company's operations before it went public, internal deficiencies resulting in the failure to timely obtain permits had festered for months, and the risk that the Company would not timely drill at identified sites had already materialized.  ¶¶72, 74.  CW5 presented a SWOT (Strengths, Weaknesses, Opportunities and Threats) analysis to the highest levels of management before the Company went public, which confirmed that Defendants' failure to secure timely permits was already a major "threat" to the Company's business.  ¶¶3, 58, 72.

<div align="center">

8

</div>

The Motion fails to address these claims.   Instead, Defendants engage in outright obfuscation by asserting that Plaintiffs do not allege "that hidden permitting issues were affecting Berry's ability to meet its targets at the time of the IPO." Defs.' Mem. at 24.  This unpled theory has nothing to do with Plaintiffs' actual claims.

Whether Berry met its production targets at the time of the IPO is irrelevant, particularly considering the many years and numerous regulatory hurdles that it takes to obtain the necessary permits.  As the eventual danger to the Company's guidance and production targets stemmed from permitting risks – which had already materialized at the time of the IPO – Defendants' boilerplate language was misleading because "it did not provide sufficiently meaningful caution about clearly present danger that was materializing." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 492 (S.D. Tex. 2016) (internal quotation marks omitted).  These allegations are more than sufficient to plead material omissions under Rule 8.  *See In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 668 (N.D. Tex. 2013) ("Numerous detailed cautionary statements will not shield a defendant from liability for projections it knows or should know to be false, even if they disclose in general terms the risks that the defendant knows have materialized.").

Unsubstantiated arguments that the CWs' statements are untrue or immaterial are entirely inappropriate at the pleading stage.  *See Hall v. Rent-A-Center, Inc.*, No. 4:16-cv-978, 2017 U.S. Dist. LEXIS 205847, at *29-31 (E.D. Tex. Dec. 14, 2017) (crediting confidential witness statements at the motion to dismiss stage, despite recognizing that additional evidence at later stages of the proceedings could either confirm or undermine those statements).  Plaintiffs are not required to "quantify these alleged issues, explain any significance to Berry's overall operations, identify when the alleged issues (as opposed to the 'conversations') occurred, or demonstrate any ongoing significance months later when the challenged statements were made." Defs.' Mem. at

19. This kind of evidence is not even required to plead fraud claims under the PSLRA. *See Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 684-85 (5th Cir. 2014) (reversing dismissal when a CW's account concerning the lack of hydrocarbons found in a well undermined defendants' false statements without demanding the need for such minutiae); *In re Venator Materials PLC Sec. Litig.*, No. 4:19-cv-03464, 2021 U.S. Dist. LEXIS 130670, at \*75-76 (S.D. Tex. July 7, 2021) (ruling that a plaintiff is not required to plead precise dates and contents of specific reports, so long as a factual basis concerning specificity exists). Defendants' inappropriate evidentiary attacks are wholly insufficient to support dismissal at this stage.

The Court should also disregard Defendants' attempt to invoke the affirmative defense of negative causation at the pleading stage. Defs.' Mem. at 24. Under Section 11, "any decline in value is presumed to have been caused by the misrepresentations in the registration statement." *Dynegy*, 339 F. Supp. 2d at 868-69. Defendants, not Plaintiffs, are "required to *prove* that no reasonable juror could believe that any portion" of Plaintiffs' losses was caused by Defendants' alleged misrepresentations in the Registration Statement. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009) (emphasis added). Defendants offer no evidence that Plaintiffs' losses were caused by other factors. *Id.* (analysis of the negative causation defense "poses quite a different question than the one posed by the loss-causation issue under the Exchange Act"). In any event, "[w]hether losses are attributable to some other source is necessarily a fact question" not amenable to resolution at the pleading stage. *See Dynegy*, 339 F. Supp. 2d at 869.

## II.   Defendants Cannot Satisfy Regulation S-K's Heightened Disclosure Requirements

Throughout the Class Period, Defendants had an affirmative obligation to disclose known trends, uncertainties and significant risks that could materially impact the Company's business in the future pursuant to Items 303 and 503 (now 105) of Regulation S-K regardless of whether any

10

other affirmative misrepresentation was made.  ¶¶76-81.  In their motion, Defendants only address this duty as it relates to the Registration Statement and have thus waived their right to challenge Plaintiffs' Regulation S-K claims related to the Exchange Act period.  Defs.' Mem. at 24-25.  *See United States ex rel. Haight v. RRSA (Commer. Div.), LLC*, No. 3:16-CV-1975-S, 2021 U.S. Dist. LEXIS 82894, at *24-25 (N.D. Tex. Apr. 30, 2021) (failure to raise an argument in a motion to dismiss amounts to a waiver).  Courts throughout the federal bar have sustained Exchange Act claims predicated on violations of Regulation S-K.  *See Walker v. Rent-A-Center*, No. 5:02-CV-3-DF, 2005 U.S. Dist. LEXIS 63595, at *45-47 (E.D. Tex. July 25, 2005) (sustaining Regulation S-K claim brought under Section 10(b)) (collecting cases); *see also Stratte-Mcclure v. Stanley*, 776 F.3d 94, 100-02 (2d Cir. 2015) (holding that Regulation S-K violations can create liability under the Exchange Act).  Here, not only did certain risks and uncertainties relating to permitting issues exist prior to the IPO (and therefore needed to be adequately disclosed in the Registration Statement), but additional risks and uncertainties materialized at various times during the Class Period in sharp contrast to the inconsistent statements Defendants continued to make.  *See, e.g.*, ¶47 (CW2 explained that between late 2019 and early 2020 Defendants illegally injected hot water into a well for which they did not have permits to increase production), ¶51 (CW3 confirms that the failure to obtain permits became a drastic problem no later than June 2019 before many of the misrepresentations in the Exchange Act period were made, and that Berry operated unproductive wells because Defendant Grove deliberately failed to secure UIC permits for cyclic steam wells).

A claim under Item 303 of Regulation S-K is properly pled if a trend or uncertainty is: (1) known to management, (2) reasonably likely to have material effects on the Company's financial condition or results of operation, and (3) undisclosed in the public filings.  *Silverstrand Invs. v.*

11

*AMAG Pharms., Inc.*, 707 F.3d 95, 103 (1st Cir. 2013).[2]  The Complaint clearly alleges these elements.  Defendants knew of the permitting problems and the reasonable likelihood of resulting effects on production as of July 2018 and continuing throughout the Class Period, going so far as to illegally inject hot water into wells without permits to increase production.  ¶¶37-70, 80, 108-23.  Numerous CWs with direct knowledge of permitting problems and direct access to the Individual Defendants confirm that the failure to secure timely permits, a problem of Berry's own making, resulted in serious production problems before Defendants made misleading statements.  ¶¶41-70.  This is enough to plead an undisclosed, known trend or uncertainty that ***could*** impact the Company's operations in the future.  *See Lowthrop v. Mesa Air Grp. Inc.*, No. CV-20-00648-PHX-MTL, No. 2021 U.S. Dist. LEXIS 136967, at *40 (D. Ariz. July 22, 2021) (finding Item 303 violation adequately pled); *see also Correa v. Liberty Oilfield Servs.*, No. 1:20-cv-00946-RBJ, 2021 U.S. Dist. LEXIS 128953, at *25 (D. Colo. July 12, 2021) (Item 303 claim adequately pled where one CW confirmed oversupply and alleged that oversupply led to decreased revenue); *In re Facebook, Inc.*, 986 F. Supp. 2d 487, 511 (S.D.N.Y. 2013) ("The impact of the increase in mobile users on revenues was not alleged to be a mere uncertainty, but a trend Facebook knew was affecting its business revenues.").

A complaint adequately pleads a violation of Item 503 if the facts suggest that: (1) a risk factor existed; (2) the risk factor ***could*** adversely affect the Company's present or future business expectations; and (3) defendants failed to disclose the risk factor.  *Silverstrand*, 707 F.3d at 103.  Defendants do not dispute that the permitting risks were omitted, but audaciously insist that the

---

[2] Contrary to Defendants' claim (Defs.' Mem. at 25), Item 303 is not limited to "financial results," but encompasses "results of operations" as well.  *Silverstrand*, 707 F.3d at 103.  Regulation S-K also requires disclosure of forward-looking information that impacts future business, not just present ones.  *Id.*

risk was not "significant." Defs.' Mem. at 25. This conclusory denial cannot be taken seriously. There can be no dispute that to operate productively Berry needed the required permits. Permitting was something Defendants themselves focused on throughout the Class Period in their public statements, going so far as to hire Silva to oversee the process, and Silva herself warned Smith and Baetz that the permitting process and production targets *did not* match the true permit flow and implementation plan. *E.g.*, ¶¶84, 92, 94, 108. *See Silverstrand*, 707 F.3d at 103-04 (company profitability "entirely depended on [the] commercial success" of one drug making the disclosure of safety risks significant).[3] The failure to receive permits resulted in lower production rates and corresponding declines in Berry's stock price and thus were significant. ¶¶121-29. *Mingbo Cai v. Switch, Inc.*, No. 2:18-cv-01471-JCM-VCF, 2019 U.S. Dist. LEXIS 116702, at *16-17 (D. Nev. July 12, 2019) (when new sales strategy disclosed "along with its potential effects on revenue, Switch's stock price dropped" which "is precisely the type of risk that item 503 requires issuers of securities to disclose"); *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 386 (N.D Cal. 2020) (materiality demonstrated through stock drops).

**III.    The Complaint Sufficiently Alleges Violations of the Exchange Act**

In great detail, the Complaint alleges that Defendants repeatedly made false and misleading statements about planning to seek permits in advance to "mitigate the risks," ¶84, claimed that the process was then "working well," ¶86, repeatedly told investors that there were no problems in securing timely permits whatsoever except for a subset of permits not relevant to the claims here, ¶¶88, 90, 92, 94, 96, misrepresented that a large inventory of permits was already on hand due to the Company's "intense permitting program," ¶¶98, 100, and affirmatively misled investors about

---

[3] This fact, that Berry needed permits to operate the majority of its business, distinguishes the case at hand from *Howard v. Arconic Inc.* (Defs.' Mem. at 25), where the plaintiffs did not allege that the company's profits depended on the product at issue. 395 F. Supp. 3d 516, 573 (W.D. Pa. 2019).

the actual number of viable permits that the Company had then secured.  ¶¶102, 104.  Defendants carefully avoid discussing these specific false statements of material fact, and attempt to obfuscate Plaintiffs' straightforward and simple claims with a variety of strawman arguments based on inserting improper extraneous facts at the pleading stage.  The Court should not accord Defendants' misguided arguments any weight and focus on the actual allegations of the Complaint: Berry suffered from severe internal deficiencies in its permitting process which hampered Berry's ability to drill economically viable wells, and the CWs, some of whom had direct access to and interacted with the Defendants, substantiate that this was a longstanding problem that existed before the Company went public and worsened during the Class Period.

### A.     The CW Accounts Demonstrate Falsity

The element of falsity is not subject to a heightened pleading standard in this Circuit.  *See Lormand*, 565 F.3d at 267; *Zhang*, 2020 U.S. Dist. LEXIS 167737, at *5 & n.1.  Plaintiffs are required to only specify each statement and explain why it is false or misleading.  *See Spitzberg*, 758 F.3d at 689.  Facts attributed to CWs that undermine a defendant's statements are more than sufficient to plead falsity.  *Id*. at 691.  The Complaint easily meets these tests.  Smith and Baetz made misleading statements in the Registration Statement, but the Company knew before it went public that permitting delays were a "threat" to its business and the Company had already failed to secure timely permits at that time as the interlocking accounts of CW4, CW5 and CW7 all confirm.  ¶¶72, 83.  According to CW4, in the spring of 2019, senior management at the Company regularly discussed how the failure to receive timely permits did not lie with regulators but was caused by Berry's own mismanagement, and CW3 confirms that this failure became a drastic problem no later than June 2019.  ¶¶51, 56.  Yet, Grove told investors in March 2019 that the delays were "a tiny issue," and in May 2019, Smith affirmatively misrepresented "20 times" that the Company "did not have a permitting problem."  ¶¶90-91, 94-95.  In late 2019 and early 2020,

14

Grove and Smith continued to minimize permitting delays and told investors that the Company already had a "bullpen" and "huge inventory" of wells to be permitted, but CW1, CW2, CW3, CW4, CW6 and CW7 all confirm that the Company experienced significant declines in production because of its own failure to secure timely permits between August 2019 and November 2020, and resorted to illegal means in an attempt to artificially induce production.  ¶¶42, 47-48, 51, 53, 55, 60-61, 63-70, 86, 98.  In May 2020 and August 2020, Smith and Baetz repeatedly touted the number of permits the Company had secured, but they failed to disclose that the permits received were for unprofitable wells and the Company failed to receive UIC permits for hundreds of wells between January 2019 and May 2020 as confirmed by CW1, CW2, CW4, CW6 and CW7.  ¶¶100-102.  These facts are far more compelling to sustain the Company's falsity allegations than those upheld by the Fifth Circuit in *Spitzberg* based on *one* CW account—here, there are seven.  *See Spitzberg*, 758 F.3d at 689 (crediting conflicting account of a CW who did not work at the company and apparently had no interactions with the defendants to reverse dismissal).

Unable to squarely address these well-pled allegations, Defendants seek to distract the Court with inappropriate and facially suspect arguments about the pandemic, oil price wars, "unprecedented market conditions" and empty references to Berry's "bottom line," "guidance" and "strategy."  Defs.' Mem. at 14-16.  These arguments are based on inappropriate, unauthenticated "evidence" that cannot be assumed to be true at the pleading stage and must be stricken.  *See generally* Pls.' Mot. to Strike.  They are also contradicted by the Complaint's well-pled allegations.  Defendants initiated the cost reduction plan well before the pandemic because of the repeated failure to secure timely permits as CW4 confirms, ¶57, and Defendants admitted after the Class Period that the Company's plans for 2020 were initially "informed by" the failure to secure timely permits.  ¶121.  The Complaint simply cannot be prematurely dismissed in light of

15

these inconvenient facts even if the Court inverted the pleading standard, and considered any inappropriate material, which it cannot do. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257-58 (5th Cir. 2005) (holding that the PSLRA does not provide a license to resolve disputed facts at the pleading stage) (internal quotation marks and citations omitted).

### 1.      Defendants' Fictitious "Disclosure" Defense Fails

A defendant cannot point to alleged "disclosures" to escape liability for current misrepresentations of fact or omissions of existing fact. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1056-57 (9th Cir. 2005) (holding that the "bespeaks caution" doctrine does not apply to false representations of present fact); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1213 (1st Cir. 1996) (same); *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1405-06 (7th Cir. 1995) (same). Because Defendants do not contest that the challenged statements are ones of current fact, there is no legal basis to invoke a defense based on so-called "disclosures" at this stage.

Even so, Defendants completely fail to point to a single instance where the Company disclosed that the permitting delays were chronic and caused by its own actions as opposed to false excuses concerning regulatory changes or general market conditions. *See*, *e.g.*, Defs.' Ex. 2, at 5-6 (failing to explain why permits were delayed); Defs.' Ex. 9, at 24 (discussing regulatory moratorium on high-pressure cyclic steaming process, which has nothing to do with this case); Defs.' Ex. 3, at 6 (falsely blaming the "budget reductions" on "market-driven reasons"); Defs.' Ex. 8, at 11, 13, 27 (discussing "pinch points in Berry" and "creat[ing] processes that aim at routine cycle times," but misrepresenting that "[w]e don't have a permitting problem."). Dismissal on the pleadings based on alleged disclosures requires a "stringent showing," and a defendant must present facts to show that no reasonable person would find the statement misleading in light of the alleged disclosure. *Livid Holdings Ltd.*, 403 F.3d at 1056-57 (citing cases). Defendants simply

16

cannot meet this high standard given their failure to point to a single instance where the Company disclosed that chronic internal deficiencies principally led to a lack of timely permits as all seven CWs confirm.

###    2.    Mischaracterization of Statements as "Opinions" is Insufficient to Support Dismissal

Defendants cite no authority to support that their repeated, false denials about a permitting problem are statements of opinion. Defs.' Mem. at 18. These false denials contained an embedded misrepresentation of current fact—that there were no chronic internal deficiencies that caused the problem in the first place—and hence cannot be mischaracterized as mere "opinions." *See Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-CV-2399, 2019 U.S. Dist. LEXIS 199050, at *34-36 (S.D. Tex. Mar. 27, 2019) (rejecting claim that loosely optimistic language containing false embedded facts was an opinion); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015) (holding that a defendant is liable if the supporting fact supplied is untrue). Nor does the mere insertion of the word "think" transform Defendants' misrepresentations into opinions. *Compare* Defs.' Mem. at 18 n.21 *with Omnicare*, 575 U.S. at 192-93 (observing that such "magic words" "can preface nearly any conclusion," but remain capable of misleading investors).

Even assuming that any part of any challenged statement was an opinion, Defendants are still liable because they omitted facts that "conflict[ed] with what a reasonable investor would take from" their positive misrepresentations. *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 848 (N.D. Tex. 2018) (internal citations and quotation marks omitted). The Complaint alleges numerous contemporaneous facts showing that Berry suffered from a pervasive internal deficiency in its permitting process, including notes taken contemporaneously at meetings where Silva told Smith and Baetz that the Company's production targets did not match the true permit flow and

17

implementation plan.   ¶¶41-70, 108-20.   These facts are more than sufficient to plead that Defendants were aware of information that undermined their misleading statements regardless of how they choose to mischaracterize those statements.

It is not enough to claim that Defendants "disagreed" with the CWs to evade liability. *Compare* Defs.' Mem. at 18 *with Spitzberg*, 758 F.3d at 684-86 (overruling conclusion that CW accounts were a mere "disagreement" with management because the CWs spoke in factual terms); *but see In re Hous. Am. Energy Corp. Sec. Litig.*, 970 F. Supp. 2d 613, 624 (S.D. Tex. 2013) (reversed by *Spitzberg* after incorrectly minimizing a CW account as a disagreement with higher level managers).  For the reasons explained above, Defendants' so-called "disclosures" also cannot immunize their fraud.  *See supra* at 16-17.

### B.   The Complaint Pleads a Powerful Inference of Scienter

Despite Defendants' persistently misleading statements about the law, it is beyond peradventure that the PSLRA does not require a plaintiff to produce any evidence at the pleading stage.  *See Ramirez*, 334 F. Supp. 3d at 844.  Nevertheless, this is an unusual case where numerous CWs had direct access to Defendants and a reliable CW with first-hand knowledge provided text messages and contemporaneous handwritten notes of meetings with Defendants to show Defendants' knowledge of the Company's pervasive permitting problems throughout the Class Period.  In Defendants' alternative universe, hiring Silva in 2019 to fix permitting problems defeats an inference of fraud, Defs.' Mem. at 18, but they minimize Silva's March 4, 2020 dire warning that production targets did not match the permit flow or plan, ¶108, as "second hand" information. *Compare* Defs.' Mem. at 22 *with Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 n.5 (9th Cir. 2019) (reversing dismissal when the district court improperly disregarded a credible hearsay account that supported scienter).  That this warning was given weeks before the country discovered the pandemic within its borders, ¶57, destroys Defendants' false excuses

concerning market conditions, regulatory changes and oil price wars.  The Complaint also contains direct quotes from text messages between Grove and CW1 in the fall of 2019, in which they both discussed the Company's failure to build sufficient lead time to secure the needed permits yet Defendants continued to make false and inconsistent statements for nearly a year after these texts were exchanged.  ¶¶111-12.  This kind of evidence has been found sufficient to *enhance* penalties in an SEC enforcement action.  *See SEC v. Daubenspeck*, 469 F. Supp. 3d 859, 862 (N.D. Ill. 2020) (defendant's text messages showed a high degree of scienter, which weighed in favor of enhancing penalty).

As for the meeting allegations, Defendants' claim that Plaintiffs "do not even allege when these supposed meetings took place or what was said by whom and to whom" is just false. *Compare* Defs.' Mem. at 22 *with* ¶108 (contemporaneous note shows CW1 and Silva met with Smith and Baetz on March 4, 2020 to discuss permitting problems); ¶112 (Grove texts CW1 on December 31, 2019 and states that he will meet with CW1 to discuss whether there is sufficient "lead time" to "mitigate the external regulatory barriers"); ¶114 (CW4 describes numerous meetings with Smith and Grove concerning permitting problems in late 2019 and early 2020). Granular data on the status of each permit application in the LLPD, ¶116, which Defendants mischaracterize as a "document," and which CW4 regularly showed to Smith and Grove in meetings strengthens an inference of scienter.  *See Turocy v. El Pollo Loco Holdings, Inc.*, No. SACV 15-1343-DOC (KESx), 2017 U.S. Dist. LEXIS 123458, at *48-49 (C.D. Cal. Aug. 4, 2017) (sustaining fraud claim based on CW account that defendant viewed a dashboard at meetings that showed the company's declining sales performance).  There is still even more evidence of scienter that Defendants simply fail to address.  ¶¶117-23.

None of the strawmen that Defendants erect can excuse their fraud. In *Spitzberg*, the Fifth Circuit emphasized that personal gain is not required to plead scienter, particularly in a classic case of fraud where a defendant acts with severe recklessness. 758 F.3d at 685; *see also Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83-84 (1st Cir. 2002); *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 665-66 (8th Cir. 2001). It is a reversible error to consider extraneous and irrelevant information about a defendant's stock purchases when the complaint pleads a strong inference of reckless misconduct. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607-08 (4th Cir. 2015) (reversing dismissal where this exact error occurred in the proceedings below). And what Defendants constantly mischaracterize as "repeated disclosures of permitting issues" are actually false excuses that attempt to shift the blame to external factors, including regulatory changes that the CWs confirm ***did not*** cause the actual problem. *Compare* Defs.' Mem. at 21 *with* ¶56 (CW4 states that permits could not be secured because of Berry's internal deficiencies rather than regulatory changes); ¶58 (CW5 corroborates CW4's account); ¶68 (CW7 further corroborates CW4's account).[4]

### C.     The Complaint Adequately Pleads Loss Causation

Under the liberal notice pleading standard pursuant to Rule 8, Plaintiffs are required to only plead "some indication of the loss and the causal connection that [] [P]laintiff[s] ha[ve] in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005). Defendants do not contest that this

---

[4] *Mun. Employees' Ret. Sys. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 432 (5th Cir. 2019) is far afield from this case. There, plaintiffs' core theory of the case involved the risk of a markdown, but the complaint pled no facts to suggest reckless disregard of that specific risk. *Id.* Instead, plaintiffs pled knowledge of high inventory, but the complaint did not plead any false statements concerning inventory. *Id.* Here, the Complaint pleads a dozen false statements about the lack of a permitting problem, but seven CWs state that the Company experienced chronic permitting problems throughout the Class Period. To the extent that Defendants now imply that permitting problems cannot cause production problems, that assumption is both absurd and contradicted by their own public admissions. ¶29 (citing multiple admissions made in SEC filings that recovering oil heavily depends on the issuance of timely permits).

standard is met because the Complaint alleges price declines and identifies the alleged corrective disclosures. The relevancy of a corrective disclosure "is not a steep or difficult one to satisfy" and "need only relate back rather than precisely mirror the earlier misrepresentation" and "can be demonstrated circumstantially." *Pub. Emps.' Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321-22 (5th Cir. 2014). "There is no requirement that a corrective disclosure take a particular form or be of a particular quality" and "the truth can be gradually perceived in the marketplace through a series of partial disclosures." *Id.* at 322, 325. Defendants' frivolous arguments fail to grapple with this direct Circuit precedent.

Here, the Complaint pleads three partial disclosures in conformity with *Amedisys, Inc*. On April 1, 2020, Berry revised its 2020 production target significantly downwards with growth expected to remain flat to 2% down and reduced its capital expenditures by 50% from the midpoint of the original 2020 budget. ¶124. On this news, the price of the Company's stock dropped by over 16.6% from its March 31, 2020 closing price of $2.41 per share to $2.01 per share on April 1, 2020. ¶125. Indeed, contrary to Defendants' false claims and improper attempts to reach for "alternative facts" outside the pleadings, *see* Pls.' Mot. to Strike at 13-14, this cost reduction plan was initiated well before the pandemic's onset *because of* the failure to secure permits as CW4 confirms. ¶57. On August 4, 2020, the Company revealed that average daily production decreased by an additional 5% for the second quarter of 2020 compared to the first quarter of 2020 as a result of reduced drilling activity and alleged cost control measures associated with steam management that temporarily increased water disposal requirements. ¶126. This disclosure stood in stark contrast to previous Class Period statements regarding Berry's overabundance of permits (including UIC permits which regulate water disposal). *E.g.*, ¶¶36, 92, 100, 102. On this news, Berry's stock price declined by over 7% to close at $4.55 per share on August 5, 2020. ¶127. On

21

November 3, 2020, Defendants again revealed that average daily production decreased by 5% for the third quarter of 2020 compared to the second quarter of 2020. ¶128. The production decline was again attributed to reduced drilling activity and alleged cost control measures associated with steam management. *Id.* Again, the market reacted negatively to the news, and the Company's stock price declined by over 5% to close at $2.69 per share on November 4, 2020. ¶129. These partial disclosures are more than sufficient to plead loss causation in this Circuit. *See Amedisys, Inc.*, 769 F.3d at 321-22 (reversing dismissal because a series of partial disclosures were collectively sufficient to plead loss causation even if some of them were not independently sufficient on their own).

Plaintiffs also adequately plead loss causation under the "materialization of risk" theory.[5] Under this theory, a plaintiff can plead that a concealed risk "materialized in the form of unfavorable developments that caused the market to drive share price down." *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1265 (N.D. Okla. 2007) (internal quotation marks omitted). *See also In re Initial Public Offering Sec. Litig.*, 399 F. Supp. 2d 298, 307 (S.D.N.Y. 2005) (explaining difference between materialization of risk theory and corrective disclosure). For example, in *In re Parmalat Securities Litigation*, risks were concealed by audit reports, including that Parmalat had undisclosed debt it was not able to service. 375 F. Supp. 2d 278, 307 (S.D.N.Y. 2005). "The concealed risk materialized when Parmalat suffered a liquidity crisis . . . and was unable to pay bonds as they came due." *Id.* The true extent of the fraud was not revealed until after the end of the class period. *Id.* Similarly, here, the concealed risk of the permitting issues materialized through the production declines, ¶¶124-29, and the true extent of the fraud was not revealed until

---

[5] Defendants failed to address this theory of liability in their opening brief although the Complaint plainly includes materialization of risk language, and thus have waived their right to do so on reply. *Centurytel of Chatham, LLC v. Sprint Communs. Co., L.P.*, 861 F.3d 566, 573 (5th Cir. 2017).

22

after the end of the Class Period when the Company partially admitted that the failure to secure timely permits caused the Company to revise its 2020 plans downwards, though Defendants continued to falsely blame regulatory changes, which multiple CWs have exposed is a false excuse. ¶¶121-23.

Defendants' claim that Berry allegedly disclosed "permitting issues" is predicated on a series of false assumptions that contradict the Complaint and rely on improper extraneous evidence. Defs.' Mem. at 4-7, 11-12. The CWs state that Berry's "permitting issues" were due to its own gross mismanagement of the process, not any external regulatory changes, ¶¶41-70, and Defendants cannot improperly point to unauthenticated newspaper clippings about market conditions, oil price wars or COVID-19 to escape liability at the pleading stage. *See generally* Pls.' Mot. to Strike. That this noise was subsumed by the constant barrage of false statements regarding adequate permits means that Defendants cannot even prevail on this issue at a more advanced stage in litigation. *Compare e.g.*, ¶92 ("we don't have a permitting problem") *with Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) (holding that "a misleading statement will not always lose its deceptive edge simply by joinder with others that are true.").

Defendants' argument that the corrective disclosures did not reveal "hidden permitting issues" disregards the nature of partial disclosures and the materialization of the risk theory as explained herein. Defs.' Mem. at 12-13. First, Plaintiffs are not required to rule out alternative causes for stock drops at the pleading stage. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189 (2d Cir. 2014); *North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 788 (M.D. Tenn. 2013) (recognizing alternate causes could affect losses but determining it is an issue for a trier of fact and such "contentions lack merit at the pleading stage").

23

Second, mirror image, "fact-for-fact disclosure" is not required to establish loss causation because if it were "a defendant could defeat liability by refusing to admit the falsity of its misstatements." *Flowserve Corp.*, 572 F.3d at 229-30. *See also In re EDS Corp. Secs. & ERISA Litig.*, 298 F. Supp. 2d 544, 561 (E.D. Tex. 2004) ("[d]efendants cannot escape liability for fraud simply by not admitting the fraud"). Such arguments have repeatedly been rejected. For example, in *EDS*, loss causation was found adequately pled even though the press release merely indicated that "revenues fell due to many problems the company had, but did not mention the NMCI Contract." *Id.* at 560. Likewise, in *Pilgrim's Pride*, although the corrective disclosures did not discuss goodwill impairments, the disclosures were "relevant or related to the alleged misstatements . . . because those disclosures reveal[ed] the precarious financial position of" the company. 2010 U.S. Dist. LEXIS 84260, at *86-87. Here, it is clearly alleged that the failure to obtain permits would affect Berry's production rates, among other things, and the disclosures reveal production declines. This is enough to "give rise to a reasonable hope or expectation that discovery will reveal evidence" that the disclosures revealed the "relevant or related truth" and "caused a significant part of the depreciation of the stock." *Id.* at *88 (internal quotation marks omitted).[6]

Last, Defendants' assertions regarding Berry's stock price movement around the time of the partial disclosures are inappropriate at this stage and should be disregarded by the Court. Defs.' Mem. at 13. *See Acticon AG v. China N. E. Petroleum Holdings, Ltd.*, 692 F.3d 34, 39-42 (2d Cir. 2012) (holding that a rebound in price of a company's stock on different dates is insufficient to support dismissal); *Abrams v. MiMedx Grp., Inc.*, 37 F. Supp. 3d 1271, 1277 (N.D. Ga. 2014).

---

[6] This holds true "even if [the court] believes that 'actual proof of those facts is improbable, and that a recovery is very remote or unlikely.'" *Id.* at *88-89 (quoting *Twombly*, 550 U.S. at 556).

Furthermore, the Fifth Circuit has made clear that such timing arguments are factual questions that do "not preclude a final showing of loss causation" on a motion to dismiss. *Lormand*, 565 F.3d at 266 n.33.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety. Should the Court grant any part of the Motion, Plaintiffs respectfully request leave to replead.

Dated: April 11, 2022                                Respectfully submitted,

**POMERANTZ LLP**

*/s/ Brian P. O'Connell*
Joshua B. Silverman
Omar Jafri
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: jbsilverman@pomlaw.com
        ojafri@pomlaw.com
        boconnell@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim
Ha Sung (Scott) Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax:   (212) 202-3827
Email: pkim@rosenlegal.com
       skim@rosenlegal.com

*Lead Counsel for Plaintiffs*

**GRAVES LAW OFFICE**
Curtis C. Graves
12700 Park Central Drive

25

Suite 520
Dallas, Texas 75251
Telephone: (214) 321-6940
Facsimile: (866) 770-6949
curtis@cgraveslaw.com

**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe
Texas Bar No.: 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: 972-521-6868
Facsimile: 346-214-7463
wbriscoe@thebriscoelawfirm.com

*Liaison Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax:    212-697-7296
Email: eitank@bgandg.com

**LEVI & KORSINSKY, LLP**
Daniel Tepper (*pro hac vice forthcoming*)
55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
dtepper@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-3599
Facsimile: (212) 214-0506
Email: passmore@bespc.com

*Additional Counsel for Plaintiffs*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 11, 2022, I served counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record, with a copy of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint.

Executed on April 11, 2022 in Chicago, Illinois.

<div align="center" style="margin-left:auto">

*/s/ Brian P. O'Connell*
Brian P. O'Connell

</div>

27