**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

---------------------------------------------------------

LUIS TORRES, ALLIA DEANGELIS,
DARRICK INMAN, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiffs,

    v.

BERRY CORPORATION, ARTHUR T.
SMITH, CARY BAETZ, GARY A. GROVE,
BRENT S. BUCKLEY, KAJ VAZALES, and
EUGENE J. VOILAND,

        Defendants.

---------------------------------------------------------

CASE NO.: 3:20-CV-3464-S

JUDGE KAREN G. SCHOLER

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants*

**INTRODUCTION**

Plaintiffs continue to try to transmogrify understandable, pandemic-related ups and downs in Berry's stock price into a securities fraud claim. Plaintiffs rushed to file a placeholder securities fraud complaint following one of many brief dips in Berry's stock price during the volatile early months of the COVID-19 pandemic, generically alleging without factual support that Berry had "materially overstated its operational efficiency and stability" and that this misrepresentation was revealed when Berry reported third-quarter 2020 revenue that "fell short" of *analyst* estimates by some unspecified amount. ECF No. 1, Compl. ¶¶ 5-6. But many months of investigation apparently found no support for this theory. Instead, the amended complaint re-fashions Plaintiffs' claims around what they did find: vague allegations from anonymous former employees who claim, at base, that Berry's permitting processes were imperfect. AC[1] ¶¶ 3-5.

Of course they were imperfect, and Berry has never claimed otherwise. Permitting for oil and gas drilling and production activities is exceptionally complex, involving long-term planning based on a myriad of assumptions (many outside the Company's control) and multiple types of permits requiring engagement with overlapping federal, state, and local regulatory regimes—no oil and gas company can perfectly execute these processes, and the regulatory outcomes are inherently unpredictable. Thus, while the new allegations reflect certain internal challenges around permitting, they are structurally incapable of supporting Exchange Act and Securities Act claims: no factual pleadings suggest that undisclosed permitting issues rendered any particular challenged statement misleading, materially affected Berry's performance, or actually caused the loss at issue.

Plaintiffs' complaint suffers from several fundamental, structural flaws. First, Berry did not represent to investors that it was free of permitting challenges, but instead publicly

---

[1] All defined terms herein take the same meaning as in Defendants' initial memorandum (ECF. No. 64; "D. Br.").

1

acknowledged permitting issues throughout the class period, including when it announced that it had hired high-level personnel to improve its internal permitting processes. Second, permitting issues were not the cause of (a) Berry's prudent decision to reduce its planned expenditures and production targets when oil prices began to plummet at the outset of an unprecedented global pandemic, the ultimate duration, severity, and industry impact of which was unknown, or (b) Berry's subsequent results. Plaintiffs' claims to the contrary are mere speculation, not grounded in factual pleadings, and willfully ignore the reality that almost every other U.S. oil and gas company took similar action. Third, Defendants had no motive to commit the alleged securities fraud; rather, as major net acquirers of Berry shares during the class period, Defendants had a significant financial disincentive against committing the alleged fraud. Because more or different allegations could not fix these structural defects, the Court should dismiss the complaint with prejudice.

<b>ARGUMENT</b>

**I.      Plaintiffs' '34 Act Claims Are Fundamentally Flawed.**

      **A.  Plaintiffs Cannot Plead Loss Causation.**

Plaintiffs contend loss causation is sufficiently pleaded because corrective disclosures need not "'precisely mirror the earlier misrepresentation.'" ECF No. 70 ("P. Br.") 21 (quoting *Pub. Emps.' Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321-22 (5th Cir. 2014)). The fundamental problem with Plaintiffs' alleged partial disclosures, however, is that they do not mention difficulties obtaining permits *at all*; rather, they discuss unrelated issues that easily explain the market's reaction. *See* D. Br. 11-13. The challenged statements about permitting are "too attenuated" from these disclosures to have caused the subsequent stock drops. *See Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 710-711 (S.D. Tex. 2013) (citing *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 667 (5th Cir.2004)). This is reinforced by the lack of material stock drops after Berry's actual discussions with investors about permitting issues. D. Br. 11-13.

2

Plaintiffs also contend that, as an alternative, they have pleaded a "materialization of the risk" theory of loss causation.[2] P. Br. 22-23. The Fifth Circuit has not recognized this theory as a viable means of pleading loss causation. *See Naglich v. Applied Optoelectronics*, 436 F. Supp. 3d 954, 978 n.53 (S.D. Tex. 2020). Even if the theory were viable, however, no factual pleadings show that Defendants "concealed a foreseeable risk that eventually materialized and caused them harm." *Id.* Plaintiffs merely speculate that supposedly undisclosed permitting issues were the true, secret cause of Berry's reduced production targets and subsequent performance in the early months of the pandemic and lockdown, when oil demand (and therefore price) was plummeting.[3]

### B. The Challenged Statements Are True and Not Misleading.

No reasonable investor would understand any challenged statement as representing that Berry's permitting process was perfect or that Berry experienced no challenges obtaining permits. *See* D. Br. 16-20. And no CW allegation demonstrates that, at the time of any challenged statement, Berry was experiencing permitting issues that it could not be expected to manage in the ordinary course of business, as it had done successfully since its IPO. *See* D. Br. 14-16. Defendants demonstrated in detail why the factual pleadings do not establish these essential facts. *See* D. Br. 13-20. Plaintiffs' Opposition asserts—but fails to demonstrate—the opposite, providing almost no analysis of the actual challenged statements and CW allegations. *See* P. Br. 14-18.

Plaintiffs' falsity pleadings are insufficient,[4] and the few challenged statements referenced

---

[2] Plaintiffs' assertion that Defendants "waived their right" to respond to the "materialization of the risk" theory lacks merit. P. Br. 22 n.5. It is appropriate for Defendants to respond to arguments and clarifications in the Opposition, especially where Plaintiffs have clarified that they are pursuing a theory not recognized by the Fifth Circuit.

[3] *See, e.g., Small Ventures USA v. Rizvi Traverse Management, LLC*, 2014 WL 3535339, at *5 n.38 (S.D. Tex. July 16, 2014) ("Plaintiff has not alleged that any risk materialized from the markup and seller's identity deceptions that caused its loss, but rather that the risk of the Tekken loan materialized and caused Newbridge to fail.").

[4] Plaintiffs' claims *are* "subject to a heightened pleading standard." *Contra* P. Br. 14. The Reform Act requires plaintiffs to "'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading,' and [to] '***state with particularity all facts*** on which' allegations made on information and belief are based." *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 179 (5th Cir. 2019) (quoting 15 U.S.C. § 78u-4(b)(1)) (emphasis added). This works in tandem with Rule 9(b), establishing two high hurdles for Plaintiffs to clear.

in Plaintiffs' Opposition typify these deficiencies. Plaintiffs misleadingly characterize a statement in a March 2019 earnings call as representing that (all) permitting "delays were a 'tiny issue.'" *See* P. Br. 14 (citing AC ¶ 90). But Mr. Grove did not actually say "tiny issue," as Plaintiffs allege without citation—the S&P Global transcript shows that Mr. Grove said "timing issue." *See* Ex. 3 at 15. Moreover, Mr. Grove was responding to a question that referenced *specific* permitting issues relating to a certain development project in a certain time period that Berry had discussed earlier in the same call. *Id.* at 14-15. Berry had already explained that it had "not received these permits as quickly as we expected in the context of forecasting our volumes," but that "even with the timing delays, we ended the year 15% higher [in production] than we entered," *id.* at 8, and "[w]ithin California, we have relocated the capital to areas, which are less likely to be impacted by regulatory permitting delays." *Id.* at 8-9, 12. No reasonable investor would conclude from these statements that Berry encountered no other permitting challenges; to the contrary, investors would understand that this issue exemplified the issues that Berry regularly encountered and managed.[5]

Plaintiffs' arguments with respect to a May 2019 presentation to investors and analysts fail for similar reasons. Plaintiffs selectively quote a statement that Berry "'did not have a permitting problem,'" P. Br. 14, without acknowledging that this statement was in the context of Ms. Silva's earlier discussion (in the same presentation) of Berry's need to improve its permitting processes and its plans for doing so, Ex. 8, at 10-11; D. Br. 5. In context, the challenged statement did not assert that Berry had no permitting challenges; rather, it reflected Mr. Smith and Mr. Grove's opinion that Berry could continue to successfully manage the permitting challenges it faced.

Plaintiffs' contention that statements like this are *not* opinions lacks merit. *See* P. Br. 17;

---

[5] Nor would it have been misleading for Mr. Grove to describe a specific permitting issue as "tiny" with respect to a year in which Berry increased production by 15 percent, in line with forecasts, especially when Berry also discussed the granular details and status of the issue in the same earnings call.

*see also* D. Br. 17-18. In context, whether Berry had a permitting "problem" was an expression of a judgment about Berry's ability to manage the permitting delays and related issues discussed throughout the same presentation. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) ("An opinion is a belief, a view, or a sentiment.") (quotations and citation omitted). Nor does the simple opinion statement that Berry did not "have a permitting problem" contain embedded facts, as Plaintiffs claim. *See Id.* at 185 ("embedded" fact is express statement of objective "underlying fact" included within challenged opinion statement).[6]

For both foregoing challenged statements, Plaintiffs point to the same CW allegations to establish falsity. *See* P. Br. 14. However, these allegations, attributed to CW3 and CW4, speak only in general terms about various alleged permitting issues in 2019 and 2020. *See* AC ¶¶ 51, 56. Neither claims any personal knowledge as to what the Defendants knew or believed when they made the statements. Nor do they allege any contemporaneous omitted facts that contradict the statements in the March 2019 earnings call (which concerned a specific permitting issue) or the May 2019 investor presentation (which concerned Berry's belief that it could continue to manage permitting issues successfully even while improving its processes).

The Opposition's arguments with respect to other challenged statements fail for similar reasons. Plaintiffs selectively quote statements referring to a "'bullpen' and 'huge inventory' of wells to be permitted." P. Br. 14-15. Here again, these statements were specific to certain permits at particular times. *See* AC ¶¶ 86 (permits for "Hill lease wells in the Belridge field"), 98 (sandstone permits in early 2020). The CW allegations do not show these statements were false,

---

[6] Contrary to Plaintiffs' assertion, even assuming that certain CWs believed at the time that Berry had a permitting "problem" (and/or expressed that belief to Defendants, which is not sufficiently alleged) this would not render the challenged opinion statements misleading. *See* P. Br. 17; D. Br. 17-18. In *Omnicare*, the Supreme Court noted, as an example, that the omission of the dissenting view of a "single junior attorney . . . would not make the statement of opinion [concerning legal compliance] misleading, even if the minority position ultimately proved correct." *Omnicare*, 575 U.S. at 190. The same is true here. *See* D. Br. 14-15 & n.15 (detailing CWs' roles).

5

and the statements themselves do not imply the absence of challenges relating to other permits at other times. *See* D. Br. 16-17. Plaintiffs also challenge statements allegedly "tout[ing] the number of permits the Company had secured," P. Br. 15, but fail to address the deficiencies highlighted in Defendants' opening brief: among others, these statements merely indicated that Berry was obtaining permits for use when and in whatever way future market conditions dictated, and no factual pleadings suggest these permits were nonexistent or could never be usable. *See* D. Br. 17.

Plaintiffs mischaracterize Defendants' proper analysis of the challenged statements in context and from the perspective of a reasonable investor as a "disclosure" defense, citing cases addressing the "bespeaks caution" doctrine. *See* P. Br. 16. This misses the point: Plaintiffs have failed to plead falsity simply because the challenged statements, read fairly and in context, are not false or misleading. *See, e.g., Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 217 (5th Cir. 2004) (statement not false or misleading "in light of" context); *see also Omnicare*, 575 U.S. at 194.[7]

**C. Plaintiffs' Allegations Do Not Raise the Required Strong Inference of Scienter.**

The facts properly before the Court raise a strong inference of Defendants' good faith and demonstrate that Plaintiffs' scienter theory is illogical: Defendants had no motive to commit the alleged securities fraud—in fact, they had a financial *disincentive* against doing so due to their substantial net acquisition of Berry shares—and they repeatedly discussed Berry's permitting issues and associated risks with investors in a manner completely at odds with the posited fraud. *See* D. Br. 20-22. Weighed against these indications of good faith, Plaintiffs' vague CW allegations of "Defendants' knowledge of the Company's pervasive permitting problems" do not come close

---

[7] Plaintiffs' repeated assertion that Berry's initial cost reduction measures in 2020 were partially related to permitting issues and began prior to domestic pandemic lockdowns, *e.g.*, P. Br. 15, is entirely consistent with Berry's contemporaneous statements to investors. In February 2020, Berry made clear that its initial 2020 plan took into account ongoing permitting issues and called for reduced capital expenditures. *See* D. Br. 5. In April 2020, Berry revised its plan due to the pandemic. *See* D. Br. 6-8. Thus, Berry's 2020 10-K accurately stated: "Our 2020 plans were informed, ultimately, by these permitting issues that we began to observe in late 2019 and early 2020, and then were later modified due to the deterioration of market conditions resulting from the COVID-19 pandemic." *See* AC ¶ 121.

to raising an equally compelling inference of scienter. *See* P. Br. 18-19; D. Br. 20, 22-23.

Regarding the lack of motive allegations, Plaintiffs argue only that "personal gain is not required to plead scienter." P. Br. 20. The Fifth Circuit case Plaintiffs cite, however, merely states the well-established principle that while not independently "fatal," the absence of motive allegations is "relevant" and "the strength of the circumstantial allegations [of scienter] must be correspondingly greater"—a significant holding here given the weakness of Plaintiffs' scienter allegations. *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 685 & n.14 (5th Cir. 2014) (citations and quotations omitted). And Plaintiffs do not even attempt to explain why Defendants, as major net acquirers of Berry shares, would set themselves up to be victims of their own alleged fraud. *See* P. Br. 20; D. Br. 20-21 & nn.23-24. Instead, citing an out-of-circuit case, Plaintiffs simply urge the Court to ignore the stock acquisition history detailed in Berry's SEC filings. P. Br. 20. But courts in this Circuit and elsewhere routinely consider such stock transaction data and dismiss cases where, as here, the transactions demonstrate that Defendants' interests were aligned with investors and an inference of scienter would be illogical. *See* D. Br. 21-22; ECF No. 73, Opp. to Mot. to Strike, at 10-11 (collecting cases). Plaintiffs' contention that Defendants' public statements about permitting issues do not show good faith because Defendants "attempt[ed] to shift the blame to external factors" similarly misses the mark. *See* P Br. 20. Berry discussed not just external factors contributing to permitting delays, but also needed improvements in Berry's internal processes. *E.g.*, Ex. 8 at 12. Defendants would not have repeatedly, proactively discussed these issues with investors if they were seeking to perpetrate the alleged fraud.

Against these strong indicia of good faith, Plaintiffs' scienter pleadings—based entirely on the allegations of anonymous former employees—are especially weak. In the Fifth Circuit, courts must discount confidential sources' scienter allegations because they "afford no basis for drawing

7

the plausible competing inferences required by *Tellabs*."[8] But even if the Court were to credit the CWs' allegations, they show only that, consistent with Berry's disclosures, Defendants were actively managing permitting issues and internally discussing desired improvements. Crucially, no factual pleadings show that Defendants knew that any undisclosed permitting issues were likely to prevent Berry from meeting its targets (as it had done successfully since its IPO), or that any permitting issues *did* in fact prevent Berry from achieving its targets.

In a typical example referenced by Plaintiffs, CW1 and Mr. Grove allegedly discussed steps Berry was taking to manage particular permitting issues in fall 2019, and CW1 allegedly texted Mr. Grove, "we plan to build a [permitting] process with greater lead times and an inventory that gives us more flexibility to mitigate the regulatory inconsistencies and disruptions." *See* AC ¶ 111; P. Br. 19. These are exactly the types of internal communication one would expect a few months after Ms. Silva publicly discussed "pinch points" in Berry's permitting process and explained to investors that Berry was considering various steps to "create processes that [would] . . . deliver permits in a more timely manner." Ex. 8, at 11. Nowhere do these allegations show that any Defendant knew these permitting issues were bound to prevent Berry from meeting its targets, or that Berry ultimately was unable to address those permitting issues.

Similarly, CW1's note, allegedly reflecting Ms. Silva's comments in a March 4, 2020 meeting, that "permitting process / production targets don't match the permit flow & implementation plan" does not show Defendants' knowledge of an unsolvable problem that ultimately caused Berry to reduce its targets or affected its results. *See* AC ¶ 108; P. Br. 18-19. The same is true of the other alleged meetings and communications the CWs describe. *See, e.g.* AC ¶¶ 114, 117-23; P. Br. 19. Even crediting the CWs' allegations, they demonstrate nothing more

---

[8] *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 739 (N.D. Tex. 2018), *aff'd sub nom. Mun. Employees' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424 (5th Cir. 2019).

than what Berry disclosed: it was working hard to improve internal permitting processes that were functional but imperfect. This reflects good faith, not scienter.

Plaintiffs' attempt to distinguish *Municipal Employees' Retirement System v. Pier 1 Imports., Inc.*, 935 F.3d 424, 432 (5th Cir. 2019), only highlights Berry's good faith. *See* P. Br. 20 n.4. There, CW allegations that defendants were aware of inventory backlog problems were insufficient to allege the defendants acted with scienter by not disclosing that those problems would result in "significant markdown risk," because "an equally plausible inference" was that the defendants "reasonably believed they could fix the excessive inventory problem without resorting to markdowns." *Id.* Plaintiffs argue that this case is different because Plaintiffs allege "false statements about the lack of a permitting problem" and "seven CWs state that the Company experienced chronic permitting problems." P. Br. 20 n.4. But this case does not arise from the mere existence of permitting issues, which Berry has openly discussed and successfully managed since its IPO. Rather, this case is about whether Defendants knowingly (or with severe recklessness) misled investors about serious permitting problems *that they believed would, and then did, cause Berry to reduce or miss its production targets*. No factual pleadings suggest the Defendants did so, and the record before the Court demonstrates their good faith.

## II.     Plaintiffs Cannot Plead a '33 Act Claim.

Plaintiffs' falsity allegations are even weaker with respect to their Section 11 claim. In connection with its IPO, Berry included robust, truthful disclosures of risks associated with permitting delays in the registration statement in July 2018. *See* D. Br. 6, 18-20. Plaintiffs do not claim that permitting delays caused Berry to reduce production targets until April 2020, nearly two years later—and even that claim is not supported by factual pleadings. And Plaintiffs cannot dispute that Berry continued to meet or exceed its production targets in the meantime. *See* D. Br.

9

3-4. Thus, there is no plausible sense in which risks associated with permitting delays had "already materialized at the time of the IPO," as Plaintiffs claim. *See* P. Br. 9.

As Defendants have detailed, no CW allegation shows that any permitting issue that would inevitably affect Berry's results years later existed at the time of the IPO. *See* D. Br. 19-20. Nor could it: like any oil company, Berry continually adjusts its plans in response to market conditions and other factors, including permitting issues, and any number of events could (and did) intervene between the IPO and the onset of the pandemic. *E.g.*, Ex. 1 at 4-5; Ex. 3 at 8-9, 12. Berry could only know that permitting delays might pose a risk to its business, and it disclosed that risk.[9]

## III.    Regulation S-K Does Not Support Plaintiffs '33 and '34 Act Claims.

Finally, Plaintiffs cannot plead claims based on Regulation S-K Items 303 and 105. Regarding Item 303, no factual pleadings show that Defendants knew of a permitting issues "trend" that would materially affect Berry's results, nor that permitting issues actually had that effect. *See Pier 1 Imports, Inc.,* 935 F.3d at 436; D. Br. 24-25. Regarding Item 105, no factual pleadings show that Defendants knew of significant risks beyond what Berry included in the IPO registration statement's robust risk factors (which included discussion of potential permitting delays). *See Wandel v. Gao*, 2022 WL 768975, at *11 (S.D.N.Y. Mar. 14, 2022); D. Br. 25.[10]

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims should be dismissed with prejudice.

---

[9] Plaintiffs assert Rule 9(b) does not apply because the complaint "states that the Section 11 claims do not sound in fraud," P. Br. 5-6, but their allegations allege fraud: "Smith and Baetz made misleading statements in the Registration Statement, but the Company *knew before it went public* that permitting delays were a 'threat' to its business[.]" *See* P. Br. 14 (emphasis added); D. Br. 11. Plaintiffs' Section 11 claim would fail under Rule 9(b) or Rule 8.

[10] The Fifth Circuit has "never held that Item 303 creates a duty to disclose under the [Exchange Act] …." *Pier 1 Imports, Inc.*, 935 F.3d at 436 (declining to decide issue). Some courts in this Circuit have "conclud[ed] that Item 303 does not establish a duty to disclose that may give rise to liability under § 10(b)." *Markman v. Whole Foods Mkt., Inc.*, 2016 WL 10567194, at *10 (W.D. Tex. Aug. 19, 2016) (citing cases). Even where courts have imposed such a duty, plaintiffs still must plead the other elements of the claim (e.g., scienter), which Plaintiffs here fail to do. *See, e.g., Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (dismissing 303 claim for lack of scienter); *Y-GAR Cap. LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *9 (S.D.N.Y. Jan. 2, 2020) (same; Item 503/105).

Dated: June 6, 2022                                Respectfully submitted,


                                                   *s/ Tamara D. Baggett*
                                                   **BAKER & HOSTETLER LLP**

                                                   Tamara D. Baggett
                                                   2850 North Harwood Street, Suite 1100
                                                   Dallas, TX 75201
                                                   Phone: 214-210-1200
                                                   Fax: 214-210-1201
                                                   tbaggett@bakerlaw.com

                                                   Douglas W. Greene (*Pro Hac Vice*)
                                                   45 Rockefeller Plaza
                                                   New York, NY 10111-0100
                                                   Phone: 212-589-4200
                                                   Fax: 212-589-4201
                                                   dgreene@bakerlaw.com

                                                   Genevieve G. York-Erwin (*Pro Hac Vice*)
                                                   999 Third Avenue, Suite 3900
                                                   Seattle, WA 98 104-4040
                                                   gyorkerwin@bakerlaw.com
                                                   Phone: 206-332-7079
                                                   Fax: 206-624-73 17


                                                   *Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

I certify that this motion was electronically filed with the Clerk of the Court using the

CM/ECF system, which will send email notification of this filing to all attorneys of record.


*Tamara D. Baggett /s/*
Tamara D. Baggett