# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LUIS TORRES, ALLIA DEANGELIS, DARRICK INMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BERRY CORPORATION, ARTHUR T. SMITH, CARY BAETZ, GARY A. GROVE, BRENT S. BUCKLEY, KAJ VAZALES, and EUGENE J. VOILAND, <br><br> Defendants. | Case No. 3:20-CV-3464-S <br><br><br> JUDGE KAREN G. SCHOLER |

## [PROPOSED] ORDER CONCERNING PROTOCOL FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Lead Plaintiffs Luis Torres and Allia DeAngelis, and additional Plaintiff Darrick Inman (collectively the "Plaintiffs"), and Defendants Berry Corporation, Arthur T. Smith, Cary Baetz, Gary A. Grove, Brent S. Buckley, Kaj Vazales, and Eugene Voiland (collectively the "Defendants"), through their counsel, hereby respectfully submit this Stipulation and Order Concerning Protocol for Production of Electronically Stored Information ("ESI Protocol") in the above-captioned action (the "Action").

WHEREAS, counsel for the Parties have met and conferred regarding discovery of documents and electronically stored information ("ESI") in this Action and have entered into this ESI Protocol to facilitate the just, speedy, and inexpensive conduct of discovery of ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention.

THEREFORE, the Parties stipulate and agree as follows:

## I.      DEFINITIONS

a.      "Parties" collectively shall mean all named parties to any action in these Proceedings, including any party added or joined to any complaint in these Proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

b.      "Producing Party" means the Party or third party that produces Discovery Material (as such term is defined in the Stipulation and [Proposed] Protective Order Governing Confidentiality of Discovery Material (the "Stipulated Protective Order")) in this Action.

c.      "Receiving Party" means a Party that receives Discovery Material from a Producing Party in this Action.

## II.      GENERAL PROVISIONS

a.      **Applicability.**  Unless otherwise agreed to by the parties, this ESI Protocol governs the production of documents and information in this Action.  Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of the Parties under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Texas ("Local Rules"), or any other applicable state and federal statutes, orders or rules. To the extent additional obligations or rights not addressed in this ESI Protocol arise under the Federal Rules of Civil Procedure, the Civil Local Rules, or any other applicable state and federal statutes, orders and rules, they shall be controlling.

b.      **Proportionality.**  The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan.

ORDER CONCERNING PROTOCOL FOR PRODUCTION OF                                    Page 2
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

      c.     **Limitations and Non-Waiver.** The Parties and their attorneys do not intend by this ESI Protocol to waive their rights to any protection or privilege, including the attorney-client privilege, the work-product doctrine, and any other privilege or immunity that may be applicable. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents or ESI are preserved and may be asserted at any time. This ESI Protocol does not govern the appropriate scope of discovery under Rule 26(b)(1), custodian selection and search parameters, or impose any obligations beyond those prescribed in the Federal Rules of Civil Procedure.

      d.     **Authenticity and Admissibility.** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

      e.     **Modification by Agreement.** Any practice or procedure set forth herein may be modified by written agreement of the Parties. Any Party added or joined to this Action and any Party to actions that may be consolidated into or coordinated with this Action after the date of this ESI Protocol that seeks to deviate from the ESI Protocol set forth herein must obtain leave of Court to do so unless all Parties otherwise consent in writing.

      f.     **Modification by Court Order.** Nothing in this ESI Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with counsel for the opposing

Party, and the Parties shall use reasonable best efforts to negotiate an amendment of this ESI Protocol prior to seeking relief from the Court.

        g.      **Protected Information.** A separate stipulation shall govern the protocols and procedures for the inadvertent disclosure of any information subject to a claim of attorney-client privilege, attorney work product, , and/or any other applicable privilege ("Protected Information") only if the Parties can reach an agreement. If no agreement is reached and a Producing Party seeks to invoke protections that are broader than those afforded by Rule 502(b) of the Federal Rules of Evidence, then the Producing Party should seek resolution from the Court. .

        h.      **Safe Harbor.** The Parties agree to be bound by the "safe harbor" provision of Fed. R. Civ. P. 37(e) and the Advisory Committee Notes to that Rule.

## III.    PRESERVATION

The Parties agree that they shall continue to take reasonable steps to preserve potentially relevant documents and ESI, including Metadata identified in Appendix A, in accordance with their obligations under the Federal Rules of Civil Procedure and other applicable law. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action. The Parties agree that by preserving documents or providing information about the Parties' preservation efforts the Parties are not conceding that such material is discoverable.

## IV.    PRODUCTION OF STRUCTURED DATA

The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production in traditional (e.g., TIFF) formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database or other structured data format, the Parties agree to meet and confer in good faith

regarding an appropriate production format that is reasonably practicable and not unduly burdensome.

## V. IDENTIFICATION OF RESPONSIVE DOCUMENTS

a. The Parties agree that each Producing Party will take reasonable steps to identify the custodians of, and to identify, review, and produce relevant ESI.

b. While this ESI Protocol is intended to address the majority of documents and data sources handled in this matter, there may be situations where the Parties come into contact with data sources, such as ESI from social media, collaboration tools (e.g., Slack, Microsoft Teams), mobile device apps, and modern cloud sources, that are not specifically addressed herein. In the event such data sources are relevant, the Parties agree to take reasonable efforts to address such data sources appropriately, and, upon request of the Receiving Party, to meet and confer regarding relevant production formats for such ESI.

c. The Parties shall cooperate in the development of appropriate search methodology and criteria, including the potential use of Technology Assisted Review ("TAR"), if the parties decide to use TAR to determine the scope of production. . For the avoidance of any doubt, a Producing Party is at liberty to use any methodology and tool for the purpose of prioritization and/or expediting its review, so long as no documents are removed from attorney review or production based on such methodology. The Parties will meet and confer and attempt in good faith to reach agreement regarding the following: (i) the identity of custodians who may have discoverable ESI; (ii) the custodians from whom ESI should be searched; and (iii) the search terms, phrases, or parameters to be used in searching databases for responsive ESI; and (iv) if TAR is to be used, the parameters of the TAR model, including any search terms, email threading, or other

filtering methods applied before or after TAR, and criteria for evaluating and accepting the results of the TAR model.

        d.      Non-Discoverable Information. The parties agree that the following data categories shall be deemed inaccessible and therefore, not discoverable, and should not be preserved:

      i.      Deleted, slack, fragmented, or other data only accessible by forensics before any duty to preserve such documents in anticipation of litigation arose.

      ii.      Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

      iii.      Online access data such as temporary internet files, history, cache, cookies, and the like.

      iv.      Data in metadata fields that are frequently updated automatically, such as last opened date.

      v.      Backup and archive data that are substantially duplicative of data that are more accessible elsewhere.

      vi.      Server, system or network logs.

      vii.      Data remaining from systems no longer in use that is unintelligible on the systems in use and where there is no reasonable way to convert the data to a universal format such as CSV, XLSX, TXT, SQL, XML, etc.

      viii.      Data from personal information management applications (such as Microsoft Outlook) (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, or Android, and devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage). For

avoidance of doubt, data from personal information management applications as described in this, Section V.D.viii, will be preserved, and not deemed inaccessible or non-discoverable, to the extent a copy of such electronic data is not saved or preserved elsewhere. For further avoidance of doubt, this paragraph shall not apply to instant messages such as SMS, iMessage, or WhatsApp; or to non-replicated application data maintained on personal devices should these data sources contain responsive information.

## VI. PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

The following production specifications apply to documents that existed in paper format prior to production ("Hard Copy Documents"). Documents that originated as paper but which were scanned and maintained electronically by a Party prior to inception of this Action shall be produced in accordance with Part VII of this ESI Protocol. The Parties agree to produce Hard Copy Documents in the formats described below, to the extent reasonably practicable and not unduly burdensome, considering the needs of the case. These formats are deemed to be productions in reasonably usable form. If a Producing Party intends to produce any Hard Copy Documents in any manner other than as specified herein, the Producing Party shall notify the Receiving Party of its intent, including production format (e.g., produced as paper, made available for inspection). If the proposed production format is not acceptable to the Receiving Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Hard Copy Documents.

a. **TIFFs.** Hard Copy Documents should be scanned as single-page, black and white, Group IV compression TIFF images using a print setting of least 300 dots per inch (DPI). Bates

numbers, confidentiality designations (in accordance with the Stipulated Protective Order governing this Action), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

b.      **Unitizing Documents.**  The Parties shall undertake all reasonable efforts to ensure that, in scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container.

c.      **Parent-Child Relationships.**   The Parties agree that if any part of a Hard Copy Document or its attachments is responsive, the entire document and attachments must be produced, except for any attachments that may be withheld or redacted on the basis of any privilege or work-product or other recognized privilege or protection.   The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed within an email thread. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

d.  **OCR.**  Hard Copy Documents shall be run through optical character recognition ("OCR") software, and the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.  Text files should be provided in a "Text" folder.  To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

e.  **Unique IDs.**  Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon as practicable thereafter.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in the Action.

f.  **Data Load Files.**  Hard Copy Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

    i.  Field Separator: ASCII character 20 ("¶");

    ii.  Quote: ASCII character 254 ("þ"); and

    iii.  New Line: ASCII character 174 ("®").

    iv.  Concordance-compatible image and data load files should be provided in a "Data" folder.

g.  **Metadata.**  Each of the Metadata and coding fields set forth in Appendix A shall be produced for that Hard Copy Document to the extent reasonably available.

h.  **Color.**  Hard Copy Documents containing color need not be produced in color in the first instance, provided however, that the Producing Party shall retain a copy of produced Hard

Copy Documents in color. However, if good cause exists for the Receiving Party to request production of certain documents in color, the Receiving Party may request production of such documents in color by providing a list of the Bates numbers of documents it requests to be produced in color format. The Producing Party shall not unreasonably deny such requests or unreasonably delay their production.

## VII. PRODUCTION FORMAT FOR ELECTRONICALLY STORED INFORMATION

The Parties agree to produce ESI in the formats described below as much as reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. The parties agree that ESI will be produced with searchable text.

a. **TIFFs.** Documents should be produced as single-page, black and white, Group IV TIFF images using at least 300 DPI. To the extent possible through an automated process, the document's original orientation should be maintained (i.e., portrait-to-portrait and landscape-to-landscape). In the event the original orientation of documents in a production appears to be altered (e.g., emails are inverted or sideways), the Receiving Party may request the reproduction of those documents in their original orientation. Bates numbers, confidentiality designations (in accordance with the Stipulated Protective Order), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

b. **Extracted Text Files.** The full text of native files should be extracted directly from the native file (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text.

c.      **Unique IDs.**  Each image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon thereafter as practicable.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in this Action.

d.      **Parent-Child Relationships.**  The Parties agree that if any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege or work-product or other recognized privilege or protection.  The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed within an email thread. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

e.      **Metadata.**  The Parties agree that Metadata will be produced for all produced documents and ESI, whether produced in Native Format or as TIFF images.  Appendix A sets forth the metadata fields that must be produced to the extent that metadata exists for a particular document.  Metadata fields for documents that are partially redacted for privilege that do not

contain privileged information should still be produced. Nothing herein shall require any Party to create or produce metadata that does not exist or is not reasonably or technically accessible.

f.    **Native Format.**  The processed native for all spreadsheets (i.e., MS Excel, .CSV, or similar), and electronic information containing audio or video components should be produced and linked to the database by the metadata field "NativeLink."  Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number.  The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format.  The placeholder will be branded with the production number in the lower right hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page.  The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

g.    **Redaction of Native Files.**  To the extent that a native spreadsheet must be redacted, the Producing Party must redact the Native File or, if such redaction is not practicable, produce TIFF images with burned in redactions in lieu of a Native File and TIFF placeholder image, provided the TIFF images are reasonably usable.  If redacting TIFF images, the Producing Party should make reasonable efforts to cause such images to legibly present all information in the spreadsheet. To the extent a redacted spreadsheet is not reasonably usable, the Receiving Party may request that it be produced as a redacted Native File.  If good cause exists, the Receiving Party may ask the Producing Party to manually undertake the foregoing for certain documents identified by Bates number by the Receiving Party to the extent the document was originally produced with concealed information.  The Producing Party shall not unreasonably deny such a request.

h.    **Request for Native Files.**  Other than as specifically set forth above, a Producing Party need not produce documents in Native Format.  If good cause exists for the Receiving Party

to request production of certain documents in Native Format, the Receiving Party may request production in Native Format by providing a list of the Bates numbers of documents it requests to be produced in Native Format. The Producing Party shall not unreasonably deny such requests. The Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each Native File in such production, and all Extracted Text and applicable metadata fields.

i. **Hidden Content.** To the extent that a document or ESI was saved with hidden content, such as comments or tracked changes, the document or ESI shall be imaged showing that hidden content, to the extent the Producing Party can practicably do so using an automated process. If for some reason a document containing hidden content cannot be imaged to show hidden text it will be produced in Native Format.

j. **Password Protected Files.** The Parties agree that they will take reasonable steps to unencrypt and index any password-protected documents or other encrypted containers prior to applying search terms, TAR, or other filtering methodologies. To the extent security protection for such documents and ESI cannot be successfully processed despite reasonable efforts, the Producing Party shall notify the Receiving Party of the number of documents affected for each custodian and agree to meet and confer should the Receiving Party request additional information about such files.

k. **Embedded Documents.** Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded. The Bates number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A. Graphic objects embedded within documents or

ORDER CONCERNING PROTOCOL FOR PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION
Page 13

emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

l.      **Data Load Files**.  Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

>  i.      Text Delimiter AKA "Quote" – "þ", Hex (FE), Unicode (U+00FE), Decimal (254) 2;
>
>  ii.     Field Separator AKA "Comma" – "", Hex (14), ASCII character 20 ("¶");
>
>  iii.    Unicode (U+0014), Decimal (20);
>
>  iv.     Quote: ASCII character 254 ("þ"); and
>
>  v.      New Line: ASCII character 174 ("®").

All rows will contain the same number of delimiters and fields.  The multi-value field delimiter must be consistent across all fields.  For example, if the CC field contains semi-colons between email addresses, the Tag field should also contain semi-colons.  Concordance-compatible image and data load files should be provided in a "Data" folder.  Parties have the option to exchange sample load files.  If this exchange occurs, the Receiving Party will have 14 days to respond with Load File change requests.  Nothing in this ESI Protocol will limit the Parties from discussing Load File changes throughout the course of the Action.

m.      **Deduplication.**  A Producing Party may globally deduplicate by exact duplicate families provided that: (i) only exact hash duplicates are subject to deduplication; (ii) the Producing Party identifies the additional custodians in a CustodianAll metadata field; and (iii) an email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining

content in the email is identical.  Standalone files may be de-duplicated against other stand-alone files, but not against attachments contained in document families.

n.      **Email Threading.**  Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic document collection.  The Parties reserve the right to use email threading to reduce the overall amount of ESI and documents produced and use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced. However, in the event that TAR is used in accordance with Part V, above, the Parties agree that email threading may not be used until after the TAR process is complete.

o.      **Production of Audio and Video Recordings.**  The Parties shall meet and confer before producing audio and video recordings other than in their native format.

p.      **Production of Transcripts.**  If deposition or other transcripts are responsive, the Parties should meet and confer to determine a mutually agreeable format for producing the transcripts.

q.      **Custodian or Originating Source.**  The Custodian shall be identified in the Custodian field of the database load files.  Documents collected from a natural person should be produced in such fashion as to identify the natural person.  Documents collected from non-custodial sources, such as shared files, storage locations, or drives, should be produced in such a fashion as to identify the department, group, entity, or facility from which the documents were collected.  A Producing Party shall make reasonable efforts to use a uniform description of a particular Custodian across productions.

r.      **Color.**  Documents not produced in native format containing color need not be produced in color in the first instance unless the color is necessary to understand the meaning or

content of the document.  Additionally, if good cause exists for the Receiving Party to request production of certain documents in color, the Receiving Party may request production of such documents in color by providing a list of the Bates numbers of documents it requests to be produced in color format.  The Producing Party shall not unreasonably deny such requests.  The Parties reserve the right to allocate costs of color productions if they become burdensome.

s. **Foreign Language.**  Foreign language text files and Metadata should be delivered with the correct encoding to enable the preservation of the document's original language.

t. **Date Format.**

i. If a time is not available, such as the estimated date for a coded document, then 12:00 am, or 00:00 should be assigned, i.e., 12/21/1999 00:00.

ii. Date delimiters, such as slashes and colons, must be consistent across all fields.  In the format of MM/dd/YYYY, there are no spaces and only forward slashes.

iii. Date formats must be consistent within any one field.

iv. Date formats must be consistent across all fields, i.e., a record with a sent date should have the same format in the last modified date field.

Unless otherwise specified by a Producing Party, the Producing Parties shall process ESI so that metadata bearing on time will be produced in UTC (Coordinated Universal Time) format.

u. **Production Media.**  The preferred means of producing documents is via secure FTP or secure file share.  However, documents may also be produced via encrypted flash drive, encrypted hard drive or encrypted CD or DVD.  To the extent possible, physical media should be protected before it is produced.

v. **Naming Convention for Production Media.**  Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such

as .zip, .rar, etc. The compressed file should be named so as to indicate Producing Party, the date of the production, and the sequence of the production (e.g., "Berry Production 20200401-001"). If the production is made using physical media, the media should be labeled to include: (a) text referencing that it was produced in *Torres et al. v. Berry Corporation. et al.*; and (b) the Bates number range of the materials contained in the media.

w.      **Replacement Productions.** Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

x.      **Encrypted Data.** To the extent a production is encrypted before it is produced, the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data.

y.      **Confidentiality Designations.** If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or pursuant to the terms of the Parties' Stipulated Protective Order entered by the Court in this Action, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Receiving Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. A Party's failure to comply with the procedures set forth in this ESI Protocol shall not waive that Party's or any other person's right to assert that information is private, confidential, or otherwise protected.

z.      Compressed Files: Compression file types (i.e., .CAB, .GZ, .TAR, .7z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

aa.      Microsoft "Auto" Feature: To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business.

## VIII.  ASSERTIONS OF PRIVILEGE

a.      The Parties will meet and confer to establish a format for privilege logs and redaction consistent with the Federal Rules of Civil Procedure.  Prior to generation of a privilege log, the Parties shall meet and confer in a good faith effort to reach agreement on the manner in which a privilege log will be generated and the contents of such a log.  The Parties shall consider whether the nature and volume of the privileged documents and ESI warrants category-by-category privilege logs, document-by-document privilege logs, metadata log, or some combination of these approaches.

b.      The following documents presumptively need not be included on a privilege log:

  i.      Communications exclusively between a party and its outside counsel regarding this Action, including any documents created after the filing of this Action that reflect such communications;

  ii.      Work product created by outside counsel, or by an agent of outside counsel other than a Party, testifying expert, or third-party vendor, regarding this Action.

iii. Redacted emails need not be logged as long as the objective metadata (unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document. For redacted documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the document should be included on a privilege log. Non-email documents need not be logged if the reason for the redaction is noted on the face of the document in the redacted area.

c. The Parties agree that they will meet and confer in good faith to resolve and alleviate undue burdens resulting from logging of redacted ESI, where the reason for the redaction, including the nature of the privilege asserted, is not evident on the face of the documents.

## IX. THIRD PARTY DOCUMENTS

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third-parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall promptly notify the other Parties when it receives non-party productions, and shall provide copies of such productions to the other parties in the format in which they were received from the third-party within five days. In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to Receiving Parties. Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

STIPULATED TO:

**POMERANTZ LLP**

/s/ Omar Jafri

Joshua B. Silverman
Omar Jafri
Brian P. O'Connell
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: jbsilverman@pomlaw.com
ojafri@pomlaw.com
boconnell@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

/s/ (Scott) Kim

Phillip Kim
Ha Sung (Scott) Kim
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
skim@rosenlegal.com

**Bronstein, Gewirtz & Grossman, LLC**

Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax: 212-697-7296
Email: eitank@bgandg.com

*Lead Counsel for Plaintiffs*

**GRAVES LAW OFFICE**

Curtis C. Graves
12700 Park Central Drive
Suite 520
Dallas, Texas 75251
Telephone: (214) 321-6940
Facsimile: (866) 770-6949
curtis@cgraveslaw.com

**BAKER HOSTETLER LLP**

*Douglas W. Greene*

C. Shawn Cleveland (Texas No. 24012433)
Tamara D. Baggett (Texas No. 24058573)
2850 North Harwood Street, Suite 1100
Dallas, TX 75201
Phone: 214-210-1200
Fax: 214-210-1201
scleveland@bakerlaw.com
tbaggett@bakerlaw.com

Douglas W. Greene (*Pro Hac Vice*)
Erica Barrow (*Pro Hac Vice* Pending)
Zachary R. Taylor (*Pro Hac Vice*)
45 Rockefeller Plaza
New York, NY 10111-0100
Phone: 212-589-4200
Fax: 212-589-4201
dgreene@bakerlaw.com
ztaylor@bakerlaw.com

Genevieve G. York-Erwin (*Pro Hac Vice*)
999 Third Avenue, Suite 3900
Seattle, WA 98 104-4040
gyorkerwin@bakerlaw.com
Phone: 206-332-7079
Fax: 206-624-7317

*Attorneys for Defendants*

ORDER CONCERNING PROTOCOL FOR PRODUCTION OF          Page 20
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe
Texas Bar No.: 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: 972-521-6868
Facsimile: 346-214-7463
wbriscoe@thebriscoelawfirm.com

*Liaison Counsel for Plaintiffs*

**SO ORDERED:**

Date: _____, 2022

                                            _____
                                           Hon. Judge Karen G. Scholer
                                         United States District Judge

## APPENDIX A: REQUIRED METADATA FIELDS

| Field Name[1] | Populated For | Field Description |
|---|---|---|
| BegBates | All | Control Numbers for start of document |
| EndBates | All | Control Numbers for end of document |
| Record Type | All | The record type of a document – e.g., email, attachment, loose eFile |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family) |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family) |
| Attachment Count | All | Number of attachments |
| Custodian | All | Custodian name (ex. John Doe) |
| CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the Custodian field |
| LogicalPath | All | The directory structure of the original file(s). Any container name is included in the path. For email, this should be the email folder path (e.g. jdoe.pst\inbox) |
| AllPaths | All | This field should be populated with the folder paths of all duplicate files (Email and Edocs) that were suppressed during deduplication. |
| Hash value | All | The MD5 or SHA-I hash value |
| PgCount | All | Page Count or an Image Count, if auto generated |
| NativeFile | All | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| Importance | Email | Email high priority flag |
| TimeSent | Email | Time email was sent |
| DateMod | Email, Edoc | Date the document was modified |
| TimeModified | Email, Edox | Time the document was modified |
| TimeZoneUsed | Email | Time zone used to process data during document collection and processing |
| ReceiveTime | Email | Time email was received |
| ReceiveDate | Email | Date email was received |
| To | Email | All recipients that were included on the "To" line of the email |

---

[1] The Field Names and Descriptions in this ESI Protocol are meant to serve as a guide; the Parties acknowledge that Field Names can vary from system to system and even between different versions of systems.

| From | Email | The name and email address of the sender of the email |
|------|-------|--------------------------------------------------------|
| CC | Email | All recipients that were included on the "CC" line of the email |
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| DateCreated | Edoc | Date the document was created |
| TimeCreated | Edoc | Time the document was created |
| FileName | Email, Edoc | File name of the edoc or email |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | All | File extension of the document |
| TextPath | All | Relative path to the document level text file. There should be a folder on the deliverable containing a separate text file per document. These text files should be named with their corresponding Bates numbers. If the attachment or e-file does not extract any text, then OCR for the document should be provided to the extent that the Producing Party OCRs the document for their own benefit. |
| Redacted | All | "X,""Y,"" "Yes," and "True" are all acceptable indicators that the document is redacted.  Otherwise, blank |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter |
| Confidentiality | All | Populated if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
| Production Volume | All | Production Volume Name |
| DocType | All | Description of document (Email, Attachment, EDoc, Hard Copy, etc) |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |