# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

LUIS TORRES, ALLIA DEANGELIS,
DARRICK INMAN, Individually and On Behalf
of All Others Similarly Situated,

                Plaintiffs,

    v.

BERRY CORPORATION, ARTHUR T.
SMITH, CARY BAETZ, GARY A. GROVE,
BRENT S. BUCKLEY, KAJ VAZALES, and
EUGENE J. VOILAND,

                Defendants.

Case No. 3:20-CV-3464-S

JUDGE KAREN G. SCHOLER

CLASS ACTION

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.    Defendants Fail to Rebut the Presumption Of Reliance ......................................................2

          A.  Front-End Price Movement is Not Required ............................................................2

          B.  Defendants Fail to Show That No Price Impact Arose From the Corrective
              Disclosures ..........................................................................................................3

    II.    Plaintiffs are entitled to a presumption of reliance under Affiliated Ute ...........................9

    III.    Damages Can Easily Be Calculated on a Class-Wide Basis .............................................10

    IV.    Merits Issues Cannot Preclude Certification of the Securities Act Class .........................12

    V.    Plaintiffs' Knowledge and Participation Surpass the Threshold for Adequacy ...............14

CONCLUSION ...........................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abell v. Potomac Ins. Co.*,
858 F.2d 1104 (5th Cir. 1988) ...............................................................................................10

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................................................6

*Allegheny Cty. Employees' Ret. Sys. v. Energy Transfer LP*,
No. 20-200, 2022 U.S. Dist. LEXIS 150826 (E.D. Pa. Aug. 23, 2022) ...............................8, 9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...................................................................................................................4

*Bachow v. Swank Energy Income Advisers, LP*,
No. 3-09-CV-0262-K, 2010 U.S. Dist. LEXIS 1504 (N.D. Tex. Jan. 6, 2010)........................3

*Baker v. SeaWorld Entm't, Inc.*,
No. 14CV2129-MMA (AGS), 2017 U.S. Dist. LEXIS 196235 (S.D. Cal. Nov. 29,
2017) ......................................................................................................................................3, 5

*Beaver Cty. Emples. Ret. Fund v. Tile Shop Holdings, Inc.*,
No. 14-786 ADM/TNL, 2016 U.S. Dist. LEXIS 99479 (D. Minn. July 28, 2016) .................13

*Bond v. Clover Health Invs., Corp.*,
No. 3:21-cv-00096, 2023 U.S. Dist. LEXIS 24749 (M.D. Tenn. Feb. 14, 2023)................3, 15

*Bos. Ret. Sys. v. Alexion Pharm., Inc.*,
No. 3:16-cv-2127 (AWT), 2023 U.S. Dist. LEXIS 64812 (D. Conn. Apr. 13, 2023)...............4

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions*, *Inc.*,
322 F. Supp. 3d 676 (D. Md. 2018) ........................................................................................11

*Cosby v. KPMG, L.L.P.*,
No. 3:16-CV-121-TAV-DCP, 2020 U.S. Dist. LEXIS 113424 (E.D. Tenn. June 29,
2020) .......................................................................................................................................12

*Cosby v. KPMG, LLP*,
No. 3:16-CV-121-TAV-DCP, 2021 U.S. Dist. LEXIS 87324
(E.D. Tenn. May 7, 2021) ..................................................................................................12, 13

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
31 F. Supp. 3d 237 (D.D.C. 2014).........................................................................................13

*Ditcharo v. United Parcel Serv., Inc.*,
   376 F. App'x 432 (5th Cir. 2010) ........................................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   718 F.3d 423 (5th Cir. 2013) .............................................................................................2, 3

*Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"),
   563 U.S. 804 (2011).................................................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton III*"),
   309 F.R.D. 251 (N.D. Tex. 2015) .......................................................................................8, 9

*Feder v. Elec. Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ................................................................................................14

*Ferris v. Wynn Resorts Ltd.*,
   No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374 (D. Nev. Mar. 1, 2023) .......3, 5

*FindWhat Investor Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ..............................................................................................3

*Freeland v. Iridium World Commc'ns, Ltd.*,
   233 F.R.D. 40 (D.D.C. 2006)................................................................................................13

*Gaynor v. Miller*,
   No. 3:15-CV-545-TAV-DCP, 2018 U.S. Dist. LEXIS 132351 (E.D. Tenn. Aug. 6,
   2018) ....................................................................................................................................13

*Glickenhaus & Co. v. Household Intern., Inc.*,
   787 F.3d 408 (7th Cir. 2015) ..................................................................................................3

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
   141 S. Ct. 1951 (2021)................................................................................................ *passim*

*Grae v. Corr. Corp. of Am.*,
   330 F.R.D. 481 (M.D. Tenn. 2019) .........................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"),
   573 U.S. 258 (2014)..................................................................................................................2

*Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.*,
   338 F.R.D. 205 (S.D.N.Y. 2021) ..........................................................................................12

*Horton v. Goose Creek Sch. Dist.*,
   690 F.2d 470 (5th Cir. 1982) ................................................................................................14

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
   818 F.3d 775 (8th Cir. 2016) ..................................................................................................3

iii

*Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.*,
No. 3:19-CV-00407, 2023 U.S. Dist. LEXIS 31022 (M.D. Tenn. Feb. 24, 2023)..................12

*In re Allergan PLC Sec. Litig.*,
No. 18 Civ. 12089 (CM)(GWG), 2021 U.S. Dist. LEXIS 170310 (S.D.N.Y. Sep. 8,
2021) ...........................................................................................................................12

*In re Anadarko Petrol. Corp. Sec. Litig.*,
No. 4:20-cv-00576, 2022 U.S. Dist. LEXIS 180240 (S.D. Tex. Sep. 28, 2022).....................12

*In re Apple Sec. Litig.*,
No. 4:19-cv-2033-YGR, 2022 U.S. Dist. LEXIS 23771 (N.D. Cal. Feb. 4, 2022) .............9, 10

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
No. 17 Civ. 01580 (LGS), 2019 U.S. Dist. LEXIS 180895 (S.D.N.Y. Oct. 16, 2019) .............9

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. H-14-3428, 2017 U.S. Dist. LEXIS 91938 (S.D. Tex. June 15, 2017).......................12, 13

*In re CoreCivic, Inc.*,
No. 19-0504, 2019 U.S. App. LEXIS 25508 (6th Cir. Aug. 23, 2019) ....................................3

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ....................................................................................10

*In re Goldman Sachs Grp., Inc.*,
579 F. Supp. 3d 520 (S.D.N.Y. 2021).......................................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004) ..............................................................................................13

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014). ..........................................................................................15

*In re LendingClub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..................................................................................13

*In re Mattel, Inc. Sec. Litig.*,
No. 2:19-cv-10860-MCS-PLA, 2021 U.S. Dist. LEXIS 194121 (C.D. Cal. Oct. 6, 2021).......5

*In re NII Holdings, Inc. Sec. Litig.*,
311 F.R.D. 401 (E.D. Va. 2015) .............................................................................................10

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010).....................................................................................................11

*In re STEC Inc.*,
No. SACV 09-01304-JVS (MLGx), 2012 U.S. Dist. LEXIS 186180 (C.D. Cal. Mar. 7,

2012) ..................................................................................................................................13, 14

*In re Teva Secs. Litig.*,
    No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 43316 (D. Conn. Mar. 9, 2021)..................10

*In re UICI Sec. Litig.*,
    No. 3:04-CV-1149-P, 2006 U.S. Dist. LEXIS 73753 (N.D. Tex. Sep. 29, 2006) .....................3

*In re Vicuron Pharm. Inc. Sec. Litig.*,
    233 F.R.D. 421 (E.D. Pa. 2006)..............................................................................................13

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)......................................................................................................2

*Johnson v. CBD Energy,, Ltd*.,
    No. H-15-1668, 2016 U.S. Dist. LEXIS 87174 (S.D. Tex. July 6, 2016) ...............................13

*Junge v. Geron Corp.*,
    No. C 20-00547-WHA, 2022 U.S. Dist. LEXIS 61962 (N.D. Cal. Apr. 2, 2022) ...................11

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
    No. A-11-CA-1034-SS, 2015 U.S. Dist. LEXIS 78120 (W.D. Tex. June 16, 2015) ..............11

*Krim v. pcOrder.com, Inc*.,
    402 F.3d 489 (5th Cir. 2005) ...................................................................................................13

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) .............................................................................................10

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) .....................................................................................................6

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ...................................................................................4, 10, 11, 12

*Malriat v. QuantumScape Corp.*,
    No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497 (N.D. Cal. Dec. 19, 2022)......4, 14

*Marcus v. J.C. Penney Co.*,
    Case No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 33257 (E.D. Tex. Mar. 8, 2017)....................2

*Monroe Cty. Employees' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019)..........................................................................................7, 8, 9

*Nakkhumpun v. Taylor*,
    782 F.3d 1142 (10th Cir. 2015) ...............................................................................................11

*Odmark v. Mesa Ltd. P'ship*,

NO. 3:91-CV-2376-X, 1992 U.S. Dist. LEXIS 16789 (N.D. Tex. June 5, 1992) ...................10

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
No. 18-871, 2020 U.S. Dist. LEXIS 177505 (D. Minn. Sep. 28, 2020) ...................................3

*Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) .................................................................................................6

*Ray v. Citigroup Glob. Mkts.*,
482 F.3d 991 (7th Cir. 2007) ...............................................................................................11

*Rooney v. EZCORP, Inc.*,
330 F.R.D. 439 (W.D. Tex. 2019) .................................................................................9, 10, 11

*Rougier v. Applied Optoelectronics, Inc.*,
No. 4:17-cv-02399, 2019 U.S. Dist. LEXIS 198919 (S.D. Tex. Nov. 13,
2019) ..................................................................................................................5, 10, 11, 12

*Ryan v. Flowserve Corp.*,
No. 3: 03-CV-1769-B ECF, 2007 U.S. Dist. LEXIS 21750 (N.D. Tex. Mar. 26,
2007) .....................................................................................................................................12

*Schaaf v. Residential Funding Corp.*,
517 F.3d 544 (8th Cir. 2008) ...............................................................................................11

*Schwartz v. Celestial Seasonings*,
178 F.R.D. 545 (D. Colo. 1998) ...........................................................................................13

*Set Capital LLC v. Credit Suisse Grp. AG*,
18 Civ. 2268 (AT), 2023 U.S. Dist. LEXIS 44762 (S.D.N.Y. Mar. 16, 2023) .......................12

*St. Clair Cty. Emps'. Ret. Sys. v. Acadia Healthcare Co.*,
No. 3:18-cv-00988, 2022 U.S. Dist. LEXIS 178750 (M.D. Tenn. Sep. 30, 2022).............5, 7, 9

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966).............................................................................................................14

*Thorpe v. Walter Inv. Mgmt., Corp.*,
No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016) ..................9

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).............................................................................................................11

*Unger v. Amedisys, Inc.*,
No. 01-703, 2003 U.S. Dist. LEXIS 27977 (M.D. La. Aug. 1, 2003) ....................................14

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) ...............................................................................................14

*United Food & Commer. Workers Union v. Chesapeake Energy Corp.*,
281 F.R.D. 641 (W.D. Okla. 2012).........................................................................................13

*Univ. of P.R. Ret. Sys. v. Lannett Co.*,
No. 21-3150, 2023 U.S. App. LEXIS 9143 (3d Cir. Apr. 18, 2023) .......................................10

*Vodicka v. Barlin*,
No. A-10-CA-076-SS, 2010 U.S. Dist. LEXIS 103700 (W.D. Tex. Sep. 29, 2010)...............11

*Warren v. Reserve Fund, Inc.*,
728 F.2d 741 (5th Cir. 1984)...................................................................................................13

**Rules & Regulations**

Fed. R. Civ. P. 23..............................................................................................................4, 9, 10

Fed. R. Civ. P. 23(a) ...................................................................................................................1

Fed. R. Civ. P. 23(b) ...................................................................................................................1

**Statutes**

The Securities Act of 1933 ..............................................................................................2, 12, 13

The Exchange Act of 1934 ..............................................................................................1, 9, 12

**INTRODUCTION**

Defendants' response only confirms that class certification is appropriate here, as it almost always is in securities cases. With respect to the Exchange Act claims, Defendants do not challenge most of Rule 23(a)'s factors, and concede that Berry's stock traded in an efficient market, creating a rebuttable presumption of reliance to satisfy Rule 23(b)'s requirement that common questions of fact and law predominate.[1]

Defendants cannot meet the very high burden of rebutting this presumption by proving the absence of price impact. As an initial matter, even Defendants' expert, Lucy Allen ("Allen"), concedes that there was negative price movement in Berry's stock following each of the corrective disclosures and that, at least, one of these declines was statistically significant, which is alone sufficient to show price impact.

Defendants' remaining arguments improperly address the merits, not class certification, and defy Supreme Court and Fifth Circuit precedent. In particular, Defendants erroneously claim that premature adjudication of loss causation was sanctioned by *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, but the phrase "loss causation" does not appear there at all. 141 S. Ct. 1951 (2021). *Goldman* did not disavow the Supreme Court's previous holdings that loss causation and reliance are distinct elements, and courts cannot consider loss causation on the merits at class certification. Defendants cite no authority to support their deliberate misreading of *Goldman*, and federal courts have squarely rejected similar attempts to expand its reach. Defendants' arguments will also fail at the merits stage. Defendants gripe that the corrective disclosures do not perfectly mirror their statements about permits, but the law of this Circuit does not require that a corrective disclosure mirror a previous misrepresentation or ***take any particular form***.

Defendants' other arguments fare even worse. Defendants concede that Dr. Cain's model is sufficient to calculate class-wide damages for the corrective disclosures, but take issue with it

---

[1] Plaintiffs incorporate all definitions identified in their Motion for Class Certification. Unless otherwise stated, internal citations and quotation marks are omitted and all emphasis is supplied.

because Plaintiffs pled the materialization of the risk theory as an alternative way of showing loss causation. A majority of federal courts, including in this Circuit, have considered and rejected this argument. Nor can Defendants prevent certification of the Securities Act Class with arguments about tracing because that, again, is a merits issue that cannot predominate over common questions of law and fact that relate to Defendants' liability in this Action. As a last-ditch effort, Defendants challenge Plaintiffs' adequacy to represent the Classes because they relied on counsel to prepare legal documents, but the Supreme Court and the Fifth Circuit have rejected this argument. A complete, fair and balanced review of Plaintiffs' testimony also shows that all of them possess an extremely high degree of familiarity with the litigation that surpasses that of the average class representative.

For all of these reasons, Plaintiffs respectfully request the Court to certify both Classes.

## ARGUMENT

### I.  Defendants Fail to Rebut the Presumption Of Reliance

#### A.  Front-End Price Movement is Not Required

To show the absence of price impact, a Defendant must prove that the price did not move ***both*** upon the misrepresentation (front-end impact) and upon the alleged corrective disclosure (back-end impact). In *Erica P. John Fund, Inc. v. Halliburton Co.*, the Fifth Circuit reaffirmed that "[p]rice impact can be shown either by an increase in price following a fraudulent public statement or a decrease in price following a revelation of the fraud." 718 F.3d 423, 434 (5th Cir. 2013), *vacated and remanded on other grounds* by *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282-83 (2014) ("*Halliburton II*"). The Supreme Court did not overturn this principle of law when it vacated the Fifth Circuit's decision on other grounds. *Id.* Courts in this Circuit agree that the Fifth Circuit's definition of price impact remains good law. *See, e.g., Marcus v. J.C. Penney Co.*, Case No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 33257, at *5 n.1 (E.D. Tex. Mar. 8, 2017).[2]

---

[2] A majority of other Circuits also concur that back-end price declines are sufficient to demonstrate price impact. *See, e.g.*, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 259 (2d Cir. 2016) (holding that defendants "cannot avoid liability for an alleged misstatement merely because the

In fact, courts in this District have repeatedly ruled that reliance can be established by a corrective disclosure alone regardless of how a stock price reacts following an alleged misstatement. *See, e.g., In re UICI Sec. Litig.*, No. 3:04-CV-1149-P, 2006 U.S. Dist. LEXIS 73753, at \*35 (N.D. Tex. Sep. 29, 2006) (ruling that 30% decline following the revelation of the misleading nature of the statements was sufficient to show reliance); *Bachow v. Swank Energy Income Advisers, LP*, No. 3-09-CV-0262-K, 2010 U.S. Dist. LEXIS 1504, at \*18-20 (N.D. Tex. Jan. 6, 2010) (similar).

Defendants misrepresent the law, claiming that the Supreme Court considers "front-end price inflation" as the "price impact that matters for the *Basic* presumption." Opp. at 15 (citing *Goldman*, 141 S. Ct. at 1961). That assertion is false. In *Goldman*, the Supreme Court held no such thing, and expressly declined to address the "validity" or "contours" of the "inflation-maintenance theory" adopted by most courts. 141 S. Ct. at 1959 n.1. Courts continue to find that an absence of front-end impact is insufficient to show the absence of price impact even after *Goldman*. *See, e.g.*, *Bond v. Clover Health Invs., Corp.*, No. 3:21-cv-00096, 2023 U.S. Dist. LEXIS 24749, at \*37-38 (M.D. Tenn. Feb. 14, 2023); *Ferris v. Wynn Resorts Ltd.*, No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374, at \*22-23 (D. Nev. Mar. 1, 2023).[3]

As such, Defendants cannot meet their heavy burden to show a lack of price impact merely by pointing to the absence of a front-end increase. *See Erica P. John Fund, Inc.*, 718 F.3d at 434.

## B. Defendants Fail to Show That *No* Price Impact Arose From the Corrective Disclosures

---

misstatement is not associated with an uptick in inflation."); *Glickenhaus & Co. v. Household Intern., Inc.*, 787 F.3d 408, 418 (7th Cir. 2015) (same); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1316 (11th Cir. 2011) (similar); *In re CoreCivic, Inc.*, No. 19-0504, 2019 U.S. App. LEXIS 25508, at \*2 (6th Cir. Aug. 23, 2019) (similar).

[3] Defendants' reliance on *IBEW Local 98 Pension Fund v. Best Buy Co.* also fails. 818 F.3d 775 (8th Cir. 2016). Federal courts in the Eighth Circuit have rejected Defendants' misinterpretation. *See, e.g., Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, No. 18-871, 2020 U.S. Dist. LEXIS 177505, at \*34 (D. Minn. Sep. 28, 2020) ("While the Eighth Circuit has not explicitly endorsed the price maintenance theory, it has not rejected the theory."); *see also Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2017 U.S. Dist. LEXIS 196235, at \*36 (S.D. Cal. Nov. 29, 2017) (observing that *Best Buy* was a unique case decided on the unusual fact that the "allegedly inflated price was established by [a] non-fraudulent disclosure"). Regardless, the Court is bound to follow the Fifth Circuit's precedent, not the Eighth's.

At the certification stage, Defendants bear the burden of production and persuasion to show by a preponderance of evidence that there was no price impact whatsoever. *Goldman*, 141 S. Ct. at 1963. Federal courts have described this as a "daunting task" that almost always cannot be accomplished at this stage. *See, e.g.*, *Bos. Ret. Sys. v. Alexion Pharm., Inc.*, No. 3:16-cv-2127 (AWT), 2023 U.S. Dist. LEXIS 64812, at *39-40 (D. Conn. Apr. 13, 2023). This is because Rule 23 does not allow courts to engage in free-ranging merits inquiries at certification, *see Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013), ***and the substantive allegations of the complaint are still presumed to be true***. *See, e.g.*, *Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058-WHO, 2022 U.S. Dist. LEXIS 232497, at *8 (N.D. Cal. Dec. 19, 2022). Quibbling about a plaintiff's expert's analysis or offering alternative causes for stock price changes do not demonstrate a lack of price impact. *Id.* at *41.

In *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), the Supreme Court held that the Fifth Circuit erred in requiring proof of loss causation at the class certification stage. 563 U.S. 804, 809 (2011). It also held that "we have never mentioned loss causation as a precondition for invoking *Basic*'s rebuttable presumption of reliance," and explained that "[l]oss causation addresses a matter different from whether an investor relied on a misrepresentation." *Id.* at 812. Subsequently, in *Ludlow v. BP, P.L.C.*, the Fifth Circuit warned courts not to test the tightness of the "fit" between a challenged statement and a corrective disclosure because doing so would "vitiate" the Supreme Court's holding in *Halliburton I*. 800 F.3d 674, 688-89 (5th Cir. 2015). Defendants ask this Court to engage in reversible error by abrogating *Ludlow* and *Halliburton I*. Opp. at 16-19 and n.6. They insinuate that *Goldman* overruled *Halliburton I*, though *Goldman* says no such thing, and that it requires an alleged misstatement to be "closely related" to a corrective disclosure, though the phrase "loss causation" or the word "fit" do not appear anywhere in *Goldman*. *Compare* Opp. at 16 *with* 141 S. Ct. at 1957-63.

Instead, *Goldman* addressed a narrow issue not relevant here: whether a generic front-end misrepresentation is so divorced from a later specific, corrective disclosure that a "mismatch" between the two "provides less reason to infer" price impact. 141 S. Ct. at 1961. Defendants do

4

not assert that any statements alleged in the Complaint are generic. Nor could they. Nothing is generic about Defendants' express denials of a permitting problem, constant attempts to minimize the severity of the issue or objective representations that the process was then working with "speed" and "efficiency." ¶86.[4]

Federal courts have repeatedly rejected attempts to broaden *Goldman* beyond its actual scope. For example, in *In re Mattel, Inc. Sec. Litig.*, the district court confirmed that "price impact and loss causation" are distinct concepts, and that *Goldman* does not require a mirror image disclosure or a direct admission that the previous misstatement is untrue as Defendants and Allen erroneously believe. No. 2:19-cv-10860-MCS-PLA, 2021 U.S. Dist. LEXIS 194121, at *16-21 (C.D. Cal. Oct. 6, 2021). Furthermore, on remand, the district court in *Goldman* rejected similar arguments, describing them as a "warped reading of the Supreme Court's 'mismatch' guidance" concerning generic statements. *In re Goldman Sachs Grp., Inc.*, 579 F. Supp. 3d 520, 538 n.19 & n.20 (S.D.N.Y. 2021).[5]

Nevertheless, Defendants repackage the same arguments about loss causation that they raised at the pleading stage. *See* ECF No. 64 at 11-13. Defendants repeat the baseless claim that the partial disclosures alleged in the Complaint are not "corrective" because they "had nothing to do with permitting." Opp. at 17. In doing so, Defendants defy well-settled law in this Circuit. At the core, Defendants, and their expert, contend that a disclosure cannot be corrective unless it is a mirror image of the misrepresentation or amounts to a confession that the Company failed to

---

[4] All "¶__" references are to the Amended Complaint filed on November 1, 2021. Dkt. No. 59.

[5] To Plaintiffs' knowledge, virtually every court to consider the issue has refused to indulge improper arguments about loss causation at the class certification stage since *Goldman* was decided. *See, e.g.*, *Ferris*, 2023 U.S. Dist. LEXIS 35374, at *30 (refusing to entertain claim that back-end price drop did not match defendants' statements because it was as an improper loss causation argument at class certification); *St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-cv-00988, 2022 U.S. Dist. LEXIS 178750, at *21-22 (M.D. Tenn. Sep. 30, 2022) (same). Similar attacks concerning the "fit" between challenged statements and corrective disclosures were repeatedly rejected by the federal courts before *Goldman* was decided. *See Seaworld Entm't, Inc.*, 2017 U.S. Dist. LEXIS 196235, at *41-42; *Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-cv-02399, 2019 U.S. Dist. LEXIS 198919, at *52-56 (S.D. Tex. Nov. 13, 2019) (similar).

5

receive permits because of Defendants' own incompetence. Opp. at 16-19; Allen Rept. ¶¶89-92, 96 (mischaracterizing Defendants' post-Class Period partial admission of pre-existing failure to secure permits before the pandemic as a "corrective disclosure" even though *the Complaint does not identify this as a loss causation event*).

The Fifth Circuit has repeatedly rejected these arguments. In *Alaska Elec. Pension Fund v. Flowserve Corp.*, it held that a corrective disclosure does not need to "precisely mirror" a prior misrepresentation or amount to an admission that a challenged statement was false. 572 F.3d 221, 230 (5th Cir. 2009). In *Pub. Emples. Ret. Sys. of Miss. v. Amedisys, Inc.*, it held that a corrective disclosure can take any form, come from any source and, like here, can be based on a series of partial disclosures that do not necessarily "match" the statements in the way imagined by Defendants. 769 F.3d 313, 322 (5th Cir. 2014). All the law requires is that a corrective disclosure be "related to" a challenged statement. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255-56 (5th Cir. 2009).

The alleged corrective disclosures easily surpass the Fifth Circuit's "related to" test and are now corroborated by additional evidence produced in discovery. The Company's stock price declined repeatedly after the Company announced production cuts. ¶¶124-129. Confidential Witness testimony described in the Complaint and not challenged by any evidence proffered by Defendants demonstrates that the Company's permitting process and production targets did not match the true permit flow and implementation plan. ¶¶108-120. Additional documentary evidence produced in discovery shows that the failure to seek timely permits was, indeed, a chronic problem at Berry, more severe than any of its peer companies. For instance, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

6



; *see also* Cain Reply Report, ("Cain Reply"), attached as Exhibit D ¶26. This documentary evidence corroborates the Complaint's allegations and utterly refutes Defendants' naked assertion that their chronic failure to seek timely permits was divorced from the information disclosed in the corrective events. Opp. at 1-3. Thus, even when properly considered at the merits stage, Defendants' arguments will fail.

Defendants' creative reimagining of *Goldman* to foreclose materialization of the risk also fails. Opp. at 19 n.8. *Goldman* said nothing about the materialization of the risks theory. 141 S. Ct. at 1957-63. And, since *Goldman*, courts continue to find that materialization of the risks can be invoked as a loss causation theory. *See, e.g.*, *In re Teva Sec. Litig.*, No. 3:17-cv-00558 (SRU), 2023 U.S. Dist. LEXIS 75063, at *128-30 (D. Conn. May 1, 2023); *see also Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 496-97 (M.D. Tenn. 2019) (certifying class).

Nothing in Allen's Report meets Defendants' heavy burden to show the ***complete absence*** of price impact. Allen concedes that there is a statistically significant price reaction to the August 4, 2020 corrective disclosure. Allen Rept. ¶¶8, 75-82; Cain Reply, Exhibit D ¶12. This concession "dooms" the opposition to class certification because a statistically significant reaction to even a single disclosure is sufficient to certify a class. *See, e.g.*, *Monroe Cty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019) (granting class certification when a defense expert similarly conceded that, at least, one statistically significant price decline after a corrective disclosure existed); *Acadia Healthcare Co.*, 2022 U.S. Dist. LEXIS 178750, at *14-15 (***same where Allen had made a similar concession***).

7

Dr. Cain, who used a consistent and well-accepted methodology, also found that the price decline following the corrective disclosure on April 1, 2020 was statistically significant at the 98% level. Cain Reply ¶¶8, 11. To avoid conceding the same, Allen uses a dubious approach her firm admits is improper and calls "p-Hacking;" that is, "structur[ing her] analysis in reverse, choosing a methodology because it yields favorable results." *See* NERA, "p-Hacking and Event Studies in Securities Litigation" (April 12, 2023), available at https://www.nera.com/content/dam/nera/publ ications/2023/PUB_p-Hacking_and_Event_Studies.pdf (also stating that "there may sometimes be a reason to deviate from a standard methodology" but "there should be a high burden to show that the deviation is theoretically justified and not designed for the purpose of achieving certain results.").

Allen engages in the very sort of outcome-determinative manipulation her firm says to avoid. She employs cherry-picked, inconsistent methods designed to reach a preconceived result. She cites no academic literature to support the inconsistent estimation windows for her event study or her ad hoc decision to disregard a Market Index *that is consistent with a peer group the Company itself identified in its SEC filings*. Cain Reply, Exhibit D ¶14. Dr. Cain correctly describes her approach as subjective, inconsistent, unscientific, and unable to be replicated with reliability. Cain Reply, Exhibit D ¶¶8-17. As for the corrective disclosure on November 3, 2020, Dr. Cain found that the price reaction was statistically significant at the 89% level (relatively high in its own right), but the absence of significance at the 95% level for this decline is not sufficient to demonstrate a lack of price impact, particularly when internal documents produced in discovery corroborate Plaintiffs' theory of the case. *S. Co.*, 332 F.R.D. at 394. This is because an "absence of [statistical] proof is not proof of absence." *Allegheny Cty. Employees' Ret. Sys. v. Energy Transfer LP*, No. 20-200, 2022 U.S. Dist. LEXIS 150826, at *20-21 (E.D. Pa. Aug. 23, 2022) (collecting cases).[6]

---

[6] Plaintiffs note that, in *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton III*"), 309 F.R.D. 251, 270 (N.D. Tex. 2015), Judge Lynn found that defendants rebutted the presumption of reliance because one of the stock drops was not statistically significant at the 95% confidence level.

Allen's remaining conjectures are at war with the evidence in this case (which she refuses to address) and fail to show the absence of price impact. The first half of her Report is dedicated to a discussion of news and commentary about oil price wars, Covid-19 and the performance and expectations of other oil companies, but Allen fails to tether these facts to Berry in a meaningful way. She does not cite one internal document to illustrate that Berry reduced production targets because of any of these factors. Regardless, claims that other factors also contributed to a price decline do not show the ***absence*** of price impact, and therefore cannot rebut the presumption of reliance. *See, e.g.*, *Acadia Healthcare Co.*, 2022 U.S. Dist. LEXIS 178750, at *21-22; *In re Apple Sec. Litig.*, No. 4:19-cv-2033-YGR, 2022 U.S. Dist. LEXIS 23771, at *27-28 (N.D. Cal. Feb. 4, 2022). Finally, Allen heavily relies on cherry-picked, positive analyst reports to build most of her arguments, *see*, *e.g.*, Allen Rpt. ¶¶46-51, but that "is not a scientifically accepted method of demonstrating price impact or its absence." *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 17 Civ. 01580 (LGS), 2019 U.S. Dist. LEXIS 180895, at *96 (S.D.N.Y. Oct. 16, 2019) (rejecting Allen's similar attempt in that case). Moreover, "[t]hat market commentary did not mention the corrective disclosure does not by itself mean that the corrective disclosure had no price impact." *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 33637, at *44-46 (S.D. Fla. Mar. 16, 2016).

For all of these reasons, Defendants fail to rebut the presumption of reliance by a preponderance of evidence. Because Defendants concede that all the other requirements of Rule 23 are met, the Court should certify the Exchange Act Class.

**II.    Plaintiffs are entitled to a presumption of reliance under *Affiliated Ute***

---

However, more recent decisions from courts in this Circuit have rejected this approach, which is inconsistent with economic literature, and the majority rule of law. *See, e.g.*, *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019); *Energy Transfer LP*, 2022 U.S. Dist. LEXIS 150826, at *25-26; *S. Co.*, 332 F.R.D. at 394. It also overemphasizes quantitative factors, and conflicts with the Supreme Court's instruction that both quantitative and qualitative factors must be weighed to consider price impact. *Goldman*, 141 S. Ct. at 1960. In any event, in *Halliburton III*, Judge Lynn explicitly ruled that whether a disclosure is corrective is ***not appropriate*** to address at the class certification stage, and that is all Defendants argue here. 309 F.R.D. at 261-62.

9

Defendants also fail to show any reason why reliance should not alternatively be presumed under "*Affiliated Ute.*" Misstating the law, Defendants contend that the *Affiliated Ute* presumption applies only to "pure omissions" cases. Opp. at 19. That is incorrect. Under Fifth Circuit precedent, the *Affiliated Ute* presumption applies to claims grounded "primarily" in omissions, as here, even if affirmative misrepresentations are also alleged. *See Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1119 (5th Cir. 1988).[7] Here, Plaintiffs' core theory depends on **omissions,** specifically Defendants' failure to disclose chronic internal deficiencies impeding the Company's permits. Indeed, Plaintiffs' Regulation S-K claim is entirely based on a pure omission theory, and applies to the entire Class Period for all the claims alleged. ¶¶76-81. For these reasons, Plaintiffs are also entitled to a presumption of reliance established by *Affiliated Ute*.

## III.    Damages Can Easily Be Calculated on a Class-Wide Basis

In *Ludlow*, the Fifth Circuit held that the out-of-pocket loss damages theory utilized by Dr. Cain is an accepted and appropriate measure of evaluating damages in a securities fraud class action when corrective disclosures are alleged. 800 F.3d at 688. Recognizing this major impediment, Defendants do not assert that Dr. Cain's damages model is deficient with respect to measuring damages based on the corrective disclosures.[8] They simply repeat the dubious claim that no corrective disclosure exists because "the press releases had nothing to do with permitting." Opp. at 20. This argument is utterly without merit as fully explained in Section I above. For this

---

[7] *See also Odmark v. Mesa Ltd. P'ship*, NO. 3:91-CV-2376-X, 1992 U.S. Dist. LEXIS 16789, at *15-16 (N.D. Tex. June 5, 1992); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 739 (S.D. Tex. 2006). *Krogman v. Sterritt* is not on point because the "gravamen" of the complaint there did not depend primarily on omissions. 202 F.R.D. 467, 479 (N.D. Tex. 2001).

[8] To Plaintiffs' knowledge, every federal court has rejected attacks on the traditional out-of-pocket method when corrective disclosures are alleged. *See, e.g.*, *EZCORP, Inc.*, 330 F.R.D. at 450-51; *Rougier*, 2019 U.S. Dist. LEXIS 198919, at *45-46; *Univ. of P.R. Ret. Sys. v. Lannett Co.*, No. 21-3150, 2023 U.S. App. LEXIS 9143, at *8 (3d Cir. Apr. 18, 2023); *In re Apple Sec. Litig.*, 2022 U.S. Dist. LEXIS 23771, at *32-33; *In re Teva Secs. Litig.*, No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 43316, at *129-30 (D. Conn. Mar. 9, 2021); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413–14 (E.D. Va. 2015).

reason alone, Defendants cannot show any individual damage-related issues that would possibly predominate at trial.

Nor can individual issues predominate based on Defendants' criticism of Plaintiffs' alternate loss causation theory, the materialization of concealed risks. Opp. at 21. First, by raising a common criticism that would apply to all class members, Defendants underscore that damages are subject to common resolution, not individual issues. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). Second, Defendants' underlying legal assumption is dead wrong. Courts in this Circuit have repeatedly sustained claims where loss causation is predicated on the materialization of concealed risks that come to light after misrepresentations are made. *See, e.g., Vodicka v. Barlin*, No. A-10-CA-076-SS, 2010 U.S. Dist. LEXIS 103700, at *34-36 (W.D. Tex. Sep. 29, 2010); *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, No. A-11-CA-1034-SS, 2015 U.S. Dist. LEXIS 78120, at *35-36 n.6 (W.D. Tex. June 16, 2015). Every Circuit to address the issue has also approved materialization of the risk as a way of establishing loss causation. *See Nakkhumpun v. Taylor*, 782 F.3d 1142, 1156 (10th Cir. 2015); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 513 (2d Cir. 2010); *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 550 (8th Cir. 2008); *Ray v. Citigroup Glob. Mkts.,* 482 F.3d 991, 995 (7th Cir. 2007).

That Plaintiffs assert materialization of the risks as an alternate loss causation theory poses no obstacle to calculating class-wide damages, and courts in this Circuit have rejected Defendants' arguments. *See Rougier*, 2019 U.S. Dist. LEXIS 198919, at *52-54 (rejecting identical argument where, like here, the out-of-pocket model was consistent with the fraud on the market theory of liability, and plaintiffs' expert's model could disaggregate losses not attributable to fraud).[9] *Ludlow* does not demand a different result. Opp. at 21 (citing 800 F.3d at 691). There, the plaintiffs sought consequential damages from a low-probability event, admittedly relied on their own risk assessments as opposed to the integrity of the market, and conceded that class members had varied

---

[9] *See also Junge v. Geron Corp.*, No. C 20-00547-WHA, 2022 U.S. Dist. LEXIS 61962, at *27-28 (N.D. Cal. Apr. 2, 2022) (rejecting the same arguments as the ones raised here); *EZCORP*, *Inc*., 330 F.R.D. at 450-51 (similar); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions*, Inc., 322 F. Supp. 3d 676, 692-93 (D. Md. 2018) (similar).

levels of risk tolerance. *Id*. None of these factors are present here. *See, e.g., In re Anadarko Petrol. Corp. Sec. Litig.*, No. 4:20-cv-00576, 2022 U.S. Dist. LEXIS 180240, at \*19-21 (S.D. Tex. Sep. 28, 2022) (refusing to apply *Ludlow* for some of these reasons); *Rougier*, 2019 U.S. Dist. LEXIS 198919, at \*50-54 (similar). *Indiana Pub. Ret. Sys. v. AAC Holdings, Inc*. stands alone and conflicts with decisions in the same Circuit.[10] No. 3:19-CV-00407, 2023 U.S. Dist. LEXIS 31022 (M.D. Tenn. Feb. 24, 2023). The Court should not follow it. For all of these reasons, damages can easily be calculated on a class-wide basis, and the Court should certify the Exchange Act Class.

## IV.    Merits Issues Cannot Preclude Certification of the Securities Act Class

Relying on Allen's speculative assumptions, Defendants assert that it is "virtually impossible" for Plaintiffs to trace their shares to Berry's Registration Statement. Opp. at 8-9 (citing Allen Rpt. ¶¶109-110). Allen claims no expertise on tracing, and she cites no evidence establishing that ***Plaintiffs'*** shares were not traceable to the Registration Statement. Nor does Allen prove that unregistered shares were traded at all during the time in question, let alone on the dates when Plaintiffs purchased shares. Regardless, tracing is a fact-intensive issue that goes to the merits and is not appropriately resolved at this stage. *See In re Cobalt Int'l Energy, Inc. Sec. Litig*., No. H-14-3428, 2017 U.S. Dist. LEXIS 91938, at \*16 (S.D. Tex. June 15, 2017) (ruling that tracing is a merits issue that should not be considered at class certification); *Ryan v. Flowserve Corp.*, No. 3:03-CV-1769-B ECF, 2007 U.S. Dist. LEXIS 21750, at \*10-11 (N.D. Tex. Mar. 26, 2007) (denying motion to dismiss for lack of standing because "tracing is truly an issue of proof of damages, not standing.").[11]

---

[10] *See Cosby v. KPMG, L.L.P.*, No. 3:16-CV-121-TAV-DCP, 2020 U.S. Dist. LEXIS 113424, at \*89-90 (E.D. Tenn. June 29, 2020) (refusing to apply *Ludlow* because, like here, the complaint did not seek consequential damages); *see also In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG), 2021 U.S. Dist. LEXIS 170310, at \*47-48 (S.D.N.Y. Sep. 8, 2021) (distinguishing *Ludlow* where, like here, individual class members did not claim that no shares would be bought but for the alleged misrepresentations).

[11] *See also Set Capital LLC v. Credit Suisse Grp. AG*, 18 Civ. 2268 (AT), 2023 U.S. Dist. LEXIS 44762, at \*28 (S.D.N.Y. Mar. 16, 2023); *Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.*, 338 F.R.D. 205, 215 (S.D.N.Y. 2021); *Cosby v. KPMG, LLP, No. 3:16-CV-121-TAV-DCP*, 2021 U.S. Dist. LEXIS 87324, at \*33-35 (E.D. Tenn. May 7, 2021);

12

Claims that merits-based questions about tracing raise concerns about typicality, adequacy and predominance have been repeatedly rejected. *See Cosby*, 2021 U.S. Dist. LEXIS 87324, at *34; *Schwartz v. Celestial Seasonings,* 178 F.R.D. 545, 554 (D. Colo. 1998); *In re Vicuron Pharm. Inc. Sec. Litig*., 233 F.R.D. at 425 n.2; *In re Cobalt Int'l Energy, Inc. Sec. Litig*., 2017 U.S. Dist. LEXIS 91938, at *16; *Chesapeake Energy Corp*., 281 F.R.D. at 656. *Krim v. pcOrder.com, Inc*. is not on point. 402 F.3d 489, 502 (5th Cir. 2005). In *Krim*, the Fifth Circuit held that a plaintiff cannot rely on mere probabilities to trace shares, and plaintiffs' expert conceded a likelihood that the shares could not be traced. *Id*. at 492, 502. Here, Plaintiffs do not rely on statistical probabilities, and Dr. Cain explains that modern computing and accounting methods can be utilized to trace shares. Cain Reply, Exhibit D ¶32 (referencing the Consolidated Audit Trail that was not implemented at the time *Krim* was considered); *see also In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1181 (N.D. Cal. 2017) (crediting accounting methods to conclude that tracing was established). Equally meritless is Defendants' reliance on cases that discussed Section 12 of the Securities Act, which requires direct privity between the parties, and has no application here whatsoever. *See* Opp. at 7 (citing cases).[12] In any event, evidence at the merits stage will determine traceability. It cannot serve as a pretext to avoid class certification now.

*Gaynor v. Miller*, No. 3:15-CV-545-TAV-DCP, 2018 U.S. Dist. LEXIS 132351, at *54 (E.D. Tenn. Aug. 6, 2018); *Beaver Cty. Emples. Ret. Fund v. Tile Shop Holdings, Inc*., No. 14-786 ADM/TNL, 2016 U.S. Dist. LEXIS 99479, at *40 (D. Minn. July 28, 2016); *United Food & Commer. Workers Union v. Chesapeake Energy Corp*., 281 F.R.D. 641, 656 (W.D. Okla. 2012); *In re Vicuron Pharm. Inc. Sec. Litig*., 233 F.R.D. 421, 425 n.2 (E.D. Pa. 2006); *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 46 (D.D.C. 2006).

[12] Defendants' reliance on *Johnson v. CBD Energy., Ltd*. is also misplaced. No. H-15-1668, 2016 U.S. Dist. LEXIS 87174, at *13 (S.D. Tex. July 6, 2016). That case acknowledges that it is against the weight of authority, including cases from this District. *Id*. at *11-17. It was also decided on a motion to dismiss, but Defendants here did not move to dismiss for lack of tracing. They cannot misuse their opposition to certification to resurrect abandoned arguments now. *See, e.g.*, *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 267-68 (D.D.C. 2014) (enforcing forfeiture and refusing to allow a party to resurrect abandoned arguments at summary judgment because they were waived at the pleading stage). Similarly, *In re Initial Pub. Offering Sec. Litig*. goes against the weight of authority in that same District. 227 F.R.D. 65, 118 (S.D.N.Y. 2004). *Warren v. Reserve Fund, Inc*. did not involve the Securities Act and has nothing to do with tracing. 728 F.2d 741 (5th Cir. 1984). And, in *In re STEC Inc.*, No. SACV 09-01304-JVS (MLGx),

**V.      Plaintiffs' Knowledge and Participation Surpass the Threshold for Adequacy**

Defendants violate applicable standards in their attempt to mischaracterize Plaintiffs as inadequate. Specifically, Defendants criticize Plaintiffs for relying on their counsel to draft legal pleadings and briefs, and seeking counsel's advice on legal "strategy." Opp. at 23-25. That is how most lawyer-client relationships work. "[T]here is no requirement for a named plaintiff to have expert or detailed knowledge of all aspects of a case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is expected in complex securities litigation." *Unger v. Amedisys, Inc.*, No. 01-703, 2003 U.S. Dist. LEXIS 27977, at \*15 (M.D. La. Aug. 1, 2003), *aff'd by Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

Defendants' opinions also defy controlling Supreme Court and Fifth Circuit authority. In *Surowitz v. Hilton Hotels Corp.*, the Supreme Court held that, in complex securities cases such as this one, a class representative does not need to have intricate knowledge of the facts. 383 U.S. 363, 370 (1966); *see also QuantumScape Corp.*, 2022 U.S. Dist. LEXIS 232497, at \*14-15 (applying *Surowitz* and collecting cases that rejected the same arguments advanced here). Similarly, in *Horton v. Goose Creek Sch. Dist.*, the Fifth Circuit held that a class representative only needs to have "familiarity with the complaint and the concept of a class action." 690 F.2d 470, 484 (5th Cir. 1982). In *Feder v. Elec. Data Sys. Corp*, the Fifth Circuit emphasized that class representatives "need not be legal scholars." 429 F.3d 125, 129-30 (5th Cir. 2005).

Nor can Defendants' mischaracterizations be accurate. Plaintiffs' testimony demonstrates that they have an extremely high degree of knowledge about the nature of the claims asserted and responsibilities as representatives of the Class. For example, Torres was repeatedly asked why the challenged statements were misleading, and he repeatedly responded that Defendants' public representations were contradicted by Confidential Witness accounts just as the Complaint alleged. *See, e.g.*, Torres Dep. 180:24-181-7 ("[F]rom what was… brought up in the investigation with the confidential witnesses, it just seems like there was a lot of permitting delays and it just kind of

_____

plaintiffs admitted that they had no standing to sue under Section 11. 2012 U.S. Dist. LEXIS 186180, at \*18 (C.D. Cal. Mar. 7, 2012).

contradicts the -- like, this guidance. It's like, okay, we're moving funds to get permits processed to not get, like, regulatory delays, but that kind of is not what was found within the investigation."); *see also* Torres Dep. 145:23-147:22; 152:10-16, 195:3-9 (similar). Plaintiffs explained that Defendants concealed a chronic failure to secure timely permits, which harmed the Company's production targets. *Id.*; DeAngelis Dep. 34:8-18; Inman Dep. 125:5-126:14; 154:15-155:14.[13] Plaintiffs also confirmed that they met several times with counsel, reviewed the pleadings and legal documents sent in discovery, and understood their responsibilities to the Class. *See, e.g.*, Inman Dep. 48:3-18 (explaining he met with counsel around "fifteen" times, and exchanges emails with counsel twice a month); Torres Dep. 218:9-15; DeAngelis Dep. 46:4-14; 49:3-22 (similar); *see also* DeAngelis Dep. 49:3-22 ("I want to know what we are doing. Why are we doing that?"); Torres Dep. 103:12-14 (explaining the lawsuit was not brought at direction of counsel); Inman Dep. 48:8-23 (explaining he meets with counsel to discuss filings). Nothing more is required to show adequacy, and Defendants' reliance on "selectively quoted snippets" from hours-long testimony cannot show infirmity. *See Bond*, 2023 U.S. Dist. LEXIS 24749, at *24-25 (rejecting similar attempt).[14]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge the Court to grant their motion to certify the Classes.

Dated: May 26, 2023

Respectfully submitted,

**POMERANTZ LLP**

---

[13] The deposition transcript excerpts are attached as Exhibits E, F, and G, for Torres, DeAngelis, and Inman, respectively.

[14] Nothing Defendants cite remotely helps them. *Ditcharo v. United Parcel Serv., Inc.* did not address a single issue raised by Defendants here. 376 F. App'x 432, 438 (5th Cir. 2010). In *In re Kosmos Energy LTD. Sec. Litig.*, the plaintiff did not know basic information such as the names of the parties sued. 299 F.R.D. 133 (N.D. Tex. 2014). The other cited authorities found inadequacy based on similarly extreme deficiencies far removed from the facts of this case. Opp. at 24-25.

15

/s/ *Brian P. O'Connell*

Joshua B. Silverman
Omar Jafri
Brian P. O'Connell
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel:     (312) 377-1181
Fax:     (312) 377-1184
Email: jbsilverman@pomlaw.com
         ojafri@pomlaw.com
         boconnell@pomlaw.com


**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*

Phillip Kim
Ha Sung (Scott) Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax:     (212) 202-3827
Email:  pkim@rosenlegal.com
         skim@rosenlegal.com


*Lead Counsel for Plaintiffs*


**GRAVES LAW OFFICE**
Curtis C. Graves
12700 Park Central Drive
Suite 520
Dallas, Texas 75251
Telephone: (214) 321-6940
Facsimile: (866) 770-6949
curtis@cgraveslaw.com


**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe
Texas Bar No. 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: 972-521-6868
Facsimile: 346-214-7463
wbriscoe@thebriscoelawfirm.com

16

*Liaison Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Eitan Kimelman
60 E 42nd Street, Suite 4600, New York,
New York 10165
Phone: 212-697-6484
Fax:     212-697-7296
Email: eitank@bgandg.com

**LEVI & KORSINSKY, LLP**
Daniel Tepper (*pro hac vice forthcoming*)
55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
dtepper@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-3599
Facsimile: (212) 214-0506
Email: passmore@bespc.com


*Additional Counsel for Plaintiffs*

17

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 26, 2023, I served a copy of the Reply Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel to counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on May 26, 2023

*/s/ Brian P. O'Connell*
Brian P. O'Connell