# Exhibit E

CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

*   *   *

LUIS TORRES, ALLIA DEANGELIS,

DARRICK INMAN, Individually

and On Behalf of All Others

Similarly Situated,

　　　　Plaintiffs,

　　vs.　　　　　　　　　　CASE NO. 3:20-CV-3464-S

BERRY CORPORATION, ARTHUR T.

SMITH, CARY BAETZ, GARY A.

GROVE, BRENT S. BUCKLEY,

KAJ VAZALES, and EUGENE J. VOILAND,

　　　　Defendants.

*   *   *

　　　　Remote deposition of LOUIS H. TORRES, Plaintiff herein, called by the Defendants for cross-examination pursuant to the Rules of Civil Procedure, taken before me, Kathy S. Wysong, a Notary Public in and for the State of Ohio, at 5132 South Passage Drive, Pittsburgh, Pennsylvania, on Wednesday, April 5, 2023, at 10:59 a.m.

*   *   *

CONFIDENTIAL

Page 103

A.   No.

Q.   Okay.  Thank you.  Have you met with any other class members?

A.   No.

Q.   Why not?

A.   I have not received their, like, contact information or been introduced.

Q.   Okay.  And, Mr. Torres, did you purchase any Berry's security at the direction of counsel?

A.   No.

Q.   And did you bring this lawsuit at the direction of counsel?

A.   No.

Q.   Other than the retainer agreements that were produced by you in this litigation, do you have any other agreements in place, oral or in writing, relating to the receipt of payment or anything of value from your participation in this lawsuit?

A.   No.

Q.   Thank you.  Mr. Torres, do you know what the Berry Corporation does?

A.   Like, for a living?

Q.   Do you know their business, what

CONFIDENTIAL

Page 145

thirty-five of the pdf and the second bullet point down. Do you see that bullet point?

A. Where it says our business?

Q. Yes, our business. Do you see that?

A. Yes.

MS. PEIRSOL: Can you blow that up for me, Kayla.

BY MS. PEIRSOL:

Q. And the last sentence in that bullet point says, our capital investment program is also susceptible to risks, including regulatory and permitting risks, that could materially affect its implementation. Do you see that?

A. Yes.

Q. What does that sentence mean to you?

A. It's kind of an outline of what could happen in the future.

Q. And here they're talking about regulatory -- regulatory and permitting risks; is that right?

A. Yeah, what could be in the future, correct.

Q. And that's what you said that you had understood one of the risk factors to be, right?

A. Correct.

Page 146

Q. Anything about this statement that you consider to be false, Mr. Torres?

MR. JAFRI: Objection, calls for a legal conclusion.

BY MS. PEIRSOL:

Q. You can answer.

A. Okay. In -- like, in isolation, but as, like, kind of stated in the complaint with the conjunction of the confidential witnesses, the fact that this says this could be materially, that contradicts the fact that the witnesses pretty much are saying there was. So --

Q. There was what? I'm sorry, I'm not following.

A. This was misleading because this is kind of stating, like, they're -- it could be materially affected, whereas at this point in time there actually were risks.

Q. I'm sorry, can you restate that?

MS. PEIRSOL: Or actually, Madam Court Reporter, can you read that back to me because I'm just not understanding what he said and it's probably me, so if you could just repeat it back to me, that would be helpful.

(Record read.)

Page 147

BY MS. PEIRSOL:

Q.    Okay.  So I don't think I understand your answer, Mr. Torres.  Can you tell me in what way this statement is false?

MR. JAFRI:  Objection, asked and answered.

BY MS. PEIRSOL:

Q.    You can answer.

A.    Could.  The word could.  Just like in -- like words could and may.  Some background, also, I read -- just for my profession, I read, like, a lot of regs and those words matter a lot.  So when -- when -- when there's, like, a could be, it's not necessarily outlined that there are currently.

Q.    Okay.  And what's your basis for understanding at this time, when the registration was put out in July of 2018, that there were?

A.    In isolation, there are not, but in conjunction with the complaint and the confidential witnesses, it -- it doesn't corroborate that there weren't.

Q.    Okay.  I understand.  Thank you.  Did you rely on this statement or any of these other risk factors in purchasing your Berry stock?

CONFIDENTIAL

Page 152

in our permitting process.  Do you see that?

A.    Yes.

Q.    Okay.  What does that statement mean to you?

MR. JAFRI:  Objection, lack of personal knowledge and assumes facts not in evidence.

BY MS. PEIRSOL:

Q.    You can answer.

A.    So in -- just looking at the couple of sentences or two sentences or whatever, the some is minimizing the actual permitting issues in corroboration with, like, the amended complaint. Yeah, it's just -- it's -- it's minimizing that there are some whereas in there's probably a material impact.

Q.    Okay.  At this time in 2018, were you aware of a material impact on the company of these permitting of the timing issues and the permitting process?

MR. JAFRI:  Objection, vague and assumes facts not in evidence.

BY MS. PEIRSOL:

Q.    You can answer, Mr. Torres.

A.    Management did not disclose the

Page 180

interpretation.  That's what I mean by not tying.

Q.   Okay.  So you're saying that this is misleading because the capital, based on what you learned in the investigation, should have been allocated to permits and not to areas that are less impacted by regulatory permitting delays; is that what you're saying?

MR. JAFRI:  Objection.  There's no question pending, and he's already answered your question.

THE WITNESS:  So with the reallocation -- it sounds like they're reallocating capital into areas -- so that my interpretation of this sentence is like, okay, cool, you're moving it into areas that you're going to get more permits processed.  That's my kind of -- that's my interpretation of this.

BY MS. PEIRSOL:

Q.   Okay.  Perfect.  And why is that your interpretation of this statement?  What -- what -- what makes this misleading or false, this statement, based on your interpretation?

MR. JAFRI:  Objection, form.

THE WITNESS:  Just from what was kind of brought up in the investigation with the

Page 181

confidential witnesses, it just seems like there was a lot of permitting delays and it just kind of contradicts the -- like, this guidance.  It's like, okay, we're moving funds to get permits processed to not get, like, regulatory delays, but that kind of is not what was found within the investigation.

BY MS. PEIRSOL:

Q.   Okay.  So what was found in the investigation that differs from this?  That's what I'm trying to understand.

MR. JAFRI:  Objection, asked and answered.

THE WITNESS:  It's just the permitting -- permitting delays is all I'm getting -- kind of pointing out.  Because this statement just says relocated the capital to areas which are less impacted; but from statements of confidential witnesses, it says there was a -- it was a large amount of permitting issues.

BY MS. PEIRSOL:

Q.   And because there was an alleged large amount of permitting issues, that makes this statement false and misleading?

MR. JAFRI:  Objection, argumentative.

Page 194

stating, yes.

Q.   And also capital expenditure, right?

A.   Reduced planned capital expenditure, yeah, in response to current marketing conditions. That's correct.

Q.   Okay.  Anything in this press release mention permitting delays?

A.   Not that I saw other than maybe in their forward-looking statement, but not relating to what, like, happened in the past.  It just talks about they will continue to work on their plan for California regulation, but I didn't see anything about permitting delays.

Q.   So here the company is not blaming the reduced planned capital expenditures or the targeted production on permitting delays, is it?

MR. JAFRI:  Objection, form.

BY MS. PEIRSOL:

Q.   Based on your reading of this press release.

MR. JAFRI:  Same objection.

THE WITNESS:  With -- tied to the investigation that was done in the complaint, like, this -- their -- no, they're not stating their operational permitting delays just does

Page 195

not -- their current market conditions is what they're blaming this -- like, the reason for these changes in response to that. But they're not disclosing, like, what's actually happening based on the investigation.

BY MS. PEIRSOL:

Q.   And what is actually happening?

A.   That they're not processing permits appropriately.

Q.   Okay.  Thank you.  And does this press release reveal previously undisclosed permitting problems?

A.   I don't recall.  No, I don't think so.

Q.   Did this press release in any way affect your decision to continue to hold or not sell your Berry securities?

A.   Yeah, the -- the big one that was frustrating is -- where is it?  It's probably more frustrating more than anything.  Yeah, down at -- we -- where is it?  However, currently we believe it is in our best interest of our shareholders to suspend the quarterly dividend at this time.

Q.   And what about that statement caused you not to sell at that point?

CONFIDENTIAL

Page 218

that you went and looked on -- looked at certain filings on PACER, right?  Do you remember that?

A.   Yes.

Q.   Was there anything, when you viewed on PACER, that was filed by the plaintiffs that you -- you know, that we had not sent you before?

MS. PEIRSOL:  Objection.

BY MR. JAFRI:

Q.   Let me rephrase the question.  Before anything was filed under your name, did your counsel from Pomerantz send you the document?

A.   Yes, you sent me those documents.

Q.   And did you approve of those documents when they were filed?

A.   Yes.

Q.   Okay.  Now, one final question that I had is, you know, you had mentioned in between breaks, and I think you've clarified this testimony already but I just wanted to make sure the record is straight, when Ms. Peirsol and you were discussing these issues about the documents that were filed, you remember there was one document that had the word certification in it? Do you recall?

MS. PEIRSOL:  Objection, form.

CONFIDENTIAL

Page 221

STATE OF OHIO          )

COUNTY OF MONTGOMERY )  SS: CERTIFICATE

I, Kathy S. Wysong, a Notary Public within and for the State of Ohio, duly commissioned and qualified,

DO HEREBY CERTIFY that the above-named LUIS H. TORRES, was by me first duly sworn to testify the truth, the whole truth and nothing but the truth.

Said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting.

I FURTHER CERTIFY that I am not a relative or Attorney of either party, in any manner interested in the event of this action, nor am I, or the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).

80

CONFIDENTIAL

Page 222

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office at Dayton, Ohio, on this 10th day of April, 2023.

_Kathy S. Wysong_
_____

KATHY S. WYSONG, RPR

NOTARY PUBLIC, STATE OF OHIO

My commission expires 12-25-2023