# Exhibit G

CONFIDENTIAL TESTIMONY

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

* * *

LUIS TORRES, ALLIA DEANGELIS,

DARRICK INMAN, Individually

and On Behalf of All Others

Similarly Situated,

     Plaintiffs,

   vs.               CASE NO. 3:20-CV-3464-S

BERRY CORPORATION, ARTHUR T.

SMITH, CARY BAETZ, GARY A.

GROVE, BRENT S. BUCKLEY,

KAJ VAZALES, and EUGENE J. VOILAND,

     Defendants.

* * *

     Remote deposition of DARRICK C. INMAN, Plaintiff herein, called by the Defendants for cross-examination pursuant to the Rules of Civil Procedure, taken before me, Kathy S. Wysong, a Notary Public in and for the State of Ohio, at 15913 Northeast 83rd Street, Vancouver, Washington, on Wednesday, April 5, 2023, at 11:05 a.m.

* * *

90

CONFIDENTIAL TESTIMONY

Page 47

THE VIDEOGRAPHER:  On the record. 12:08.

BY MS. PRIETO:

Q.   Mr. Inman, I know we've talked briefly about your engagement with your counsel, Pomerantz, and also Bronstein.  I just have a few more questions.  Prior to engaging Pomerantz and, you know, after you saw the notice from Bronstein, did you do any research on Pomerantz's law firm or, you know, looking into any of the attorneys that work there?

A.   I did not, no, ma'am.

Q.   And since the initiation of this lawsuit, roughly -- or how many times have you met with your counsel remotely?

A.   Oh.  Quite a few times.  I don't know exactly how many, but quite a few times.

Q.   Would you say fifty?

A.   Not that --

MR. O'CONNELL:  Calls for speculation.

THE WITNESS:  Not that many, no, ma'am.

BY MS. PRIETO:

Q.   Less than ten?

Page 48

A.    Plus or minus.

Q.    Less than fifteen?

MR. O'CONNELL:  Object to form.

THE WITNESS:  Yeah, it's hard to say, ma'am, but it's -- it was quite a few, but around that -- around that, that's about right.

BY MS. PRIETO:

Q.    And all -- all those meetings were done remotely; is that correct?

A.    Yes, ma'am, that is correct.

Q.    And you also mentioned that you communicate via e-mail.  What would you say the frequency is interfacing with your counsel via e-mail?

A.    Probably once, twice a month.  It depends on -- as these exhibits that you're showing have come down -- have been written up and drafted and then sent to me to look at and review.

Q.    And you mentioned that, you know, when a filing comes up for this case you receive a copy of that via e-mail from your counsel.  Do you then proceed to meet or communicate with your counsel regarding those filings?

A.    Yes, ma'am.

MR. O'CONNELL:  Object to form.

CONFIDENTIAL TESTIMONY

Page 125

testified that you were aware that, you know, one of the risks of purchasing Berry stock is that there are potential regulatory risks, correct?

A.    Yes, ma'am.

Q.    In here Berry is disclosing those -- that there are issues with the UIC regulations, correct?

MR. O'CONNELL:  Object to form.

THE WITNESS:  Yes, ma'am.  So just for clarification here, when I'm looking at all these documents, I'm -- the basis is based off the document itself as far as not being misleading and all that stuff.  However, we are referring to the employees that say this information is not correct, right.

BY MS. PRIETO:

Q.    Okay.  Can you repeat that one more -- one more time, Mr. Inman?

A.    Yeah.  So the document itself, it doesn't look misleading, but we have former employees saying that this information is misleading, just for the record, so we do know that, right.

Q.    I don't think I understand what you're saying.  Are you saying that your basis for

Page 126

the -- why these statements are false is because other employees are telling you -- sorry, I'm just not following.

A.    Yes, that there -- with the allegation of this case, right, that this information is misleading.  But as I read it as a document, it is not, but there are employees stating that this stuff has been misinformed.

Q.    Okay.  I understand.  Thank you, Mr. Inman.

And to go back to this statement, in fact, Berry is actually saying that changes to the regula -- regulations are, in fact, leading to delays in permitting; is that right?

MR. O'CONNELL:  Object to form.

THE WITNESS:  That is what they're claiming, yes, ma'am.

MS. PRIETO:  Okay.  Let's take this document down, and then I'm going to put up a document that was previously marked Exhibit 19. Tab 44, Marissa.

(Berry Exhibit 19, KeyBanc Capital Markets report, 2/27/2020, was previously marked for purposes of identification.)

MS. PRIETO:  Exhibit 19.

Page 154

plaintiff.

Q. Do you remember earlier today questions from Ms. Prieto asking you why certain statements were false or whether certain things were false?

MS. PRIETO: Objection, form.

THE WITNESS: Yes.

BY MR. O'CONNELL:

Q. Do you remember seeing those documents before?

A. Those other documents I had not read before. You're talking about the 8-K and all of those, and the prospectus? Yeah, I've never read those before.

Q. Did you review the amended complaint before we filed it?

A. Yes, the paperwork that you all have submitted as far as the complaints with the employees that stated that the information about the COVID and the economy with permits were actually from their own failure to obtain those permits.

Q. Do you believe that the statements that were alleged as false in the complaint were false?

CONFIDENTIAL TESTIMONY

Page 155

MS. PRIETO:  Objection, asked and answered.

THE WITNESS:  Yes.

BY MR. O'CONNELL:

Q.   I'm sorry, I didn't hear the answer.

A.   Yes.  The information that they were showing me, based on what that paperwork was saying, was not misleading; however, the -- the complaints from -- or the sworn statements from the employees states otherwise, for the record.

Q.   And is your basis for believing that the statements in the complaint are false from those former employees?

A.   Yes.

Q.   And is that true for all statements that were alleged as false or misleading in the complaint?

MS. PRIETO:  Objection, form.

THE WITNESS:  Yes.

MR. O'CONNELL:  That's all I have today unless Mr. Jafri or Mr. Kim has anything to add.

MR. JAFRI:  No, I think nothing from us.

Kathy, if you could please send us

CONFIDENTIAL TESTIMONY

Page 157

STATE OF OHIO            )

COUNTY OF MONTGOMERY )   SS: CERTIFICATE

I, Kathy S. Wysong, a Notary Public within and for the State of Ohio, duly commissioned and qualified,

DO HEREBY CERTIFY that the above-named DARRICK C. INMAN, was by me first duly sworn to testify the truth, the whole truth and nothing but the truth.

Said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting.

I FURTHER CERTIFY that I am not a relative or Attorney of either party, in any manner interested in the event of this action, nor am I, or the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).

Page 158

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office at Dayton, Ohio, on this 6th day of April, 2023.

KATHY S. WYSONG, RPR

NOTARY PUBLIC, STATE OF OHIO

My commission expires 12-25-2023