**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LUIS TORRES, ALLIA DEANGELIS, DARRICK INMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BERRY CORPORATION, ARTHUR T. SMITH, CARY BAETZ, GARY A. GROVE, BRENT S. BUCKLEY, KAJ VAZALES, and EUGENE J. VOILAND, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:20-cv-03464-S <br> ) <br> ) JUDGE KAREN G. SCHOLER <br> ) <br> ) CLASS ACTION <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

SUMMARY OF THE ACTION AND SETTLEMENT .........................................................2

ARGUMENT...........................................................................................................................5

I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..........5

     A.     Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class ...........7

     B.     The Settlement Was Negotiated At Arm's Length .................................................9

     C.     The Settlement Provides Adequate Relief ...........................................................9

         1.     The Relief Provided for the Class Is Adequate, Outweighing the Risks, Delay, and Expense of Further  Litigation and Considering the Probability of Success on the Merits..................................................10

         2.     Effectiveness of the Proposed  Method of Distributing Relief to the Class .................................................................................................11

         3.     The Anticipated Request for Attorneys' Fees Is Reasonable ..................12

         4.     Agreements Required to Be Identified Under Rule 23(a)(e) ..................13

     D.     The Stage of the Proceedings and the Amount of Discovery Completed...........14

     E.     The Range and Certainty of Possible Recovery ..................................................14

     F.     The Opinion of Co-Lead Counsel, Plaintiffs and Absent Class Members .........15

     G.     The Settlement Treats All Class Members Equitably .........................................16

II.     THE PROPOSED CLASS SHOULD BE CERTIFIED ....................................................17

     A.     The Settlement Class Satisfies the Requirements of Rule 23(a)........................17

         1.     Numerosity....................................................................................18

         2.     Commonality..................................................................................19

         3.     Typicality .....................................................................................19

         4.     Adequacy .....................................................................................20

     B.     Rule 23(B)(3)'s Requirements Are Satisfied .....................................................21

III.     THE PROPOSED FORMS AND METHODS  OF CLASS NOTICE SHOULD BE APPROVED.........................................................................................................22

IV.     PROPOSED SCHEDULE OF EVENTS..................................................................24

CONCLUSION.......................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972)................................................................................................21

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009)..................................................................................10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).....................................................................................18, 21, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013).................................................................................................21

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ..................................................................................13

*Billitteri v. Sec. Am., Inc.*,
No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 92713 (N.D. Tex. Aug. 4, 2011) ............8, 9, 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................13

*Burford v. Cargill, Inc.*,
No. 05-0283, 2012 U.S. Dist. LEXIS 161232 (W.D. La. Nov. 8, 2012) .................................13

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981).....................................................................................................6

*Celeste v. Intrusion Inc.*,
No. 4:21-cv-307-SDJ, 2022 U.S. Dist. LEXIS 226841 (E.D. Tex. Dec. 16, 2022)........ *passim*

*City of Ann Arbor Emps' Ret. Sys. v. Sonoco Prods. Co.*,
270 F.R.D. 247 (D.S.C. 2010).................................................................................18

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051 (W.D. La. Feb. 11, 2015) ..................15, 16, 24

*Claudet v. Cytec Ret. Plan*,
No. 17-10027, 2020 U.S. Dist. LEXIS 103040 (E.D. La. June 12, 2020)..............................14

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977)........................................................................5, 8, 15

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ...........................................................................17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143 (N.D. Tex. Apr. 25, 2018) .........9, 13, 14

*Fishoff v. Coty Inc.*,
No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242 (S.D.N.Y. Jan. 25, 2010)...................11

*Glickenhaus & Co. v. Household Int'l Co.*,
    787 F.3d 408 (7th Cir. 2015)..................................................................................11

*Hampton v. Aqua Metals, Inc.*,
    No. 17-cv-07142-HSG, 2021 U.S. Dist. LEXIS 192236 (N.D. Cal. Oct. 5, 2021)...............12

*Hays v. Eaton Grp. Attys., LLC*,
    No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029 (M.D. La. Feb. 4, 2019) ...............8, 10

*Helfer v. Wells Fargo & Co.*,
    No. 16-civ-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sep. 4, 2018)................13

*Herman & Maclean v. Huddleston*,
    459 U.S. 375 (1983)..............................................................................................21

*In re Advanced Battery Techs. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014)......................................................................10, 23

*In re Bear Stearns Cos.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ......................................................................11

*In re Chesapeake Energy Corp.*,
    No. H-21-1215, 2021 U.S. Dist. LEXIS 158564 (S.D. Tex. Aug. 23, 2021).....................7, 22

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
    No. H-14-3428, 2017 U.S. Dist. LEXIS 91938  (S.D. Tex. June 15, 2017)...........................19

*In re Constar Int'l Inc. Sec. Litig.*,
    585 F.3d 774 (3d Cir. 2009) ..................................................................................21

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981).....................................................................................7

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014).................................................................................19

*In re Elect. Data Sys. Corp. Sec. Litig.*,
    226 F.R.D. 559 (E.D. Tex. 2005) ...........................................................................21

*In re Forterra Inc. Sec. Litig.*,
    No. 3:18-CV-01957-X, 2020 U.S. Dist. LEXIS 146479 (N.D. Tex. Aug. 12, 2020) ............23

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr.19, 2007)................10

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004).............................................................................10

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................................17

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977)................................................................................24

*In re OCA, Inc. Sec. & Deriv. Litig.*,
    No. 05-2165, 2008 U.S. Dist. LEXIS 84869 (E.D. La. Oct. 17, 2008) ............................6, 24

iii

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................13

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004) .......................................................................20

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ..........................................................................6, 15

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996) ....................................................................14

*Marcus v. J.C. Penney*,
    No. 6:13-cv-736-MHS-KNM, 2016 U.S. Dist. LEXIS 115795 (E.D. Tex. Aug. 29,
    2016) ....................................................................................................................19

*McNamara v. Bre-X Minerals Ltd.*,
    214 F.RD. 424 (E.D. Tex. 2002) ..........................................................................6

*Miller v. Republic Nat'l Life Ins. Co.*,
    559 F.2d 426 (5th Cir. 1977) ................................................................................5

*Prause v. TechnipFMC, PLC*,
    No. 4:17-CV-2368, 2020 U.S. Dist. LEXIS 115794 (S.D. Tex. Mar. 9, 2020) .................20, 21

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co, Inc.*,
    277 F.R.D. 97 (S.D.N.Y. 2011) ...........................................................................21

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ............................................................................6, 7

*Rooney v. EZCORP, Inc.*,
    330 F.R.D. 439 (W.D. Tex. 2019) ............................................................18, 19, 20

*Rougier v. Applied Optoelectronics, Inc.*,
    No. 4:17-cv-02399, 2019 U.S. Dist. LEXIS 198919 (S.D. Tex. Nov. 13, 2019) ..............20, 22

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) .......10, 11, 15

*Slade v. Progressive Sec. Ins. Co.*,
    856 F.3d 408 (5th Cir. 2017) ..............................................................................20

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) ..............................................................................19

*Stott v. Capital Fin. Servs.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ....................................................................11, 20

*Sved v. Chadwick*,
    783 F. Supp. 2d 851 (N.D. Tex. 2009) ..............................................................9, 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................19

*Zeidman v. J. Ray McDermott & Co., Inc.*,
    651 F.2d 1030 (5th Cir. 1981) ............................................................................18

iv

**Other Authorities**

Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023)................................15

**Statutes & Rules**

15 U.S.C. § 78u-4(a)(7) ......................................................................................................12

Fed. R. Civ. P. 23(a) ...............................................................................................17, 18, 22

Fed. R. Civ. P. 23(a)(1) ......................................................................................................18

Fed. R. Civ. P. 23(a)(2) ......................................................................................................19

Fed. R. Civ. P. 23(a)(3) ......................................................................................................19

Fed. R. Civ. P. 23(b)(3) ................................................................................................21, 22

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................22, 23

Fed. R. Civ. P. 23(e) ..................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(1)(B) ...............................................................................................6, 17

Fed. R. Civ. P. 23(e)(2) ...................................................................................................6, 7

Private Secutiries Litigation Reform Act of 1995....................................................12, 22, 23, 24

Securitie Act of 1933 .........................................................................................2, 15, 19, 21

Securities Exchange Act of 1934 ....................................................................2, 11, 14, 15, 21

SEC Rule 10b-5 .................................................................................................................2

Lead Plaintiffs Luis Torres and Allia DeAngelis, and additional Plaintiff Darrick Inman (collectively, the "Plaintiffs") respectfully submit this Memorandum of Law in support of their unopposed motion for preliminary approval of class action settlement (the "Motion") and request entry of an order preliminarily approving the proposed settlement and providing for notice and certifying the proposed Class for settlement purposes only (the "Preliminary Approval Order").

### PRELIMINARY STATEMENT

Plaintiffs have reached an agreement to resolve the above-captioned securities class action (the "Action") against Defendants Berry Corporation ("Berry" or the "Company"), Arthur T. Smith, Cary Baetz, Gary A. Grove, Brent S. Buckley, Kaj Vazales, and Eugene J. Voiland (collectively, "Defendants") for $2,500,000 in cash (the "Settlement"), the terms of which are set forth in the Stipulation and Agreement of Settlement dated September 18, 2023 (the "Stipulation").[1] If approved, the Settlement will resolve this Action in its entirety.

The Settlement was reached after almost three years of hard-fought litigation and is the result of extensive, good faith, well-informed, arm's-length negotiations among the Parties with experienced counsel, which included one full-day mediation session overseen by a well-respected mediator, Jed D. Melnick, Esq. ("Melnick" or the "Mediator") of JAMS, and periodic subsequent correspondence between the Parties and Melnick. Plaintiffs and Plaintiffs' Counsel were well-informed of the strengths and weaknesses of the Action at the time Settlement was reached having conducted a thorough investigation relating to the Claims, defenses, and underlying events and transactions that are the subject of the Action, as described further herein.

While Plaintiffs believe the claims are meritorious, they recognize that significant risks remain, including potentially no recovery, to continuing litigation. The Settlement is a favorable

---

[1] All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Stipulation, being filed concurrently herewith as Exhibit I.

1

result for the Class, recovering between approximately 8% and 10% of the estimated damages for the claims raised under the Securities Exchange Act of 1934 ("Exchange Act"), well within the range of reasonableness and offering immediate relief for Class Members.  The percentage recovery under the Securities Act of 1933 ("Securities Act") is higher after accounting for a potential negative causation defense.  As such, the resolution of the Action with the recovery of $2,500,000 for the Class, which was based on both sides accepting a mediator's proposal, is beneficial and in the best interests of the Class.

Accordingly, Plaintiffs respectfully submit that the Settlement warrants preliminary approval and respectfully request that the Court grant preliminary approval and enter the Preliminary Approval Order providing for, *inter alia*, Notice of the Settlement to Class Members. Additionally, as all of the requirements for class certification approval are met, the Court should certify the Class for settlement purposes only.

<b><u>SUMMARY OF THE ACTION AND SETTLEMENT</u></b>

On November 20, 2020, Plaintiff Luis Torres filed the initial complaint in the United States District Court for the Northern District of Texas captioned *Torres v. Berry Corporation, et al.*, No. 3:20-cv-03464-S.  ECF No. 1.  On August 18, 2021, the Court appointed Luis Torres and Allia DeAngelis to serve as Co-Lead Plaintiffs and appointed Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen") as Co-Lead Counsel.  ECF No. 45.

On November 1, 2021, Plaintiffs filed the Amended Class Action Complaint ("Complaint") (ECF No. 59) alleging violations of Sections 11 and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act, and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, against Defendants, on behalf of all persons and entities that (1) purchased or otherwise acquired Berry's common stock pursuant or traceable to Berry's Registration Statement issued in connection with its July 26, 2018 Initial Public Offering;

2

and/or (2) purchased or otherwise acquired Berry's common stock between July 26, 2018 and November 3, 2020, both dates inclusive (the "Class Period"). The Complaint alleges that Defendants made false and misleading statements to investors regarding Berry's ability to timely secure permits to develop and drill oil, and minimized the risk of permitting delays on production targets, and that such statements artificially inflated Berry's stock price.

Defendants filed a motion to dismiss the Complaint and a request for judicial notice and incorporation by reference on January 24, 2022 (ECF Nos. 63-65). The Court denied Defendants' request for judicial notice and incorporation by reference and Defendants' motion to dismiss on September 13, 2022, concluding that Plaintiffs had adequately alleged false and misleading statements, a strong inference of scienter and loss causation. ECF Nos. 82-83. Defendants filed a motion for reconsideration and/or clarification on September 20, 2022 (ECF Nos. 87-88) and answered the Complaint on September 27, 2022 (ECF Nos. 91-92). The Court denied Defendants' motion for reconsideration and/or clarification on November 9, 2022. ECF No. 107.

On February 13, 2023, Plaintiffs filed a motion for class certification (ECF Nos. 110-12), which Defendants opposed on April 14, 2023 (ECF Nos. 120-23). On May 26, 2023, Plaintiffs filed a reply in further support of their motion. ECF Nos. 126-27. Defendants filed a motion for evidentiary hearing on Plaintiffs' motion for class certification on May 31, 2023. ECF No. 135. Plaintiffs opposed the motion on June 2, 2023 (ECF No. 137), and Defendants filed a reply in further support on June 16, 2023 (ECF No. 138). On June 27, 2023, the Court granted Defendants' motion and set an evidentiary hearing for August 23, 2023. ECF No. 139.

While the motion for class certification briefing was ongoing, the Parties attempted to resolve the Action through mediation. The Parties engaged Melnick, an experienced former securities litigator and now an esteemed mediator, to facilitate their settlement discussions. In

advance of a full-day virtual mediation session on May 30, 2023, the Parties exchanged detailed mediation statements concerning liability and damages issues.  Plaintiffs and Defendants ended the May 30, 2023 mediation without reaching a resolution to the Action.

The Parties continued negotiations over the next two months and agreed to a mediator's proposal to resolve the Claims in the Action on July 19, 2023, memorializing substantive terms in a term sheet.  Subsequently, the Parties negotiated the terms of the Settlement and related supporting documents, entering into the Stipulation on September 18, 2023.

At the time the term sheet was executed, Plaintiffs' Counsel had engaged in substantive discovery, including reviewing and analyzing tens of thousands of documents produced by Defendants in response to 59 requests for production of documents and Defendants' responses to interrogatories, defended and taken multiple depositions, prepared to take additional depositions, responded to Defendants' discovery requests, and worked with experts in connection with the Motion for Class Certification.

In accordance with the Stipulation, Defendants shall pay or cause to be paid the Settlement Amount of $2,500,000 into the Escrow Account following the issuance of the Preliminary Approval Order.  *See* Stipulation ¶2.1  The Settlement Fund shall be used to pay Taxes and Tax Expenses, Notice and Administration Costs, any attorneys' fees and expenses awarded by the Court, and any Award to Plaintiffs, with the balance (the "Net Settlement Fund") to be distributed to Authorized Claimants in accordance with a Plan of Allocation to be approved by the Court.  *Id.* ¶¶4, 7.  In return, the Settlement provides that Plaintiffs and the Class will release all Released Plaintiff Claims against the Released Defendant Parties.  *Id.* ¶3.3.

Under the Settlement, the Parties have agreed to certification of the following Class for settlement purposes only:  all Persons and entities that: (1) purchased or otherwise acquired Berry's

4

common stock pursuant or traceable to Berry's Registration Statement issued in connection with its July 26, 2018 Initial Public Offering; and/or (2) purchased or otherwise acquired Berry's common stock between July 26, 2018 and November 3, 2020, both dates inclusive.[2]  *See* Stipulation ¶1.8.

Before the Court holds a final approval hearing, Co-Lead Counsel will move for an award of attorneys' fees not to exceed one-third (33 ⅓ %) of the Settlement Amount plus interest, and reimbursement of no more than $370,000 in litigation expenses.  Lastly, Co-Lead Counsel shall seek Awards to Plaintiffs not to exceed $10,000 for each of the Plaintiffs.

**ARGUMENT**

## I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts, within this Circuit and throughout the country, have long recognized a strong public policy and presumption in favor of settlements, particularly in the class context.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor or settlement."); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (settlements are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").[3]  Rule 23(e) of the Federal Rules of Civil Procedure ("Rule") requires the presentation of a class action settlement to the court for a preliminary determination as to whether it is sufficiently "fair, reasonable and adequate" to justify notice to those affected by the settlement.  Fed. R. Civ. P.

---

[2]  Excluded from the Class are: Defendants, current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class will be any Person who or which timely and validly seeks exclusion from the Class. Stipulation ¶1.8.

[3]  All citations and internal quotations are omitted, unless otherwise noted.

5

23(e).  Approval of a settlement is within the court's discretion, but courts should "not decide the merits of the case or resolve unsettled legal questions" in reviewing class settlements.  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (in reviewing settlements, courts "should not decide the merits of the action or attempt to substitute its own judgment for that of the parties").

Review of a class action settlement is a two-step process.  The court first performs a preliminary review to determine whether notice should be sent to the class; and then, after notice is provided and a hearing set, the court makes a final determination as to whether the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  Key to the court's evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B) (emphasis added); *see also In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05-2165, 2008 U.S. Dist. LEXIS 84869, at *37 (E.D. La. Oct. 17, 2008) (noting that preliminary approval standards are less stringent than those for final approval).  A proposed settlement of a class action should be preliminarily approved where there appears to be no "grounds to doubt its fairness or other . . . deficiencies" and it "appears to fall with the [range] of possible approval."  *McNamara v. Bre-X Minerals Ltd.*, 214 F.RD. 424, 430 (E.D. Tex. 2002); *see also OCA*, 2008 U.S. Dist. LEXIS 84869, at *37 (similar).

Since Rule 23(e)'s amendments in December 2018, courts in this Circuit have analyzed settlements under a combined analysis which includes both Rule 23(e) and the factors identified in the Fifth Circuit's opinion in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).[4]

---

[4]  Pursuant to Rule 23(e), a court's inquiry as to whether a settlement is fair, reasonable, and adequate must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

*See*, *e.g.*, *In re Chesapeake Energy Corp.*, No. H-21-1215, 2021 U.S. Dist. LEXIS 158564, at *15 (S.D. Tex. Aug. 23, 2021) ("Because the Rule 23 and *Reed* factors overlap, courts in this circuit often combine them in analyzing class settlements."). The combined inquiry includes consideration of the following factors: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length (*i.e.*, it was not the produce of fraud or collusion); (3) whether the relief provided for the class is adequate considering the duration, costs, risks, and delay of trial and appeal; (4) the stage of the proceedings and amount of discovery completed; (5) the probability of success on the merits; (6) the range and certainty of recovery; (7) the opinions of the participants, including class counsel, class representatives, and the absent class members; and (8) whether the proposal treats class members equitably relative to each other. These factors are satisfied here.

### A.    Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class

Plaintiffs and Co-Lead Counsel adequately represented the Class throughout the litigation and resolution of the Action. There are no conflicts of interest between Plaintiffs and other class members, as all purchased shares of Berry common stock based on the same alleged misstatements and omissions and suffered the same type of alleged damages, and thus share a common goal of maximizing recovery. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving

---

the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The *Reed* factors closely parallel and overlap with Rule 23(e)(2) and include: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) the plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172.

the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.").

Co-Lead Counsel are highly experienced in prosecuting securities class actions and other complex litigation. *See* ECF Nos. 112-3, 112-4 (Co-Lead Counsel firm resumes). *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 92713, at *56-57 (N.D. Tex. Aug. 4, 2011) ("the trial court is entitled to rely upon the judgment of experienced counsel for the parties") (quoting *Cotton*, 559 F.2d at 1330). At the time Settlement was reached, Plaintiffs' Counsel had, among other things: (i) reviewed and analyzed, *inter alia*, Berry's SEC filings, press releases, and conference call transcripts, analyst reports, and news articles concerning Berry; (ii) conducted numerous interviews with former employees of the Company; (iii) drafted the detailed Complaint; (iv) analyzed and addressed Defendants' motion to dismiss arguments; (v) analyzed and addressed Defendants' arguments in opposition to class certification; (vi) reviewed and analyzed tens of thousands of documents produced by Defendants in response to 59 requests for production of documents; (vii) reviewed and analyzed Defendants' responses to interrogatories; (viii) defended and taken multiple depositions; (ix) consulted with experts on the industry, market efficiency, loss causation, and damages issues; (x) responded to Defendants' discovery requests and produced documents in response to those requests; (xi) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of the Action and potential damages; and, (xii) engaged in a full-day virtual mediation session before the Mediator. *See*, *e.g.*, *Hays v. Eaton Grp. Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *23-24 (M.D. La. Feb. 4, 2019) (representation adequate where counsel has "substantial experience in litigating complex class actions and is familiar with the factual and legal issues of the case").

8

Thus, Plaintiffs and Co-Lead Counsel were well-informed about the strengths and weaknesses of the Action, enabling them to appropriately consider the terms of the Settlement, the risks associated with continued litigation, and ultimately, the Settlement's fairness, reasonableness, and adequacy.

### B.    The Settlement Was Negotiated At Arm's Length

Here, the proposed Settlement was the product of extensive arm's-length negotiations, facilitated by a mediator experienced in securities class actions, Mr. Melnick, between highly experienced counsel knowledgeable about the Action (*see* pages 3-4)[5]. *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, at *18 (N.D. Tex. Apr. 25, 2018) ("the settlement was obtained through formal mediation . . . which strongly suggests that the settlement was not the result of improper dealings"); *Billitteri*, 2011 U.S. Dist. LEXIS 92713, at *44 (similar).  The proposed Settlement was achieved only after a full-day virtual mediation session followed by additional negations over the next two months, all overseen by Mr. Melnick.  *Sved v. Chadwick*, 783 F. Supp. 2d 851, 861 (N.D. Tex. 2009) (fact that "settlement agreement was the product of a hard-fought mediation" supports finding of no collusion or fraud).  The Settlement amount is based on the Mediator's proposal that both Parties accepted.  This arm's-length process supports a presumption of fairness, free of fraud or collusion.

### C.    The Settlement Provides Adequate Relief

Rule 23(e)(C) directs the Court to evaluate whether the relief provided for the class is adequate, considering four factors in making the determination.  The proposed Settlement satisfies each of these factors, providing substantial relief for the Class.

---

[5]  Like Plaintiffs, Defendants were at all times represented by highly experienced counsel.

### 1.    The Relief Provided for the Class Is Adequate, Outweighing the Risks, Delay, and Expense of Further Litigation and Considering the Probability of Success on the Merits

The immediate benefits of the proposed Settlement outweigh the substantial cost, risks, and delay of further litigation.  "Even where the claims are not particularly complex, approval of settlement is favored where settling avoids the risks and burdens of potentially protracted litigation."  *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25.  Securities class actions are notoriously complex, often taking exceptionally long to litigate, making settlement favorable.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr.19, 2007) ("[s]ecurities class actions are generally complex and expensive to prosecute").

If litigation were to proceed, Plaintiffs would first have to prevail on the outstanding motion for class certification for which there is no guarantee of success, and "even if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004).

Second, while Plaintiffs believe their claims have merit, Plaintiffs would also face significant risks on summary judgment and/or at a trial on the merits.  Indeed, "the issues would be hotly disputed by the parties.  Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming."  *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *62 (N.D. Tex. Nov. 8, 2005); *see also In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) ("[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet.").  Defendants continue to deny all of Plaintiffs' allegations and would likely put forth strong

10

arguments as to falsity, scienter and loss causation at trial. For example, Defendants have contended throughout the litigation that the alleged corrective disclosures did not reveal any "new" information. Loss causation arguments and damages issues often become a "battle of the experts" and "[w]hen the success of a party's case turns on winning a so-called 'battle of the experts,' victory is by no means assured." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Defendants would likely argue as well that Plaintiffs cannot demonstrate scienter, as they did in their motion to dismiss. Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010); *see also Celeste v. Intrusion Inc.*, No. 4:21-cv-307-SDJ, 2022 U.S. Dist. LEXIS 226841, at *13-14 (E.D. Tex. Dec. 16, 2022) ("Securities claims are particularly difficult to prove because of the high bar for establishing falsity and scienter.").

"[I]f Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief." *Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *63. In sum, success is not guaranteed. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l Co.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation). The Settlement provides an immediate favorable result as opposed to the risk of a smaller recovery, or no recovery at all, after years of delay and mounting expense. *Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case.").

### 2. Effectiveness of the Proposed Method of Distributing Relief to the Class

As further detailed below in Section III, the proposed forms and methods of Notice meet the requirements of due process, Rule 23, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C.

11

§ 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). In addition, the claims administration process for distribution of the Settlement Amount will proceed in the manner typical in securities class action settlements. Plaintiffs and Co-Lead Counsel request that A.B. Data, Ltd. ("A.B. Data") be approved as the Claims Administrator here. A.B. Data is a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See, e.g.*, *Hampton v. Aqua Metals, Inc.*, No. 17-cv-07142-HSG, 2021 U.S. Dist. LEXIS 192236, at *33 (N.D. Cal. Oct. 5, 2021) ("[t]he Court finds that A.B. Data has extensive experience implementing notification and claims administration programs in class actions").

A.B. Data will employ a well-established securities class action distribution process. The Notice and Claim Form, to be approved by the Court, provide clear instructions to potential claimants on how and when to submit their claims. *See* Stipulation, Exs. A-1 and A-2. Each claimant's submission will be reviewed by A.B. Data for eligibility determination, and claimants will be provided an opportunity to cure any deficiencies in their claims. *See* Stipulation ¶7.11(d). Calculations of each claimant's "Recognized Claim" will be completed in accordance with the Court-approved Plan of Allocation, and ultimately determine the pro rata distribution for each Class Member from the Net Settlement Fund. *Id.* ¶7.4. Funds will be distributed to Authorized Claimants via check after the Effective Date and the passing of all other applicable deadlines. *Id.* ¶7.6. *See also Celeste*, 2022 U.S. Dist. LEXIS 226841, at *15-16 (finding similar process fair and reasonable).

### 3.    The Anticipated Request for Attorneys' Fees Is Reasonable

As set forth in the Notice, Co-Lead Counsel intend to seek an award of attorneys' fees of no more than one-third of the Settlement Fund (including interest earned on the Settlement Amount) and expenses not to exceed $370,000. The Fee and Expense Application will be

submitted for Court approval at the time of final approval of the Settlement. Both the United States

Supreme Court and the Fifth Circuit recognize that counsel should be compensated for efforts

expended in creating a common fund for the benefit of a class,[6] and the proposed fee is reasonable

in light of the work performed and the results obtained. The 33 ⅓ % fee request is consistent with

other fee awards in comparable complex class action. *See, e.g.*, *Halliburton*, 2018 U.S. Dist.

LEXIS 69143, at *42 ("The 33 ⅓ % requested by Class Counsel is within the range of typical

awards, and is not the highest fee awarded in securities class action cases"); *In re Payment Card

Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[i]t

is very common to see 33% contingency fees in cases with funds of less than $10 million");

*Burford v. Cargill, Inc.*, No. 05-0283, 2012 U.S. Dist. LEXIS 161232, at *6 (W.D. La. Nov. 8,

2012) ("district courts in the Fifth Circuit have awarded percentages of approximately one-third

contingency fee"); *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *30 (awarding 33 ⅓ % of $3.25

million settlement). Further, Class Members will have an opportunity to comment on Co-Lead

Counsel's fee request before the Settlement Hearing.

### 4.      Agreements Required to Be Identified Under Rule 23(a)(e)

The Parties have entered into a standard supplemental agreement providing Defendants

with the option to terminate the Settlement in the event that requests for exclusion from the Class

exceed certain agreed-upon criteria. *See* Stipulation ¶11. As is customary in securities class action

settlements, the Supplemental Agreement terms are confidential to "avoid the risk that one or more

shareholders might use this knowledge to insist on a higher payout for themselves by threatening

to break up the Settlement." *Helfer v. Wells Fargo & Co.*, No. 16-civ-05479-JST, 2018 U.S. Dist.

LEXIS 150292, at *33 (N.D. Cal. Sep. 4, 2018) ("The existence of a termination option triggered

---

[6] *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Barton v. Drummond Co.*, 636
F.2d 978, 982 (5th Cir. 1981).

by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Halliburton*, 2018 U.S. Dist. LEXIS 69143, at *23 (approving settlement with "supplemental confidential agreement" regarding opt out numbers).

>   **D.     The Stage of the Proceedings and the Amount of Discovery Completed**

The inquiry under this factor is whether the plaintiff has a sufficient understanding of the strengths and weaknesses of the case "to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it." *Sved*, 783 F. Supp. 2d at 861. As discussed above, at the time of settlement, Plaintiffs' Counsel had conducted a thorough investigation and substantial discovery, including drafting the detailed Complaint, successfully opposing a motion to dismiss, briefing the motion for class certification, reviewing and analyzing tens of thousands of documents, and defending and taking numerous depositions. *See* Sections I.A, II.A.4.  Thus, the Settlement was reached with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

>   **E.     The Range and Certainty of Possible Recovery**

Given the complexities, uncertainties, and expense inherent in continued litigation, the proposed Settlement is in the best interests of the Class, and importantly falls within the range of reasonableness. *Claudet v. Cytec Ret. Plan*, No. 17-10027, 2020 U.S. Dist. LEXIS 103040, at *16-17 (E.D. La. June 12, 2020) (there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion").  Plaintiffs' estimate of maximum recoverable damages is between $25.3 and $28.1 million for the Exchange Act claims. The Settlement of $2.5 million represents, between approximately 8% and 10% of the likely recoverable damages for the Exchange Act claims if Plaintiffs prevailed.  The estimated damages

for the Securities Act claims are likely lower than these percentages after accounting for the defense of negative causation.  There is no double recovery for the Securities Act claims and the Exchange Act claims given that the Class Period overlaps.

As such, the recovery is substantially higher than the average recovery in a securities class action. *See* Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023)[7] at pp. 17-18, Figs. 18 & 19 (median recovery in securities class actions from 2013 to 2022 ranged from 1.5% to 2.5%; for cases with losses in the range of $20 million to $49 million, the median recovery from 2011 to 2022 was 5.2%); *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *20-21 (considering the range of possible recovery "in light of the 'likelihood of prevailing at trial and other factors'" and noting that it is common for "plaintiffs to recover only three-to-six cents on the dollar" in class actions) (quoting *Maher v. Zapata Corp.*, 714 F.2d at 460); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051, at *22 (W.D. La. Feb. 11, 2015) (similar). When considering the substantial risks, costs and delay of continued litigation discussed above, Plaintiffs respectfully submit that the Settlement represents a favorable recovery.

**F.      The Opinion of Co-Lead Counsel, Plaintiffs and Absent Class Members**

"As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'"  *Billitteri*, 2011 U.S. Dist. LEXIS 92713, at *56-57 (quoting *Cotton*, 559 F.2d at 1330); *see also Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *72 ("where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in

---

[7]Available at https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf

class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case."). As discussed at length in Sections I.A and I.B above, Plaintiffs' Counsel had substantial knowledge of the strengths and weaknesses of the case prior to the extensive arm's-length settlement negotiations before an experienced mediator, ultimately concluding that the terms of the Settlement were fair, reasonable, adequate and in the best interests of the Class. Plaintiffs also support the proposed Settlement. Accordingly, this factor weighs in favor of preliminary approval.

### G.   The Settlement Treats All Class Members Equitably

Under the Settlement, all Class Members are treated equitably. The Plan of Allocation is substantially similar to the plans of allocation in comparable securities class action settlements, with all members of the Class, including Plaintiffs, recovering a pro rata distribution from the Net Settlement Fund based on the same recognized loss calculation formula. *See* Long Notice at pp. 12-16; *see also Celeste*, 2022 U.S. Dist. LEXIS 226841, at *15-16 (where plan of allocation "formulated by competent and experienced counsel" and provides each "class member a pro rata share . . . based on the number of shares purchased during the relevant period" distribution is equitable); *LHC Grp.*, 2015 U.S. Dist. LEXIS 26051, at *34-35 (approving plan of allocation where class members receive pro rata share based on investment loss). Plans of allocation are routinely approved, so long as they are "supported by a reasonable basis." *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *15-16.

The proposed Settlement is the result of adequate class representation, negotiated at arm's-length, and provides substantial relief for the Class on an equitable basis, taking into account the stage of litigation, costs, risks and delays of further litigation, and the Plan of Allocation is

16

reasonable.  For all of these reasons, the Settlement falls well within the range of what could be found fair, reasonable, and adequate and warrants preliminary approval.

## II.    THE PROPOSED CLASS SHOULD BE CERTIFIED

As part of the preliminary approval of the Settlement, Plaintiffs respectfully request that the Court certify the Class for the purposes of settlement only pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012).  At this stage, the Court should determine whether it "will likely be able to" grant class certification of the Class at the final approval stage.  Fed. R. Civ. P. 23(e)(1)(B).  "[T]he United States Court for the Fifth Circuit has indicated a class may be certified for settlement purposes [even] when doubt exists as to certification for litigation[.]"  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 280 (W.D. Tex. 2007).

Here, the proposed Class consists of all Persons and entities that: (1) purchased or otherwise acquired Berry's common stock pursuant or traceable to Berry's Registration Statement issued in connection with its July 26, 2018 Initial Public Offering; and/or (2) purchased or otherwise acquired Berry's common stock between July 26, 2018 and November 3, 2020, both dates inclusive. *See* Stipulation ¶1.8.  As demonstrated herein and in Plaintiffs' Motion for Class Certification (ECF Nos. 110-12)[8], the proposed Class readily meets these requirements and should therefore be certified for settlement purposes.

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) requires Plaintiffs demonstrate the following:

---

[8] The Settlement Class definition is substantially similar to the definition used in Plaintiffs' Motion for Class Certification.

17

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Class satisfies each of these requirements.

### 1.    Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In "class action suits involving nationally traded securities[,]" such as the one at issue here, numerosity is "generally assumed" because "any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be 'so numerous that joinder of all members is impracticable.'" *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981); *see also Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445 (W.D. Tex. 2019) ("*EZCORP*").

Here, Berry's stock actively traded on the NASDAQ during the Class Period, and according to Plaintiffs' expert, Berry had between 79.5 million to 82.1 million shares outstanding and traded heavily, with an average weekly trading volume of 3.37 million shares. *See* ECF No. 112-2 at ¶¶31-32. *See also EZCORP*, 330 F.R.D. at 445 (numerosity satisfied where 50 million+ shares were outstanding with an average weekly trading volume of 2.7 million shares). Additionally, 325 institutional investors held Berry stock during the Class Period, further supporting numerosity. ECF No. 112-2 at ¶41 n.39; *see also City of Ann Arbor Emps' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 251 (D.S.C. 2010) (noting 307 institutional investors indicated the class was likely dispersed geographically and supported numerosity). Therefore, joinder of all class members would be impracticable and numerosity is satisfied.

### 2.    Commonality

The commonality requirements of Rule 23(a)(2) are also satisfied.  "The threshold for commonality is not high."  *Marcus v. J.C. Penney*, No. 6:13-cv-736-MHS-KNM, 2016 U.S. Dist. LEXIS 115795, at *9 (E.D. Tex. Aug. 29, 2016).  There must be "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), but not every issue must be identical for every class member, there need only be "at least one contention that is central to the validity of each class member's claims."  *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338, 359 (2011).

Here, there are numerous common questions of law and fact, including relating to falsity, scienter, loss causation and damages. Courts routinely find commonality to be met when these specific issues are common to a securities class.  *See, e.g.*, *EZCORP*, 330 F.R.D. at 445-46; *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 U.S. Dist. LEXIS 91938, at *9-10  (S.D. Tex. June 15, 2017).

### 3.    Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Like commonality, the test for typicality is not demanding."  *Marcus*, 2016 U.S. Dist. LEXIS 115795, at *10.  This requirement is readily met in securities actions, and is satisfied "by showing that class representatives' claims arise from a similar course of conduct and share the same legal theory."  *Cobalt*, 2017 U.S. Dist. LEXIS 91938, at *10  (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).  Here, Defendants' alleged conduct similarly affected Plaintiffs and all other Class Members, the same legal theories apply to all Class Members who purchased Berry common stock in reliance upon the same allegedly false and misleading statements and omissions, and allegedly suffered damages

19

as a result.  Thus, the typicality requirement is satisfied.  *See Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-cv-02399, 2019 U.S. Dist. LEXIS 198919, at *19 (S.D. Tex. Nov. 13, 2019).

### 4.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class" and in making such determination, a court considers: (1) "the zeal and competence of the representative[s'] counsel; (2) the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Prause v. TechnipFMC, PLC*, No. 4:17-CV-2368, 2020 U.S. Dist. LEXIS 115794, at *10 (S.D. Tex. Mar. 9, 2020) (quoting *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017)).

First, both Pomerantz and Rosen are highly experienced in securities class actions and Plaintiffs' Counsel have conducted an extensive investigation and completed substantial briefing and discovery.  *See* Sections I.A, I.B above; *see also* ECF Nos. 112-3, 112-4 (firm resumes). Second, each of the Plaintiffs have declared that they are willing to serve as a representative party and maintained an active role in the litigation, including reviewing court papers, sitting for depositions, and regularly communicating with counsel.  This demonstrates their adequacy. *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502–03 (S.D. Tex. 2004) (adequacy established where plaintiffs were committed to the action, reviewed court papers, and understood complaint's allegations); *EZCORP*, 330 F.R.D. at 446-47 (same).  Third, no conflicts exist here because all Class Members share in the common goal of maximizing recovery.  *See Stott v. Capital Fin. Servs. Inc.*, 277 F.R.D. 316, 326 (N.D. Tex. 2011) ("'class interests are not antagonistic for representation purposes'" where "'all class members are asserting [the] common right [of] achieving a maximum potential recovery for the class'") (alterations original).

20

### B.      Rule 23(B)(3)'s Requirements Are Satisfied

In certifying a class, a court also considers whether "the questions of law fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Prause*, 2020 U.S. Dist. LEXIS 115794, at *17-18. "Predominance does not require all questions of law or fact to be common, but only that common questions predominate over individual questions."  *In re Elect. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 570 (E.D. Tex. 2005).  As noted by the Supreme Court, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud."  *Amchem*, 521 U.S. at 625.  Predominance is satisfied here, although through different standards for Plaintiffs' claims.

Reliance is not an element for the Securities Act claims.  *See Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (1983).  The common question of whether the Registration Statement contains material misstatements is sufficient to meet the test.  *See Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co, Inc.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011); *see also In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 785 (3d Cir. 2009) ("The formulaic nature of § 11 [of the Securities Act] leaves defendants with little room to maneuver" in opposing class certification.).

For the Exchange Act claims, the elements of falsity, materiality, scienter, and loss causation all raise exclusively common questions of law and fact that predominate.  *See Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013); *EDS*, 226 F.R.D. at 570.  In addition, reliance is presumed under the fraud-on-the-market doctrine and/or under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), and therefore predominance is satisfied for Plaintiffs' Exchange Act claims.

Class certification here is also the superior method for resolving the claims because the complex nature of securities class actions, the large number of geographically dispersed Class Members, and the high costs associated with individualized actions make it doubtful that most Class Members would be able to obtain relief without class status.  Fed. R. Civ. P. 23(b)(3)[9]; *see also Rougier*, 2019 U.S. Dist. LEXIS 198919, at *57.  Further, Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement.  In sum, the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3) and the Court should certify the Class for the purposes of settlement only.

### III.   THE PROPOSED FORMS AND METHODS OF CLASS NOTICE SHOULD BE APPROVED

The proposed Notice, Postcard Notice, and Summary Notice, attached as Exhibits A-1, A-3, and A-4 to the Stipulation, respectively, satisfy due process, the federal rules, and the PSLRA.  Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and Rule 23(e) directs "notice in a reasonable manner," Fed. R. Civ. P. 23(e); *see also Chesapeake Energy*, 2021 U.S. Dist. LEXIS 158564, at *55 ("Due process is satisfied if the notice provides class members with the information reasonably necessary for them to make a decision whether to object to the settlement.").

The proposed notice program here satisfies these standards.  As discussed above, Plaintiffs seek authorization from the Court to retain A.B. Data as the Claims Administrator.  A.B. Data is an experienced claims administrator and will oversee and administer the notice and claims process.  Pursuant to the Preliminary Approval Order, individual notification will be made via mail in the form of the Postcard Notice, in order to save costs, within twenty-eight (28) days after entry of the

---

[9]  As this is a settlement in lieu of trial, the Rule 23(b)(3)(D) inquiry is not required.  *Amchem*, 521 U.S. at 620.

Preliminary Approval Order to all Class Members who can be identified with reasonable effort. In addition, the Summary Notice will be published electronically once over *PR Newswire*, or a similar widely circulated national wire service, within fourteen (14) days after the Notice Date. Additional copies of the Notice will be available to nominee holders such as brokerage firms that held Berry common stock during the Class Period.  Those nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares, or, alternatively, to provide A.B. Data with a list of the names and addresses of such beneficial holders so that A.B. Data can mail the Postcard Notice to those beneficial owners directly.  Further, the Claims Administrator will create and maintain a Settlement website where Class Members can locate further information regarding the Settlement, view and download the Long Notice and the Claim Form and be advised of pertinent deadlines.

Courts routinely approve similar notice programs.  *See, e.g.*, *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *22-23 (notice sufficient where sent to class members by postcard or e-mail, and published summary notice and maintained website); *In re Forterra Inc. Sec. Litig.*, No. 3:18-CV-01957-X, 2020 U.S. Dist. LEXIS 146479, at *11-12 (N.D. Tex. Aug. 12, 2020) (similar); *Advanced Battery*, 298 F.R.D. at 182-83 (approving notice via postcard directing class members to the settlement website, in part, because notice via postcard "minimize[d] notice costs").

The Notice includes the information required by Rule 23(c)(2)(B) and the PSLRA, advising Class Members of, *inter alia*: (i) the reasons for and terms of the Settlement; (ii) the nature, history, and progress of the Action; (iii) that Class Members may appear through counsel; (iv) a statement of recovery; (v) the date of the Settlement Hearing; (vi) the time and manner for requesting an exclusion; (vii) the procedure for submitting a Claim; (viii) information about the proposed attorneys' fees and costs; and, (ix) how to obtain additional information regarding the Settlement,

including Class Counsel's contact information. Thus, the proposed Notice contains all of the required "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Indeed, courts routinely find that comparable notice programs meet the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *LHC Grp.*, 2015 U.S. Dist. LEXIS 26051, at *11-14; *OCA*, 2008 U.S. Dist. LEXIS 84869, at *46-48.

Accordingly, Plaintiffs respectfully submit that the proposed notice program is adequate and should be approved by the Court.

## IV.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the below schedule for finalizing the Settlement:

| EVENT | PROPOSED TIMING |
| --- | --- |
| Deadline for establishing Settlement website and posting of Notice and Claim Form on same, and for mailing of Postcard Notice to potential Class Members (the "Notice Date") | 28 calendar days after entry of Preliminary Approval Order (Preliminary Approval Order at ¶¶12-13) |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date (Preliminary Approval Order at ¶14) |
| Deadline for filing of papers in support of the Settlement, Plan of Allocation, and Co-Lead Counsel's Fee and Expense Application | 30 calendar days prior to the Settlement Hearing (Preliminary Approval Order at ¶27) |
| Deadline for receipt of exclusions or objections | 30 calendar days prior to the Settlement Hearing (Preliminary Approval Order at ¶¶20, 22) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order at ¶27) |
| Deadline for filing of proof of mailing of Postcard Notice and posting of Notice and Claim Form | At, or any time prior to, the Settlement Hearing (Preliminary Approval Order at ¶16) |
| Settlement Hearing | To be determined by the Court, but not earlier than 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Form | 120 calendar days after the Notice Date (Preliminary Approval Order at ¶18(a)) |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) preliminarily approve the Settlement; (ii) certify the Settlement Class for the purposes of settlement only, appoint Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel; (iii) approve the proposed manner and form of Notice to Class Members and schedule for finalizing Settlement; and (iv) schedule a final Settlement Hearing.

**Dated:** September 18, 2023                Respectfully Submitted,


**POMERANTZ LLP**

*/s/ Brian P. O'Connell*
Joshua B. Silverman (*Pro Hac Vice*)
Omar Jafri (*Pro Hac Vice*)
Brian P. O'Connell (*Pro Hac Vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel:    (312) 377-1181
Fax:    (312) 377-1184
E-mail: jbsilverman@pomlaw.com
         ojafri@pomlaw.com
         boconnell@pomlaw.com


**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim (*Pro Hac Vice*)
Ha Sung (Scott) Kim (*Pro Hac Vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel.:    (212) 686-1060
Fax:    (212) 202-3827
Email:  pkim@rosenlegal.com
         skim@rosenlegal.com

*Lead Counsel for Plaintiffs*

**GRAVES LAW OFFICE**
Curtis C. Graves
12700 Park Central Drive
Suite 520

25

Dallas, Texas 75251
Tel.:    (214) 321-6940
Fax:    (866) 770-6949
curtis@cgraveslaw.com

**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe
Texas Bar No. 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Tel.:    (972) 521-6868
Fax:    (346) 214-7463
wbriscoe@thebriscoelawfirm.com

*Liaison Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Eitan Kimelman
60 E 42nd Street, Suite 4600
New York, New York 10165Tel.:
        212-697-6484
Fax: 212-697-7296
Email: eitank@bgandg.com

**LEVI & KORSINSKY, LLP**
Daniel Tepper
55 Broadway, 10th Floor
New York, NY 10006
Tel.:    (212) 363-7500
Fax:    (212) 363-7171
dtepper@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore  (*Pro Hac Vice*)
580 California Street, Suite 1200
San Francisco, California 94104
Tel.:    (415) 568-2124
Fax:    (212) 214-0506
Email: passmore@bespc.com

*Additional Counsel for Plaintiffs*

26

## CERTIFICATE OF CONFERENCE

This is to certify that counsel for Plaintiffs conferred with counsel for Defendants regarding Plaintiffs' motion while drafting the Stipulation and Agreement of Settlement. As reflected in the Stipulation and Agreement of Settlement, counsel for Defendants will not oppose the motion for preliminary approval of settlement, including certification of the class for the purposes of settlement only.    On September 15, 2023, I emailed counsel for Defendants, to confirm their position on the motion, and on September 16, 2023, Genevieve York-Erwin, counsel for Defendants, confirmed to Plaintiffs over email that they do not oppose the motion.

*/s/ Brian P. O'Connell*
Brian P. O'Connell

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 18, 2023, I served a copy of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement to counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on September 18, 2023.


*/s/ Brian P. O'Connell*
Brian P. O'Connell