**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LUIS TORRES, ALLIA DEANGELIS, DARRICK INMAN, Individually and on behalf of all others similarly situated, | Case No.: 3:20-cv-03464-S |
| Plaintiff, | JUDGE KAREN G. SCHOLER |
| vs. | <u>CLASS ACTION</u> |
| BERRY CORPORATION, ARTHUR T. SMITH, CARY BAETZ, GARY A. GROVE, BRENT S. BUCKLEY, KAJ VAZALES, and EUGENE J. VOILAND, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>REIMBURSEMENT AWARD TO PLAINTIFFS</u>**

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .......................................................................................iii

I. INTRODUCTION ......................................................................................................1

II. PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ......................4

      A.    Attorneys' Fees Can Be Awarded From the Settlement's Common Fund ............4

      B.    The Court Should Award Attorneys' Fees Using the Percentage of Recovery Method ..................................................................................................5

      C.    An Award of a Third of the Gross Settlement Fund Is Appropriate ......................7

      D.    Application of the Johnson Factors Supports Lead Counsel's Request for Attorneys' Fees ..................................................................................8

            1.    The Time and Labor Required...................................................................9

            2.    Novelty and Difficulty of the Issues .......................................................10

                (a)    Liability Could Be Difficult to Prove ..........................................10

                (b)    Obtaining Class Certification Is Not Certain and Proving Recoverable Damages Could Be Difficult...................................11

            3.    Skill Required: the Experience, Reputation, and Ability of the Attorneys...............................................................................................13

            4.    The Preclusion of Other Employment .......................................................13

            5.    The Customary Fee for Similar Work in the Community .......................14

            6.    Whether the Fee Is Fixed or Contingent...................................................14

            7.    Time Limitations Imposed by the Client or the Circumstances ..............15

            8.    The Amount Involved and the Results Obtained.....................................15

            9.    The Undesirability of the Case ................................................................15

10.    The Nature and Length of the Professional Relationship with the Client ..................................................................................................... 16

11.    Awards in Similar Cases ........................................................................... 16

E.    The Class's Reaction to The Fee Request ............................................................. 17

F.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee .... 17

G.    Plaintiffs' Counsel's Expenses Were Reasonably and Necessarily Incurred in the Prosecution of This Action  .................................................................................. 19

III. THE PROPOSED REIMBURSEMENT AWARDS TO PLAINTIFFS SHOULD BE APPROVED  ......................................................................................................... 21

IV. CONCLUSION ................................................................................................................ 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aranaz, et al., v. Catalyst Pharmaceutical Partners, Inc., et al.*,
    1:13-cv-23878, Order and Final Judgment, ECF No. 153 (S.D. Fla. Mar. 16, 2015) .............22

*Barton v. Drummond Co.*,
    636 F.2d 978 (5th Cir. 1981) .....................................................................................................4

*Billitteri v. Sec. Am., Inc.*,
    No. 11-cv-00191, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ......................................13, 16

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).....................................................................................................................4

*Branca v. First USA Paymentech, Inc.*,
    No. 3:97- CV-2507-L, Order and Final Judgment, ECF No. 59 (N.D. Tex. Jan. 4. 2001) .....17

*Braud v. Transp. Serv. Co. of Ill.*,
    No. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ......................................................16

*Buettgen v. Harless*,
    No. 3:09-cv-00791, 2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ...............................19, 20

*Burford v. Cargill, Inc.*,
    No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012)............................................. *passim*

*City of Burlington v. Dague*,
    505 U.S. 557 (1992)...................................................................................................................18

*City of Providence v. Aeropostale, Inc.*,
    No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)........................19

*Coface North America Insurance Company v. Woodlands Export, LLC*,
    NO. 4:15-CV-621, 2016 WL 4361462 (S.D. Tex. Aug. 15, 2016) ...........................................5

*Di Giacomo v. Plains All Am. Pipeline*,
    No. Civ.A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)...........................10, 21

*Erica P. John Fund, Inc. v. Halliburton Company*,
    No. 3:02-cv-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018)  ....................................18

*Evans v. TIN, Inc.*,
    Civil Action No. 11-2067, 2013 WL 4501061 (E.D. La. Aug. 21, 2013) ...........................6, 18

*Faircloth v. Certified Fin. Inc.*,
No. Civ. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) ....................................16, 21

*Finkel v. Docutel/Olivetta Corp.*,
CA3– 84–0566–T, Final Order and Judgment (N.D. Tex. Feb. 23, 1990) .............................17

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)..................................................................................................4

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................21

*In re Bayou Sorrel Class Action*,
No. 6:04cv1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) .......................................4, 7

*In re Catfish Antitrust Litig.*,
939 F. Supp. 493 (N.D. Miss. 1996).............................................................................8, 16, 22

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005)...................................................................................................6

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 852 (W.D. Pa. 1995).........................................................................................6

*In re Cobalt Intl. Energy, Inc. Sec. Litig.*,
4:14-cv-3428, Order Awarding Attorneys' Fees, ECF No. 366 (S.D. Tex. Feb. 13, 2019) ....21

*In re Combustion, Inc.*,
968 F. Supp. 1116 (W.D. La. 1997)............................................................................7, 16, 17

*In re DrKoop.com*,
No. 00-CA-427-JRN, Order and Final Judgment, ECF No. 48 (W.D. Tex. Nov. 14, 2001) ..17

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
447 F. Supp. 2d 612 (E.D. La. 2006) ......................................................................................6

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................................15

*In re Forterra Secs. Litig.*,
No. 3:18-CV-01957-X, 2020 WL 4727070 (N.D. Tex. Aug. 12, 2020) ...............................21

*In re KBR, INC. Securities Litigation*,
No. 4:14-CV-01287, 2017 WL 11633008 (S.D. Tex. Aug. 24, 2017) ...................................20

*In re Lomas Fin. Corp. Sec. Litig.*,
No. CA–3–89–1962–G, Final Order and Judgment (N.D. Tex. Jan. 28, 1992) ................16, 17

*In re Rite Aid Corp. Sec. Litig.*,

146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................................20

*In re S. Co. S'holder Derivative Litig.*,
   No. 1:17-CV-725-MHC, 2022 U.S. Dist. LEXIS 106456 (N.D. Ga. June 9, 2022) .................3

*In re Star Scientific, Inc.*, *Securities Litigation*,
   3:13-cv-00183, Order Awarding Attorneys' Fees, ECF No. 143 (E.D. Va. Jun. 26, 2015)....22

*In re Suprema Specialties, Inc. Sec. Litig.*,
    No. 02-168(WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) .............................................10

*In re Synchrony Fin. Sec. Litig.*,
   No. 3:18-CV-1818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023) .............................3, 19

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ...............................................................................................22

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................................19

*In re Vioxx Prod. Liab. Litig.*,
   MDL No. 1657, 2013 WL 5295707 (E.D. La. Sept. 18, 2013) .................................................16

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738(BMC)(JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .........................20

*In re Warner Commc'ns. Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ...........................................................................................12

*In re Warner Commc'ns. Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986)........................................................................................................12

*In re Xcel Energy, Inc. Sec. Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005).................................................................................10, 22

*Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*,
   790 F.2d 1174 (5th Cir. 1986) ..................................................................................................14

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) .....................................................................4, 7, 8, 15, 21

*Johnson v. Ga. Highway Express*,
   488 F.2d 714 (5th Cir. 1974) .................................................................................................5, 8

*Jones v. Diamond*,
   636 F.2d 1364 (5th Cir. 1981) ..................................................................................................14

*Kitson v. Bank of Edwardsville*,

No. 08-507, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ...........................................................17

*Kleinman v. Harris*,
Civil Action No. 3:89–CV–1869–X, Fee Award (N.D. Tex. June 21, 1993)..........................16

*Levitin v. A Pea in the Pod, Inc.*,
No. 3:94-CV-0247, Final Judgment and Order of Dismissal With Prejudice, ECF No. 213
(N.D. Tex. Mar. 27, 1998) ......................................................................................................17

*Lindsey v. Memphis-Shelby Cty. Airport Auth.*,
229 F.3d 1150 (6th Cir. 2000) ................................................................................................12

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ..................................................................................................10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006)....................................................................................................................5

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ..................................................................................................11

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
818 F.2d 278 (2d Cir. 1987)....................................................................................................19

*Rougier v. Applied Optoelectronics*,
4:17-cv-2399, Order Awarding Attorneys' Fees and Expenses, ECF No. 156
(S.D. Tex. Nov. 24, 2020)........................................................................................................21

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................. *passim*

*Scott v. ZST Digital Networks, Inc.*,
No. CV 11-3531 GAF  2013 WL 12126744 (C.D. Cal. Aug. 5, 2013)....................................18

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000)...................................................................................8, 13

*Streber v. Hunter*,
221 F.3d 701 (5th Cir. 2000) ..................................................................................................12

*Streber v. Hunter*,
233 F.3d 576 (5th Cir. 2000) ..................................................................................................12

*Teichler v. DSC Commc'ns Corp.*,
CA 3–85–2005–T (N.D. Tex. Oct. 22, 1990) .........................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..................................................................................................................5

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007) ..................................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ....................................................................................5, 6, 8

*Winfrey v. Johnson*,
  NO. 4:10-CV-1896, 2023 WL 137768 (S.D. Tex. Jan. 9, 2023) ..............................................6

**Statutes**

15 U.S.C. §78u–4(a)(4) ..................................................................................................21

15 U.S.C. §78u–4(a)(6) ....................................................................................................6

Private Securities Litigation Reform Act of 1995 .............................................................6, 7, 9, 21

Securities Act of 1933 ....................................................................................................15

Securities and Exchange Act of 1934 ...............................................................................1, 11, 15

**Other Authorities**

Janeen McIntosh, Svetlana Starykh, and Edward Flores, Recent Trends in Securities Class
  Action Litigation: 2022 Full-Year Review  (NERA Economic Consulting, 2023) .................. 7

Federal Judicial Center. (2004) *Manual on Complex Litigation, Fourth* ....................................... 6

Lead Plaintiffs Luis Torres and Allia DeAngelis, and additional Plaintiff Darrick Inman (collectively, the "Plaintiffs")[1] hereby submit this memorandum of law in support of their application for: (i) an award of $833,333.33, or 33 and 1/3% of the Settlement Amount, in cash as attorneys' fees; (ii) reimbursement of expenses incurred by counsel in successfully prosecuting and resolving this litigation in the amount of $365,621.35, and (iii) reimbursement awards in the amount of $10,000 for each of the Plaintiffs.

## I.    INTRODUCTION[2]

The Settlement obtained by Plaintiffs' Counsel on behalf of the Settlement Class represents an above average recovery in securities class actions. For the Exchange Act claims, the settlement recovers between 8% and 10% of the Class's estimated damages that range between $25.3 million and $28.1 million. For the Securities Act claims, the recovery is likely higher after accounting for Defendants' defense of negative causation, which reduces the estimated damages figure of $33.26 million. *See* Joint Decl. ¶ 65.[3]

Plaintiffs' Counsel devoted substantial time and financial resources in prosecuting this Action to achieve this recovery. Prior to drafting the complaint filed herein on behalf of Plaintiffs, Plaintiffs' Counsel: conducted an exhaustive search of all public information available about Berry

---

[1] All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated and filed with the Court on September 18, 2023, ECF No. 150-1 (the "Stipulation").

[2] A description of the claims alleged and the procedural history of the action are set forth in Sections II and III of Plaintiffs' Joint Declaration of Omar Jafri and Philip Kim in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Declaration" or "Joint Decl.") filed herewith. So as not to burden the Court with repetitive information, Plaintiffs incorporate those sections by reference herein. All capitalized terms in the Final Approval Memorandum have the same meaning when capitalized herein.

[3] Citations to Joint Decl. ¶ __ are to the Joint Declaration.

1

Corporation ("Berry" or the "Company") and its senior management; retained a private investigator to interview percipient witnesses; and reviewed a number of analyst reports written about the Company before, during, and after the alleged Class Period. After Defendants filed a motion to dismiss the Complaint, Plaintiffs' Counsel researched and drafted papers in opposition to that motion. When the Court denied Defendants' motion to dismiss, Defendants filed a motion for reconsideration of the denial of the motion to dismiss. In response, Plaintiffs' Counsel researched and drafted papers in opposition to that motion. The Court denied Defendants' motion for reconsideration. After working with an expert on market efficiency, Plaintiffs' Counsel researched and drafted a motion for class certification and filed a reply brief in response to Defendants' opposition to the motion for class certification. During discovery, Plaintiffs' Counsel received hundreds of thousands of documents produced by Defendants in response to 59 requests for production of documents, and reviewed a significant amount of the production over the course of several months. Plaintiffs' Counsel also defended and took multiple depositions.

In conjunction with the proposed Settlement, Plaintiffs' Counsel participated in a mediation session, regularly communicated with the mediator concerning the Settlement, and negotiated the detailed terms and conditions of the settlement papers with Defendants over a number of weeks. Plaintiffs then filed the Stipulation and a motion seeking preliminary approval of the Settlement. After this Court granted preliminary approval of the Settlement, Plaintiffs' Counsel established the escrow fund for the Settlement proceeds and worked with the Claims Administrator to ensure that adequate and sufficient notice was provided to potential Class Members pursuant to the Court's direction. *See* Joint Decl. at ¶¶ 34-55; Ewashko Decl. ¶¶ 2-8.[4]

---

[4] Citations to Ewashko Decl. ¶ __ are to the Declaration of Jack Ewashko On Behalf of A.B. Data, Ltd. Regarding Notice Administration, attached as Exhibit A to the Joint Decl.

Having obtained a significant recovery for the Class, Plaintiffs' Counsel, who have pursued this case on a fully contingent basis, request attorneys' fees of one-third of the Settlement Fund ($833,333.33 in cash). The amount requested is particularly appropriate given that the fees actually incurred by Plaintiffs' Counsel in prosecuting this case are far higher than the amount requested. *See, e.g.*, *In re Synchrony Fin. Sec. Litig.*, No. 3:18-cv-1818-VAB, 2023 U.S. Dist. LEXIS 135680, at *32 (D. Conn. Aug. 4, 2023) (noting that contingent fees awarded in securities class actions are often multiples of an attorneys' actual time expended on the litigation); *In re S. Co. S'holder Derivative Litig.*, No. 1:17-CV-725-MHC, 2022 U.S. Dist. LEXIS 106456, at *33-34 (N.D. Ga. June 9, 2022) (similar).

Plaintiffs' Counsel also request reimbursement of $365,621.35 in out-of-pocket expenses, which were reasonably incurred during this litigation and more than $4,000 less than the $370,000 in expenses that they had previously said they would seek in the Notice. In addition, Plaintiffs request a reasonable Reimbursement Award of $10,000 for each Plaintiff for their time spent actively litigating and managing this case. *See* Exhibits B-E to the Joint Decl. The requested attorneys' fees and expenses as well as the Plaintiffs' award were set forth in the Notice distributed to the Class. There have been no objections to either, which evidences the reasonableness of the request. Ewashko Decl. at ¶¶ 10-11.

For all these reasons, and based on the supporting documentation submitted herewith[5], Plaintiffs and Plaintiffs' Counsel believe the requested amounts are fair, reasonable, and just in light of the results achieved, and they respectfully request that the Court award them in full.

---

[5] In support of these applications, Plaintiffs also submit: (a) Declaration of Omar Jafri on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses, attached as Exhibit B to the Joint Decl. ("Jafri Fee Decl."); (b) Declaration of Phillip Kim on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses, attached as Exhibit C to the Joint Decl. ("Kim Fee

3

## II.    PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

Plaintiffs' Counsel's thorough and sustained effort was critical in obtaining a substantial and certain recovery for the Class. As such, Plaintiffs' Counsel respectfully request that the Court grant the request of $833,333.33 in attorneys' fees.

### A.    Attorneys' Fees Can Be Awarded From the Settlement's Common Fund

Following the Supreme Court, which "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), the Fifth Circuit has applied the "common fund" doctrine for decades. *See Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) (holding that "it is well settled that the common benefit or common fund equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts")[6]; *see also, e.g.*, *Burford v. Cargill, Inc.,* No. 05-0283, 2012 WL 5471985, at *1-2 (W.D. La. Nov. 8, 2012); *In re Bayou Sorrel Class Action*, No. 6:04cv1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006).

Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to undertake risky and complex litigation to seek redress for damages inflicted on entire classes of persons. *See, e.g., Jenkins v. Trustmark Nat'l Bank,* 300 F.R.D. 291, 307 (S.D. Miss. 2014); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). Indeed, the Supreme Court has emphasized that private securities cases, such as this litigation, are "'an indispensable tool with which defrauded

---

Decl.")  (c) Declaration of Marion Passmore on behalf of Bragar Eagel & Squire P.C. Concerning Attorneys' Fees and Expenses, attached as Exhibit D to the Joint Decl. ("Passmore Fee Decl."); and (d) Declaration of Gregory M. Nespole on behalf of Levi & Korsinsky, LLP Concerning Attorneys' Fees and Expenses, attached as Exhibit E to the Joint Decl. ("Nespole Fee Decl.").

[6] All internal citations and quotation marks are omitted unless otherwise stated.

investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 n.4 (2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)). Accordingly, common fund fee awards encourage and support meritorious class actions and thereby promote private enforcement of, and compliance with, the federal securities laws.

> **B.      The Court Should Award Attorneys' Fees Using the Percentage of Recovery Method**

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). "[D]istrict courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'" *Id*. at 643 (quoting *Johnson v. Ga. Highway Express,* 488 F.2d 714, 717-19 (5th Cir. 1974) (abrogated on other grounds)); *Winfrey v. Johnson*, NO. 4:10-CV-1896, 2023 WL 137768, at *2 (S.D. Tex. Jan. 9, 2023) (holding that *Johnson* factors "may still be considered"); *Coface North America Insurance Company v. Woodlands Export, LLC*, NO. 4:15-CV-621, 2016 WL 4361462, at *3 (S.D. Tex. Aug. 15, 2016) ("In determining what is a reasonable fee, the courts in the Fifth Circuit must consider the [*Johnson*] factors[.]"); *see also Schwartz v. TXU Corp.,* No. 3:02-CV-2243-K, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases and stating that "the percentage method is widely used … throughout the Fifth Circuit in common fund cases").

Although either method may be utilized, the Court should apply the percentage method because Plaintiffs' Counsel's lodestar exceeds the Settlement Amount. Moreover, the percentage method "allows for easy computation." *Union Asset Mgmt.*, 669 F.3d at 643. Conversely, the lodestar method has been called "difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation." Manual on Complex Litigation (4th) §14.121; *Schwartz*, 2005 WL 3148350 at *25 ("Numerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court."); *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.,* 447 F. Supp. 2d 612, 628-33 (E.D. La. 2006) (discussing the pervasive criticism of the lodestar method of calculating attorneys' fees).

Additionally, the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u–4(a)(6). "[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig*., 404 F.3d 173, 188 n.7 (3d Cir. 2005); *see also Union Asset Mgmt.*, 669 F.3d at 643 (noting the "near-universal adoption of the percentage method in securities cases" following the passage of the PSLRA).

Finally, the Court could "conduct a rough lodestar cross check as is the customary practice to ensure that the requested amount of attorney's fees is reasonable." *Evans v. TIN, Inc*., Civil Action No. 11-2067, 2013 WL 4501061, at *6 (E.D. La. Aug. 21, 2013). Given the fact that this securities class action is a "paradigmatic common fund case," *In re Chambers Dev. Sec. Litig.*, 912

6

F. Supp. 852, 860 (W.D. Pa. 1995) (internal quotation omitted), Plaintiffs' Counsel respectfully submits that the Court should apply the percentage-of-fund method, cross-checked against the lodestar.

### C.    An Award of a Third of the Gross Settlement Fund Is Appropriate

Under the percentage-of-recovery method, the Court determines the benchmark percentage to be applied to the actual monetary value conferred to the class members by the settlement. *Burford,* 2012 WL 5471985, at *1. "After setting the benchmark, the Court applies the *Johnson* factors to determine whether a positive or negative adjustment of the benchmark is warranted." *Id*. at *1 (internal quotation omitted). Here, the value of the settlement is $2,500,000 in cash, plus interest earned from the date the settlement funds were deposited in the escrow account. Plaintiffs' Counsel respectfully submit that a benchmark percentage of one-third be applied without adjustment.

"[D]istrict courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee." *Burford*, 2012 WL 5471985, at *2 (quoting *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997)); *Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentage of approximately one third").[7]  Recently, courts in the Fifth Circuit have set the "benchmark percentage" at, and awarded, one third of the common fund. *Burford,* 2012 WL 5471985 at *2; *see also Bayou Sorrel,* 2006 WL 3230771 at *7 (awarding 36% of the common fund); *In re Combustion, Inc.,* 968 F. Supp. 1116, 1156 (W.D. La. 1997) (awarding fee of 36% of $127 million settlement). Accordingly, there is ample precedent from courts within the Fifth Circuit, as well as nationwide survey evidence, to support the requested fee. *See Jenkins*,

---

[7] *See also* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* 20 (NERA Economic Consulting, 2023) (surveying data from January 2013 to December 2022 and finding that fees and expenses are "more than 30% for cases with a settlement value under $10 million").

300 F.R.D. at 307 (awarding one third of the settlement fund); *Schwartz*, 2005 WL 3148350, at *27 (collecting cases and stating that "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards (such as the NERA study), this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to thirty-three and thirty-four one-hundredths percent (33.34%) have been routinely awarded in class actions. Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

**D.    Application of the *Johnson* Factors Supports Lead Counsel's Request for Attorneys' Fees**

In *Johnson*, 488 F.2d at 717-719, the Fifth Circuit set forth a number of factors to be considered in determining the reasonableness of class counsel's fee request:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See Union Asset Mgmt.*, 669 F.3d at 642 n.25. "The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case." *Schwartz*, 2005 WL 3148350 at *28; *see also In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("not every [*Johnson*] factor need be necessarily considered"). Here, because each of the relevant *Johnson* factors weighs in favor of the requested

8

fee, a fee of 33 and 1/3%—which represents a negative .2546 multiplier of Plaintiffs' Counsel's lodestar—of the common fund is fully justified.

### 1.    The Time and Labor Required

As detailed herein, and in the Final Approval Memorandum, Plaintiffs' Counsel prosecuted the Action on a wholly contingent basis. Plaintiffs' Counsel's litigation efforts on behalf of the Class include: (a) conducting a detailed investigation of potential claims against Defendants that resulted in the filing of Plaintiffs' initial complaint and Amended Class Action Complaint; (b) moving, pursuant to the PSLRA for appointment of Lead Plaintiff and Plaintiff's Counsel; (c) overseeing investigative interviews of witnesses, including several former employees that served as Confidential Witnesses for the case; (d) successfully defeating Defendants' motion to dismiss; (e) successfully defeating Defendants' motion for reconsideration of the denial of Defendants' motion to dismiss; (f) filing a motion for class certification and responding to Defendants' opposition; (g) consulting with experts on damages; (h) sending and responding to discovery demands; (i) reviewing tens of thousands of documents produced by Defendants; (j) taking and defending multiple depositions; (k) engaging in settlement discussions involving a third-party mediator, including preparing mediation statements; (l) drafting settlement papers, including motion papers in support of preliminary approval of the Settlement; and (m) drafting motion papers in support of final approval of the Settlement. Joint Decl. at ¶¶ 20-40.

Additionally, the process by which Plaintiffs' Counsel resolved this Action involved intense and diligent effort. Settlement was only reached after Plaintiffs' Counsel conducted a thorough investigation of the facts of the case and potential claims, assessed the likelihood of a recovery for the Class, and engaged in arm's length negotiations with Defendants over the course of several months before agreeing to settle the case in principle for a sum proposed by the mediator. Plaintiffs' Counsel then negotiated the specific terms of the settlement agreement and eventually

drafted the settlement papers. Joint Decl. at ¶¶ 6, 34-40. The efforts that were required to complete these tasks were significant and undertaken at risk, given the contingency-based nature of Plaintiffs' Counsel's representation. To date, Plaintiffs' Counsel has spent 5,021.47 hours prosecuting this case. *See* Joint Decl., and Exs. B-E. Plaintiffs' Counsel have also incurred $365,621.35 in, as yet unreimbursed litigation expenses. *Id*. These expenses were required to achieve the settlement.

In addition, the timing of the Settlement itself is a benefit that Plaintiffs' Counsel has conferred on the Class. Achieving a beneficial outcome for the Class at this stage of the litigation weighs in favor of awarding the requested fee. *See Schwartz*, 2005 WL 3148350 at *29 (efficiency and effectiveness should be rewarded) (*citing In re Xcel Energy, Inc. Sec. Litig.,* 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (early settlements are consistent with the purposes of the Federal Rules of Civil Procedures)); *Di Giacomo v. Plains All Am. Pipeline,* No. Civ.A. H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (an emphasis on the number of hours would penalize counsel for obtaining early settlement). As such, the Court should find that a settlement at this stage benefits the Class, and that the labor and time Lead Counsel invested in this case supports the requested fee.

### 2.     Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Plaintiffs' Counsel's request for attorneys' fees. As a general matter, securities litigation is "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (internal quotation omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.,* No. 02-168(WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) ("this case's complexity is undeniable, given its facts and area of law, securities law.").

### (a)     Liability Could Be Difficult to Prove

10

Plaintiffs bear the burden of establishing each of the elements of the claims brought against Defendants under the federal securities laws. Although Plaintiffs believe the allegations of the Complaint would ultimately translate into a strong case for liability after the completion of discovery, Plaintiffs are also aware that many risks are involved in proving their claims. *See Schwartz*, 2005 WL 3148350 at \*29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain."). Indeed, Plaintiffs face numerous hurdles to establishing liability. These legal challenges include establishing that Defendants made misstatements or omissions of material fact during the alleged Class Period, that Defendants acted with scienter with regards to the claims brought under the Exchange Act, and the need to prove loss causation.

Defendants have and certainly would continue to argue that Plaintiffs could not establish that the alleged misstatements about the Company's permitting process were false at the time they were made, as Defendants claim that the market was already aware of the permitting issues. Moreover, Defendants would also vigorously argue that the evidence failed to demonstrate that Defendants were aware of facts that rendered their statements materially misleading when made. Simply put, establishing these elements could be a substantial hurdle. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (observing that scienter implicates "not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care.").

### (b) Obtaining Class Certification Is Not Certain and Proving Recoverable Damages Could Be Difficult

To obtain a class-wide recovery, Plaintiffs would be required to obtain – and retain – class certification by proving that Defendants made materially false and misleading statements during the Class Period and that the Company's shares traded in an efficient market. Defendants opposed class certification in this case. Even if the Court granted Plaintiff's motion, the Class could be decertified and that risk would remain without resolution of this Action. To prevail at trial,

11

Plaintiffs would also be required to prove the amount of the artificial inflation of Berry securities throughout the Class Period and that it was removed by the disclosure of true facts. *See Lindsey v. Memphis-Shelby Cty. Airport Auth.,* 229 F.3d 1150 (6th Cir. 2000) (affirming approval of settlement and highlighting risk of proving damages).

In addition, loss causation and damages are not elements of a securities claim that are within the knowledge of the jurors to consider on their own. Consequently, following a battle of experts on these issues, there is a significant risk that the jury would award substantially less damages than the maximum damages identified by Plaintiffs' Counsel's expert. The figures proffered by Plaintiffs' Counsel's expert are based on Plaintiffs' Counsel's theory of liability and assume that every element of the Class's liability and damages theories are accepted by the jury as being correct and recoverable, all of which Defendants vigorously dispute. Thus, the viability of these preliminary estimates as an actual calculation for damages could be affected by many factors that arise in the litigation, including Defendants' rebuttals and defenses to Plaintiffs' damage calculations and expert testimony.

While Plaintiffs' Counsel believe that there exists a firm basis for an expert to opine on the measure and amount of total damages, it is possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find Defendants' expert more persuasive. *See, e.g., Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000), *reh'g en banc denied*, 233 F.3d 576 (5th Cir. 2000) (jury can believe whichever expert it finds more credible); *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."). Consequently,

"[a]lthough Plaintiffs maintain they would likely be successful on the merits at trial," the complicated nature of the case and the uncertainty of prevailing at trial supports approval of the settlement. *Shaw*, 91 F. Supp. 2d at 960.

### 3.    Skill Required: the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys, also support the requested fee award. Plaintiffs' Counsel have many years of experience in complex federal civil litigation, particularly the litigation of shareholder, securities, and other class actions. *See* ECF No. 112-3 and 112-4. Plaintiffs' Counsel's experience enabled them to conduct extensive investigation into the relevant facts and identify the complex issues surrounding receiving permits for oil and gas companies and damages involved in this case, and formulate strategies to prosecute it effectively. Based upon Plaintiffs' Counsel's diligent efforts, and their skill and reputation, they were able to negotiate a favorable result.

It is also important to recognize that Defendants were represented by highly-experienced lawyers from a prominent and well-respected national law firm, BakerHostetler. The ability of Plaintiffs' Counsel to obtain such a favorable settlement for Plaintiffs and the Class in the face of such formidable legal opposition confirms the quality of their representation. Accordingly, this factor also supports the requested percentage. *See Billitteri v. Sec. Am., Inc.*, No. 11-cv-00191, 2011 WL 3585983, at *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel … The skill required here … certainly justifies the contemplated award.").

### 4.    The Preclusion of Other Employment

13

As previously noted, Plaintiffs' Counsel spent 5,021.47 hours litigating this case on behalf of Plaintiffs and the Class.[8] Joint Decl. at ¶ 78. This is time counsel could have devoted to other matters. Accordingly, this factor further supports the requested fee. *See Burford*, 2012 WL 5471985, at *3 ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter … This factor weighs in favor of a substantial fee award.").

### 5.    The Customary Fee for Similar Work in the Community

As set forth in Section II.C, *supra*, the one-third fee requested in this case is commonly awarded for similar work in the Fifth Circuit. Therefore, this factor weighs in favor of approving a fee of one-third of the common fund.

### 6.    Whether the Fee Is Fixed or Contingent

Plaintiffs' Counsel undertook this class action on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or expense outlays for over three years. Contingency risk alone is a factor supporting the requested fee. As the Fifth Circuit has stated, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), overruled on other grounds by *Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). Indeed, the risk of loss in this case is not illusory. As stated above, securities claims are extremely complicated and require expert testimony to prove. Success is never assured. Despite the risk that Plaintiffs' Counsel's significant time and effort could go uncompensated, Plaintiffs' Counsel diligently prosecuted the Class's claims.

---

[8] If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Class, but Plaintiff's Counsel seek no compensation for this work.

14

Indeed, the fee requested here is well below the total lodestar, demonstrating that the case was vigorously litigated for the benefit of the Class, and to effectuate the purpose of the securities laws despite no upside gain for Plaintiffs' Counsel at the time of resolution. Consequently, this factor heavily weighs in favor of approving the fee request. *See Jenkins*, 300 F.R.D. at 309.

### 7. Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

### 8. The Amount Involved and the Results Obtained

As discussed above, assuming that every element of the Class's liability and damage theories were accepted by the jury as being correct and recoverable, a preliminary damage study determined that the maximum recovery taking into account the statistically significant stock drops would be $28.1 million for the Exchange Act claims and $33.26 million for the Securities Act claims. Thus, Plaintiffs' Counsel has recovered approximately 8.9% of the Class's maximum provable damages for the Exchange Act claims. The percentage recovery for the Securities Act claims is even higher after accounting for a negative causation defense that reduces the recoverable damages to some extent. In light of the many aforementioned risks involved in this litigation, this is an excellent result. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.").

### 9. The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. While Plaintiffs' Counsel did not consider this case to be "undesirable," there are substantial risks inherent in financing and prosecuting contingent litigation of this type and Plaintiffs' Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. In fact, the negative

15

lodestar crosscheck shows that significant time and resources were spent for the ultimate benefit of the Class despite all the risks and at great expense to Plaintiffs' Counsel. Thus, the "undesirability" of the case also weighs in favor of the requested fee. *See, e.g., Billitteri*, 2011 WL 3585983, at \*8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transp. Serv. Co. of Ill.*, No. 05-1898, 2010 WL 3283398, at \*13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

### 10.    The Nature and Length of the Professional Relationship with the Client

Plaintiffs' Counsel have represented Plaintiffs in this litigation since 2020. Plaintiffs have been actively involved in this litigation and approved and support the Settlement. Throughout the litigation, Plaintiffs' Counsel communicated with Plaintiffs apprising them of the status of the case as well as reviewing and discussing pleadings, motions, and briefs.

### 11.    Awards in Similar Cases

As discussed above, the requested fee of 33 and 1/3% is consistent with awards granted in class action cases. Hence, this factor supports the requested fee award.[9]

---

[9] *See In re Combustion*, 968 F. Supp. at 1142 (awarding 36% of the settlement fund); *Teichler v. DSC Commc'ns Corp.*, CA 3–85–2005–T (N.D. Tex. Oct. 22, 1990) ("Plaintiff's Counsel awarded $10 million on a settlement of $30 million in securities class action") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *Kleinman v. Harris*, Civil Action No., Fee Award, 3:89–CV–1869–X (N.D. Tex. June 21, 1993) ("approving fee of approximately one-third of benefit achieved of $1,170,000") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *Faircloth v. Certified Fin. Inc.*, No. Civ. A. 99-3097, 2001 WL 527489, at \*9, 12 (E.D. La. May 16, 2001) (awarding 33.34% on a $1,534,321 settlement fund); *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2013 WL 5295707, at \*4-5 (E.D. La. Sept. 18, 2013) (awarding 33%); *Finkel v. Docutel/Olivetta Corp.*, CA3– 84–0566–T (N.D. Tex. Feb. 23, 1990) ("awarding fees amounting to 33% of settlement fund") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *In re Lomas Fin. Corp. Sec.*

16

In sum, the eleven applicable *Johnson* factors all support Plaintiffs' Counsel's request for one-third of the Gross Settlement Fund as attorneys' fees. The percentage method, backed by the *Johnson* factors, therefore supports granting Plaintiffs' Counsel's requested fees.

### E.      The Class's Reaction to The Fee Request

The claims administrator undertook a robust program to provide notice to potential Settlement Class Members, publishing notice on both *PR Newswire* and mailing or emailing 15,664 postcard notices throughout the world. *See* Ewashko Decl. at ¶¶ 6-7. To date, not one Class member has objected to the Settlement or the requested attorney's fees. *Id*. at ¶ 11. The Notice sent to the Class expressly stated that Plaintiffs' Counsel could seek one third of the Settlement Amount. Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair. *See Stoetzner v. U.S. Steel Corp*., 897 F.2d 115, 118-19 (3d Cir. 1990) (even when 29 members of a 281 person class (i.e., 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request").

### F.      A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

---

*Litig.*, No. CA–3–89–1962–G, Final Order and Judgment (N.D. Tex. Jan. 28, 1992) ("approving fee of almost one-third of benefit") (cited in *In re Combustion*, 968 F. Supp. at 1139); *Kitson v. Bank of Edwardsville*, No. 08-507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (awarding 33% of $3,415,000 settlement fund); *In re DrKoop.com*, No. 00-CA-427-JRN, Order and Final Judgment, ECF No. 48 (W.D. Tex. Nov. 14, 2001) (fee equal to 33-1/3% of total recovery, plus expenses); *Levitin v. A Pea in the Pod, Inc.*, No. 3:94-CV-0247, Final Judgment and Order of Dismissal With Prejudice, ECF No. 213 (N.D. Tex. Mar. 27, 1998) (fee award equal to 40% of recovery, plus expenses); *Branca v. First USA Paymentech, Inc*., No. 3:97- CV-2507-L, Order and Final Judgment, ECF No. 59 (N.D. Tex. Jan. 4. 2001) (fee equal to 33-1/3% of total recovery, plus expenses).

In addition to applying the percentage approach to determine attorneys' fees in common fund cases like this one, courts in this Circuit often apply the lodestar method as a "rough cross check" to confirm that the fee determined under the percentage approach is reasonable. *See Evans*, 2013 WL 4501061, at *6; *Burford*, 2012 WL 5471985 at *6 n.1. The lodestar multiplier is calculated by dividing the attorneys' fees that class counsel seeks by class counsel's associated lodestar. *Id.* at *6 n.1. In performing a lodestar analysis, a district court may rely on summaries submitted by the attorneys and need not review actual billing records. *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 867 (E.D. La. 2007) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. For example, a court performing a lodestar cross-check need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient").

Here, the cumulative number of hours expended by Plaintiffs' Counsel is 5,021.47, and the resulting lodestar for the services performed is $3,272,963.22. The requested fee of $833,333.33 thus equates to a multiplier of approximately .2546, based upon the lodestar figure of $3,272,963.22. This negative multiplier shows that the attorneys' fees award sought is significantly below the actual value of time and resources devoted to the litigation.

Courts have generally found that negative lodestar multipliers strongly weigh in favor of awarding requested attorneys' fees. *See Erica P. John Fund, Inc. v. Halliburton Company*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *13 (N.D. Tex. Apr. 25, 2018) ("Because there is a strong presumption that the lodestar represents a reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable."); *Scott v. ZST Digital Networks, Inc.*, No. CV 11-3531 GAF 2013 WL 12126744, at *9 (C.D. Cal. Aug. 5, 2013) ("And, as previously discussed, the 25 percent

18

benchmark actually represents a negative lodestar multiplier of 0.26 in this case. [] The Court therefore concludes that this factor weighs in favor of awarding the benchmark level of attorney's fees."); *In re Synchrony Financial Securities Litigation*, 2023 WL 4992933, at \*11 ("[A] negative lodestar multiplier of 0.7 is reasonable because positive multipliers are frequently awarded in comparable securities class actions."). Accordingly, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

### G.     Plaintiffs' Counsel's Expenses Were Reasonably and Necessarily Incurred in the Prosecution of This Action

Plaintiffs' Counsel also requests the reimbursement of $365,621.35 in expenses reasonably and necessarily incurred while prosecuting this Action. *See, Buettgen v. Harless*, 3:09-cv-791, ECF Nos. 236-2—236-6 (N.D. Tex. Sept. 16, 2013), 2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) (awarding expenses where fees for experts constituted over 60% of total litigation expenses, or approximately $1 million in expert fees out of total litigation expense of approximately $1.6 million); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494, at \*19 (S.D.N.Y. May 9, 2014) (granting award of litigation expense of $455,506.85 from a settlement of $4,950,000); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at \*10-11 (S.D.N.Y. Nov. 7, 2007) (granting award of litigation expense of $774,329.29 where over 70% of expenses were related to experts); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (awarding litigation expense because attorney's fees "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.").

The majority of the expenses are attributable to expert fees incurred in connection with Plaintiffs' Motion for Class Certification. The remaining expenses for financial damages, mediator

fees, investigator fees, research, travel costs and other administrative costs are routinely incurred and reimbursed in securities class actions. *See* Joint Decl. at ¶¶ 85-88.

The supporting declarations have attested to the accuracy of these expenses. *See* Kim Fee Decl.; Jafri Fee Decl.; Passmore Fee Decl.; Nespole Fee Decl. Because the expenses were incurred with no guarantee of recovery, Plaintiffs' Counsel had a strong incentive to keep them at a reasonable level and did so. Plaintiffs' Counsel made a concerted effort to avoid unnecessary expenditures and economized wherever possible. All were essential to achieving the Settlement and should be reimbursed.[10] Additionally, the Notice of Class Action Settlement informed Class Members that Plaintiffs' Counsel would seek reimbursement of expenses up to $370,000 and, to date, no objection to the expense application has been filed. Ewashko Decl. ¶ 11. Plaintiffs have spent over $4000 less than the maximum amount specified in the Notice. Ewashko Decl. at Ex, B. The requested expenses should, therefore, be awarded. *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) ("plaintiffs seek reimbursement of expenses … which they have detailed in their submissions to us. These out of-pocket expenses … are compensable … they are also unobjected to and, in our judgment, reasonable"). Consequently, Plaintiffs' Counsel

---

[10] *See, e.g., In re KBR, INC. Securities Litigation*, No. 4:14-CV-01287, 2017 WL 11633008, at *1 (S.D. Tex. Aug. 24, 2017) (awarding litigation expense of $816,260.97 from a settlement of $10.5 million); *Buettgen v. Harless*, No. 3:09-cv-00791, 2013 WL 12303143, at *14 (N.D. Tex. Nov. 13, 2013) (finding expenses, including "in-house and private investigators, in-house damage consultants, expert fees, mediation fees, travel, photocopying of documents, on-line research, messenger service, postage, express mail and next day delivery, long distance and facsimile expenses, database maintenance for the nearly 3 million pages of documents produced by various parties, transportation, meals, and other incidental expenses directly related to the prosecution of this action" were reasonable and necessary and "should therefore be awarded"); *see also*, *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738(BMC)(JO), 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("[T]he Court concludes that counsel's request for reimbursement of its litigation expenses is reasonable. The principal expenses for which Class Counsel seeks reimbursement are expert witness costs, deposition reporters and transcripts, translation and review of Chinese-language documents, copying, travel, research, and court-filings—all of which are appropriate for reimbursement.").

respectfully request that the Court approve the expense reimbursement request to be paid from the common fund in addition to the award of attorneys' fees. *See Jenkins*, 300 F.R.D. at 310-11 (awarding costs in addition to the percentage fee); *Di Giacomo*, 2001 WL 34633373 at *13 (same); *Faircloth*, 2001 WL 527489 at *12 (same).

## III.    THE PROPOSED REIMBURSEMENT AWARDS TO PLAINTIFFS SHOULD BE APPROVED

The PSLRA permits plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class …" 15 U.S.C. §78u-4(a)(4). *See Rougier v. Applied Optoelectronics*, 4:17-cv-2399, Order Awarding Attorneys' Fees and Expenses, ECF No. 156 (S.D. Tex. Nov. 24, 2020) (awarding lead plaintiff $15,000 and four additional plaintiffs $10,000); *In re Forterra Secs. Litig.*, No. 3:18-CV-01957-X, 2020 WL 4727070 (N.D. Tex. Aug. 12, 2020) (awarding $10,000 to lead plaintiff); *In re Cobalt Intl. Energy, Inc. Sec. Litig.*, 4:14-cv-3428, Order Awarding Attorneys' Fees, ECF No. 366 (S.D. Tex. Feb. 13, 2019)  (awarding aggregate of over $56,000, including one award of $25,000 and two awards of $15,000 each); *Hicks v. Stanley,* No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place").

Plaintiffs have performed their duties with attentiveness and diligent oversight. This included: (i) reviewing all pleadings, motions, and other documents; (ii) frequently communicating with counsel concerning the status of the case, court documents, strategy, and settlement discussion; (iii) searching through personal records to produce documents and information responsive to Defendants' discovery requests; (iv) preparing and sitting for depositions; (v)

21

consulting with Lead Counsel regarding pursuing mediation, the overall settlement prospects and objectives, and status of the parties' negotiations; and (vi) approving the Settlement. In light of the work done by Plaintiffs, the amount requested is eminently reasonable. Moreover, the request for the Plaintiffs' award here is the same or less than awards granted in other cases, and there have been no objections to their payment. *See Burford*, 2012 WL 5471985, at *6 (awarding named plaintiffs up to $15,000); *In re Star Scientific, Inc., Securities Litigation,* 3:13-cv-00183, ECF No. 143 (E.D. Va. June 16, 2015) (awarding lead plaintiff $9,500 each); *In re Catfish Antitrust Litig*., 939 F. Supp. at 504 (awarding each of the named plaintiffs $10,000); *Aranaz, et al., v. Catalyst Pharmaceutical Partners, Inc., et al.,* 1:13-cv-23878, Order and Final Judgment, ECF No. 153 (S.D. Fla. Mar. 16, 2015) (awarding Lead Plaintiff $10,000 each).[11] Accordingly, Plaintiffs respectfully request that the Court grant their request for an award of $10,000 each.

## IV.   CONCLUSION

For all the reasons stated above, in the Final Approval Memorandum, in any reply papers that may be filed in support of either motion, and at the Settlement Hearing, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of 33 and 1/3% of the Gross Settlement Fund, *i.e.*, $833,333.33 in cash; (b) approve reimbursement of $365,621.35 in aggregate expenses; and (c) grant an award to Plaintiffs in the amount of $10,000 per person.

Dated: January 5, 2024                        Respectfully submitted,

**POMERANTZ LLP**

---

[11] *See also In re Xcel Energy*, 364 F. Supp. 2d at 1000 ($100,000 collectively awarded to lead plaintiff group as reimbursement); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) (awarding over $42,000 to class representative as reimbursement for expenses incurred in reviewing documents, traveling, and attending mediation/court session); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, No. 04 cv 08144, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding a combined $214,657 to two institutional Lead Plaintiffs).

/s/ *Omar Jafri*

Joshua B. Silverman (*Pro Hac Vice*)
Omar Jafri (*Pro Hac Vice*)
Brian P. O'Connell (*Pro Hac Vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.:    (312) 377-1181
Fax:    (312) 377-1184
Email: jbsilverman@pomlaw.com
        ojafri@pomlaw.com
        boconnell@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim (*Pro Hac Vice*)
Ha Sung (Scott) Kim (*Pro Hac Vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel.:    (212) 686-1060
Fax:    (212) 202-3827
Email: pkim@rosenlegal.com
        skim@rosenlegal.com

*Lead Counsel for Plaintiffs*

**GRAVES LAW OFFICE**
Curtis C. Graves
12700 Park Central Drive
Suite 520
Dallas, Texas 75251
Tel.:    (214) 321-6940
Fax:    (866) 770-6949
Email: curtis@cgraveslaw.com

**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe
Texas Bar No. 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Tel.:    (972) 521-6868
Fax:    (346) 214-7463
Email: wbriscoe@thebriscoelawfirm.com

*Liaison Counsel for Plaintiffs*

23

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Eitan Kimelman
60 E 42nd Street, Suite 4600
New York, New York 10165
Tel.:    212-697-6484
Fax:    212-697-7296
Email: eitank@bgandg.com

**LEVI & KORSINSKY, LLP**
Daniel Tepper
55 Broadway, 10th Floor
New York, NY 10006
Tel.:    (212) 363-7500
Fax:    (212) 363-7171
Email: dtepper@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore (*Pro Hac Vice*)
580 California Street, Suite 1200
San Francisco, California 94104
Tel.:    (415) 568-2124
Fax:    (212) 214-0506
Email: passmore@bespc.com

*Additional Counsel for Plaintiffs*

24

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th of January, 2024, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ *Omar Jafri*
Omar Jafri

25