# Joint Declaration

6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| LUIS TORRES, ALLIA DEANGELIS, DARRICK INMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BERRY CORPORATION, ARTHUR T. SMITH, CARY BAETZ, GARY A. GROVE, BRENT S. BUCKLEY, KAJ VAZALES, and EUGENE J. VOILAND,<br><br>Defendants. | Case No. 3:20-cv-03464-S<br><br>JUDGE KAREN G. SCHOLER<br><br><u>CLASS ACTION</u> |

**JOINT DECLARATION OF OMAR JAFRI AND PHILLIP KIM
IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION; AND (2) CO-LEAD COUNSEL'S MOTION FOR AN AWARD
OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND
<u>REIMBURSEMENT AWARDS TO PLAINTIFFS</u>**

i

7

We, Omar Jafri and Phillip Kim, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

## I.    INTRODUCTION

1.    I, Omar Jafri, am a partner of the law firm of Pomerantz LLP ("Pomerantz"), Court-appointed Co-Lead Counsel and counsel of record for Lead Plaintiffs Luis Torres and Allia DeAngelis, and additional Plaintiff Darrick Inman (collectively, "Plaintiffs"), in the above-captioned securities class action (the "Action").[1]  I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this litigation by attorneys working with me and under my supervision.  Thus, if called upon, I can testify to the matters set forth herein.

2.    I, Phillip Kim, am a partner of the law firm of The Rosen Law Firm P.A. ("Rosen"), Court-appointed Co-Lead Counsel and counsel of record for Plaintiffs in the Action.  I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this litigation by attorneys working with me and under my supervision.  Thus, if called upon, I can testify to the matters set forth herein.

3.    We respectfully submit this Declaration in support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs, both filed concurrently herewith.  The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Settlement by its

---

[1]  All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated September 18, 2023 (ECF No. 150-1) (the "Stipulation" or "Stip.").

1

Order Granting Preliminary Approval of Class Action Settlement, dated October 18, 2023, which the Court entered the next day (the "Preliminary Approval Order").  ECF No. 151.

4.    This Declaration sets forth the nature of the claims asserted, the Action's procedural history, and the methods by which the Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and why Co-Lead Counsel's application for attorneys' fees, reimbursement of litigation expenses, and reimbursement awards for the Plaintiffs should be approved.

5.    The settlement contemplated by the Stipulation (the "Settlement") provides for a payment of $2,500,000 in cash (the "Settlement Amount") in exchange for the release of all Claims asserted by Plaintiffs against defendants Berry Corporation ("Berry" or the "Company"), Arthur T. Smith, Cary Baetz, Gary A. Grove, Brent S. Buckley, Kaj Vazales, and Eugene J. Voiland (collectively, the "Individual Defendants" and, together with Berry, "Defendants") and completely resolves the Action.  While Plaintiffs and Co-Lead Counsel believe that the allegations in the Amended Class Action Complaint (the "Complaint" or "Compl.") (ECF No. 59) have merit, Co-Lead Counsel respectfully submit that the Settlement represents an excellent result for the Class in light of the significant risks in the Action.  The Settlement provides a considerable benefit to the Class by conferring an immediate recovery while avoiding the risks, delay, and expenses of continued litigation, including the risk that the Class could recover less than the Settlement Amount or nothing at all.

6.    The proposed Settlement is the result of significant efforts by Co-Lead Counsel, which included, among other things detailed herein:  (i) extensive investigation of the claims, including a detailed review of Berry's public filings with the U.S. Securities and Exchange

Commission ("SEC"), press releases, and conference call transcripts, and other reports and news articles concerning Berry; (ii) third-party interviews of former employees; (iii) drafting the detailed Complaint; (iv) fully analyzing and addressing Defendants' motion to dismiss arguments; (v) consulting with experts on market efficiency and damages; (vi) fully analyzing and addressing Defendants' arguments in opposition to class certification; (vii) conducting extensive discovery that included the production and review of tens of thousands of documents, responses to interrogatories, and defending and taking depositions; (viii) drafting and exchanging a detailed mediation statement setting forth the facts and strengths of the Action and potential damages; (ix) engaging in a full-day mediation session with a well-respected mediator, Jed D. Melnick, Esq. ("Melnick" or the "Mediator") of JAMS; and (x) securing preliminary approval of the Settlement and moving to enforce the Settlement.

7.    In view of the foregoing, the Settlement is the result of negotiations by counsel who possessed a full understanding of both the strengths and weaknesses of their respective cases and takes into consideration the significant risks specific to this Action.  When balanced against the significant risks Plaintiffs faced in bringing the Action to trial and the overall amount of potential damages involved, the Settlement of $2,500,000 represents an excellent result for the Class.  Substantial investigation, legal research, and litigation to date informed Co-Lead Counsel that, while they believe this case is meritorious, there are also weaknesses that had to be carefully evaluated in determining what course of action was in the best interests of the Class (*i.e.*, whether to settle and on what terms, or to continue to litigate through summary judgment and a trial on the merits).

3

10

8.      Additional evidence that the Settlement represents an excellent result for the Class is the fact that, as of the filing of this Declaration, Plaintiffs have not received any requests for exclusion, and no objections to the Settlement.

9.      Likewise, the Plan of Allocation, developed in consultation with Plaintiffs' damages experts, should be approved as fair, reasonable, and adequate as it equitably distributes the proceeds of the Settlement among Class Members.  The Plan of Allocation is similar to allocation plans approved and successfully used in other securities class actions; gives no preferential treatment to any Class Member, Class segment, or Plaintiffs; and ensures that each Authorized Claimant will receive his, her, or its pro rata share of the Net Settlement Fund.  As of the date of this Declaration, no Class Members have objected to the Plan of Allocation.

10.     Finally, the requested attorneys' fees in the amount of $833,333.33, or 33 and 1/3%, of the Settlement Fund and reimbursement of Plaintiffs' Counsel's[2] litigation expenses in the amount of $365,621.35 as well as awards of $10,000 each to Plaintiffs for their representation of the Class, are reasonable and appropriate.  Co-Lead Counsel's fee request is within the range of fee percentages frequently awarded in the Fifth Circuit and in comparable securities class actions and, is justified in light of the substantial benefits that Plaintiffs' Counsel conferred on the Class, the risks they undertook, the quality of their representation, the nature and extent of their legal services, and the fact that they pursued the case, even though this considerable all-cash Settlement was far from guaranteed at its outset.  Plaintiffs' Counsel expended considerable time and effort prosecuting the Action on a fully contingent basis and have advanced litigation

---

[2]  "Plaintiffs' Counsel" includes Pomerantz, Rosen, Bronstein, Gewirtz & Grossman, LLC ("Bronstein"), Levi & Korsinsky, LLP ("Levi"), and Bragar Eagel & Squire, P.C. ("BES") and liaison counsel Graves Law Office ("Graves") and The Briscoe Law Firm, PLLC ("Briscoe").

4

and investigative expenses in the expectation that, as is customary, they will be paid a percentage of the common fund created by their efforts as attorneys' fees and receive payment for their expenses.  The requested fee results in a "negative" multiplier of .2547, further supporting the reasonableness of the fee request, and demonstrating that the Action was prosecuted above all else for the benefit of the Class to effectuate the purpose of the federal securities laws, and to deter misconduct.  As of the date of this Declaration, there have been no objections to Co-Lead Counsel's request for attorneys' fees and reimbursement of litigation expenses.

11.    Plaintiffs and Co-Lead Counsel submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved.  In addition, Co-Lead Counsel respectfully submit that the requests for attorneys' fees, reimbursement of litigation expenses, and Plaintiffs' reimbursement awards are fair and reasonable and should be approved.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Summary of the Claims and Allegations

12.    This is a federal securities class action for violations of Section 11 of the Securities Act of 1933 (the "Securities Act") against all Defendants and Section 15 of the Securities Act against Smith and Baetz, and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Berry, Smith, Baetz, and Grove and Section 20(a) of the Exchange Act against Smith, Baetz, and Grove.  Plaintiffs' claims are set forth in the Complaint, which asserts claims against Defendants on behalf of Berry's investors during the Class Period.

13.    Berry is an energy company that focuses on the development and production of conventional oil reserves.  Compl. ¶¶ 2, 27.  Virtually all of Berry's asset base is located in California.  *Id*. at ¶¶ 2, 29.  The state requires that oil producers obtain a variety of permits from

5

the California Geologic Energy Management Division, as well as from other regulators. *Id*. Recovery of oil takes several years to fully develop, and the Company is heavily dependent on the timely issuance of permits. *Id.* Thus, one of Berry's six principal business strategy elements was to mitigate the risk of permit delays, and the Company repeatedly discussed this topic in public statements throughout the Class Period. *Id.*

14.    The Complaint alleges that the Registration Statement filed with the SEC in connection with the Company's July 26, 2018 Initial Public Offering ("IPO"), in which Berry sold over 10 million shares of common stock and raised approximately $110 million, contained materially false and misleading statements and failed to disclose material facts regarding the Company's inability to secure timely permits in connection with the production of oil. *Id.* at ¶¶ 71-75. Specifically, the Registration Statement included numerous risk factors, including risks relating to regulatory and permitting delays, among other things. *Id*. at ¶¶ 71, 73. The Complaint alleges that at the time of the Registration Statement's issuance, those risks had already materialized, and were not merely possibilities, rendering the Registration Statement materially misleading when made. *Id*. at ¶¶ 3, 72, 74, 76-81.

15.    The Complaint further alleges that between July 26, 2018 and November 3, 2020, inclusive (the "Class Period"), Defendants continued to issue materially false and misleading statements regarding permits, and failed to disclose material facts regarding the Company's inability to secure timely permits on nearly a dozen occasions. *Id*. at ¶¶ 4, 84. The Company, Smith, its Chief Executive Officer, Baetz, its Chief Financial Officer, and Grove, its Chief Operating Officer, repeatedly assured investors that the ability to secure permits was a non-issue. *Id.*

6

13

16.    The Complaint alleges that the truth partially began to emerge on April 1, 2020, with the issuance of a press release announcing that due to "current market conditions," Berry would revise its 2020 production target significantly downwards, with growth expected to remain flat to 2% down. *Id*. at ¶ 124. On this news, the Company's stock price declined by over 16.6% from a closing price of $2.41 on March 31, 2020, to close at $2.01 on April 1, 2020. *Id*. at ¶ 125.

17.    On August 4, 2020, the Company issued a press release announcing second quarter 2020 financial results, which revealed that the average daily production decreased by an additional 5% for the second quarter of 2020 compared to the first quarter of 2020 as a result of reduced drilling activity and alleged cost control measures associated with steam management that temporarily increased water disposal requirements. *Id*. at ¶ 126. On this news, Berry's stock price decreased by over 7% from the previous day's closing price of $4.90 on August 4, 2020, to close at $4.55 on August 5, 2020. *Id*. at ¶ 127.

18.    Last, on November 3, 2020, Berry issued a press release announcing its third quarter 2020 financial results, again announcing that average daily production decreased by 5% for the third quarter 2020 compared to the previous quarter. *Id*. at ¶ 128. On this news, the Company's stock price decreased by over 5% from a closing price of $2.84 on November 3, 2020, to a closing price of $2.69 on November 4, 2020. *Id*. at ¶ 129.

19.    Defendants continue to deny that they committed any acts or omissions giving rise to any liability and/or violation of the law.

**B.    Procedural History**

20.    This litigation commenced on November 20, 2020, when Luis Torres filed the original securities class action complaint in this Court. ECF No. 1.

21.     On August 18, 2021, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the Court appointed Luis Torres and Allia DeAngelis as Co-Lead Plaintiffs and approved their selection of Pomerantz and Rosen to serve as Co-Lead Counsel.  ECF No. 45.

22.     Plaintiffs filed the Complaint on November 1, 2021.  ECF No. 26.  The Complaint named an additional Plaintiff, Darrick Inman, and was based on an investigation and analysis by Co-Lead Counsel which included, among other things, review and analysis of: (i) press releases, news articles, transcripts, and other public statements issued by or concerning Berry; (ii) research reports issued by financial analysts concerning Berry's business; (iii) Berry's filings with the SEC; (iv) economic analyses of securities movement and pricing data; and, (v) other publicly available information and data concerning Berry, its securities, and the markets therefor.  As part of Co-Lead Counsel's investigation, investigators for Co-Lead Counsel also conducted interviews with former Berry employees.

23.     Defendants moved to dismiss the Complaint on January 24, 2022, which attached 25 exhibits to the Declaration of Douglas W. Greene.  ECF Nos. 63, 64-1-26.  Concurrently, Defendants filed a Request for Full Context Review And/Or Judicial Notice in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint.  ECF No. 65.

24.     On April 11, 2022, Plaintiffs filed a Motion to Strike the Declaration of Douglas W. Greene and their Opposition to Defendants' Motion to Dismiss.  ECF Nos. 68-70.  Defendants filed their opposition to the Motion to Strike on May 12, 2023 (ECF No. 73) and Plaintiffs filed their reply in support on June 6, 2023 (ECF No. 74).  Also on June 6, 2022, Defendants filed their reply in support of their Motion to Dismiss.  ECF No. 75.

25.     On June 14, 2022, Plaintiffs filed a Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss.  ECF No. 76.  Defendants opposed that motion on June 23, 2022 (ECF No. 79) and the Court granted Plaintiffs' motion on June 24, 2022 (ECF No. 80). Plaintiffs filed their surreply on June 24, 2022 (ECF No. 81).

26.     On September 18, 2022, the Court issued an Electronic Order denying Defendants' Request for a Full Context Review and/or Judicial Notice in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint and Terminated as Moot Plaintiffs' Motion to Strike the Declaration of Douglas W. Greene.  ECF No. 82.

27.     Also on September 18, 2022, the Court issued an Order denying Defendants' Motion to Dismiss.  ECF No. 83.

28.     On September 19, 2022, Defendants filed a Motion for Reconsideration And/Or Clarification regarding the motion to dismiss Order.  ECF No. 87.  Plaintiffs filed their opposition on October 4, 2022 (ECF No. 94) and Defendants filed their reply on October 18, 2022 (ECF No. 101).

29.     On September 27, 2022, Defendants filed their answer to the Complaint.  ECF No. 91.

30.     On October 24, 2022, the Court issued an Order Referring Case to mediation before Melnick.  ECF No. 106.

31.     On November 9, 2022, the Court issued an Order denying Defendants' reconsideration motion.  ECF No. 107.

32.     On December 1, 2022, the Parties filed a [Proposed] Order Concerning Protocol For Production Of Documents And Electronically Stored Information (ECF No. 108) and

9

Stipulation And [Proposed] Protective Order Governing Confidentiality Of Discovery Material (ECF No. 109), which the Court so ordered on February 28, 2023 (ECF Nos. 115 and 116).

33.    On February 13, 2023, Plaintiffs moved for class certification.  ECF No. 110. Defendants filed their opposition to class certification on April 14, 2023 (ECF No. 120) and Plaintiffs filed their reply on May 26, 2023 (ECF No. 126).  On May 31, 2023, Defendants filed a Motion for Evidentiary Hearing on Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel.  ECF No. 135.  Plaintiffs filed their opposition to that motion on June 2, 2023 (ECF No. 137) and Defendants filed their reply on June 16, 2023.   ECF No. 138.  On June 27, 2023, the Court issued an Order granting Defendants' motion and setting an evidentiary hearing on the class certification motion for August 23, 2023, at 10:00 a.m.  ECF No. 139.

### C.    Mediation and Settlement Negotiations

34.    The Parties reached the proposed Settlement through a protracted, good faith, arm's-length negotiation facilitated by Melnick, an experienced mediator.

35.    On May 25, 2023, Plaintiffs and Defendants submitted to the Mediator and exchanged mediation statements detailing the strengths and weaknesses of their case, liability, and damages.

36.    On May 30, 2023, counsel for all Parties participated in a full-day virtual mediation hosted via Zoom by Melnick.  Plaintiffs and Defendants ended the May 30, 2023 mediation without reaching a resolution to the Action.

37.   The Parties continued negotiations over the next two months and agreed to a mediator's proposal to resolve the Claims in the Action on July 19, 2023, memorializing substantive terms in a term sheet.

38.   On August 2, 2023, the Parties notified the Court that they had agreed in principle to resolve all Claims in this Action and requested a stay of all deadlines.  ECF No. 144.

39.   Subsequently, the Parties negotiated a Stipulation more fully documenting the Settlement, and prepared the class notice, postcard notice, summary notice, claim form, and proposed orders for preliminary approval and final approval and entering final judgment.  The Parties finalized and executed the Stipulation on September 18, 2023.  ECF No. 150-1.

40.   Plaintiffs filed their unopposed motion for preliminary approval of settlement and accompanying documents on September 18, 2023.  ECF Nos. 148–150-7.

III.   **SUMMARY OF THE SETTLEMENT AND NOTICE PROGRAM**

A.   **Summary of the Settlement Terms**

41.   The proposed Class, stipulated to by the Parties, includes all persons and entities who (1) purchased or otherwise acquired Berry common stock pursuant and/or traceable to Berry's Registration Statement issued in connection with its July 26, 2018, initial public offering; and/or (2) purchased or otherwise acquired Berry's common stock between July 26, 2018, and November 3, 2020, both dates inclusive.  Stip. at ¶ 1.8.  Excluded from the Class are Defendants herein, current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.  *Id.*  Also excluded from the Class are any persons or entities who exclude themselves in accordance with the requirements set forth in the Notice.  *Id.*

11

42.     Under the terms of the Settlement, Defendants are required to pay, or cause to be paid, $2,500,000 into an Escrow Account within twenty-one calendar days of preliminary settlement approval (the "Settlement Fund").  *Id.* at ¶ 2.1.  In return, the Settlement provides that Plaintiffs and the Class will release all Released Plaintiff Claims against the Defendant Releasees. *See, e.g.*, *id.* at ¶¶ 1.38.

43.     The Settlement Fund, including any interest earned thereon, shall be used to pay Taxes and Tax Expenses, Notice and Administration Costs, any attorneys' fees and litigation expenses awarded by the Court, and any awards to Plaintiffs authorized by the Court, with the balance (the "Net Settlement Fund") to be distributed to Authorized Claimants in accordance with the Plan of Allocation, developed in consultation with Plaintiffs' experienced damages experts, to be approved by the Court.  *Id.* at ¶ 7.3-7.7; Stip. Ex. A-1 (Notice).

**B.      The Court Has Preliminarily Approved the Settlement**

44.     On October 18, 2023, the Court issued the Preliminary Approval Order, entered on October 19, 2023, thereby preliminarily approving the proposed Settlement, preliminarily finding that certification of the Class is appropriate, and directing dissemination of notice to Class Members.  ECF No. 151.

45.     The Court scheduled the Settlement Hearing for final approval of the Settlement, the Plan of Allocation, attorneys' fees and expenses, including awards to Plaintiffs, final certification of the Class, and to hear any objections by Class Members, for February 6, 2024, at 1:30 p.m.

**C.     Dissemination of Notice to the Class Was Adequate and Accomplished in Accordance with the Preliminary Approval Order**

46.     Attached hereto as Exhibit A is a true and correct copy of the Declaration of Jack Ewashko of A.B. Data, Ltd. Regarding Notice Administration (the "Ewashko Decl.") which sets forth the efforts undertaken by A.B. Data, Ltd. ("A.B. Data"), the Court-appointed Claims Administrator, to mail the Postcard Notice to potential Class Members, to publish the Summary Notice, and to establish the Settlement website.

47.     Pursuant to the Preliminary Approval Order, as of January 3, 2024, A.B. Data has mailed 15,664 copies of the Postcard Notice to potential Class Members and their brokers and nominees.  Ewashko Decl. ¶ 6.

48.     As in most class actions of this nature, the large majority of potential Class Members are beneficial purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees in the names of the respective nominees, on behalf of the beneficial purchasers.  *Id.* at ¶ 4.  A.B. Data maintains a proprietary database with names and addresses of the largest and most common banks, brokers, and other nominees (the "Record Holder Mailing Database").  *Id.*

49.     Potential Class Members and/or their nominees were identified from A.B. Data's Record Holder Mailing Database and listings provided to A.B. Data by Berry's transfer agent, as well as brokerage firms and other banks, financial institutions, and other nominees holding Berry stock in street name for Class Members.  *Id.* at ¶ 4.

50.     The Postcard Notice directed potential Class Members to the Settlement website, www.berrycorpsecuritieslitigation.com, where downloadable versions of the long form Notice and Claim Form are available.  *Id.* at ¶ 9.  The website became operative on November 16, 2023, and

13

is accessible 24 hours a day, 7 days a week.  *Id.* at ¶ 9.  A.B. Data will update the website as necessary through the administration of the Settlement.  *Id.*

51.    The Notice provided, *inter alia*:  (i) a description of the nature of the Action and claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) the reasons for and material terms of the Settlement; (v) the Plan of Allocation; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) the time and manner for requesting an exclusion from the Class or objecting to the Settlement, Plan of Allocation, or the requested attorneys' fees, expenses, or reimbursement awards to Plaintiffs; (viii) the date, time, and place of the Settlement Hearing; (ix) the identity and contact information of the representatives of Co-Lead Counsel and procedures for making inquiries; and (x) the binding effect of a judgment on Class Members.  *See* Ewashko Decl. Ex. B (Notice Packet).

52.    A.B. Data also arranged for the Summary Notice to be transmitted over *PR Newswire* on November 30, 2023. Ewashko Decl. at ¶ 7.

53.    In addition, beginning on or about November 16 2023, A.B. Data established and continues to maintain a toll-free telephone number with a live operator during regular business hours dedicated to fielding calls and questions from Berry shareholders.  *Id.* at ¶ 8.

54.    The deadline to submit a request for exclusion or an objection is January 7, 2024. *See* Ewashko Decl. Ex. B.  To date Plaintiffs have received no requests for exclusion (Ewashko Decl. at ¶ 10) and no objections to the Settlement, Plan of Allocation or Lead Counsel's request for attorneys' fees and expenses, or the proposed awards to Plaintiffs. *Id*. at ¶ 11.

55.    A.B. Data will submit a supplemental declaration addressing any exclusions or objections, if any are received, once the January 7, 2024 deadline has passed.  Similarly, Plaintiffs

14

will address any exclusions or objections in the reply which is to be filed with the Court on or before January 30, 2024.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

56.    In light of the considerations discussed in Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Supporting Memorandum, Plaintiffs and Co-Lead Counsel submit that the Settlement is fair, reasonable, and adequate, satisfies the standards of Federal Rule of Civil Procedure 23 and the Fifth Circuit, and provides a significant recovery for the Class.

57.    The Settlement was only achieved after arm's-length negotiations between well-informed and experienced counsel on both sides, as Defendants are represented by a prominent, experienced law firm, and overseen by Melnick, a well-respected and experienced mediator.  There is no indicia of collusion, with neither Plaintiffs nor any other Class Member receiving preferential treatment under the Settlement.  All Class Members, including Plaintiffs, will receive pro rata recoveries based on the same recognized loss calculation formula.

58.    Prior to Settlement, Plaintiffs and Co-Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy.  More specifically, prior to Settlement, Plaintiffs' Counsel had, among other things: (i) analyzed, *inter alia*, Berry's public filings with the SEC, press releases, conference call transcripts, and other reports and news articles concerning Berry; (ii) interviewed third party, confidential witnesses, (iii) consulted with experts on market efficiency, loss causation, and damages issues; (iv) drafted the detailed Complaint; (v) fully analyzed and responded to Defendants' motion to dismiss, including Defendants' Motion for

15

22

Reconsideration And/Or Clarification; (vi) fully analyzed and responded to Defendants' opposition to class certification; (vii) conducted extensive discovery that included reviewing thousands of documents produced in response to 59 requests and responses to interrogatories, and taking and defending multiple depositions; (viii) fully analyzed and responded to Defendants' Motion for Evidentiary Hearing on Plaintiffs' Motion for Class Certification including responding to Defendants' Motion for an Evidentiary Hearing; and (ix) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of the Action and potential damages. *See also supra* at ¶¶ 6, 10.

59. The immediate benefits of the proposed Settlement outweigh the substantial risks, delay, and expense of continued litigation. Although, based on the investigation and record, Plaintiffs and Co-Lead Counsel believe their claims have merit, there are also uncertainties and risks in continuing the litigation.

60. If litigation were to proceed, Plaintiffs would first have to prevail on their outstanding motion for class certification, for which the Court had set an evidentiary hearing. Even if successful on the motion for class certification, Defendants would likely challenge class certification through a Rule 23(f) application and move to decertify all or part of the Class. Years of extensive fact and expert discovery and depositions would likely ensue, in addition to contested motions for summary judgment, and a trial, with substantial expenditures of time and money. Defendants would be expected to mount a vigorous defense at trial and further litigation would be expensive, complex, and protracted.

61. And although Plaintiffs were successful in overcoming Defendants' Motion to Dismiss, the Court noted in its Order that it "anticipates that it will revisit [scienter] at a later phase

16

23

in the litigation after discovery takes place." ECF No. 83 at 2. So while Plaintiffs believe their claims would be borne out by the evidence, there was no guarantee of success on the merits.

62.     Plaintiffs would have to establish falsity, materiality, and loss causation. Plaintiffs would also bear the burden of proving damages. It is well established that loss causation and damages are complicated issues, often requiring testimony from financial experts and often reduced to a "battle of the experts." A jury's reaction to conflicting expert testimony is unpredictable, and Co-Lead Counsel recognized the possibility that the jury could have been swayed by Defendants' experts and awarded little to no damages.

63.     Further, if Plaintiffs prevailed on their motion for class certification, on an expected motion for summary judgment, and at trial, Defendants would likely appeal one or more of the decisions. The appeals process can go on for months or even years, significantly prolonging the Action and may have ultimately led to a smaller recovery, or no recovery at all.

64.     In contrast to the foregoing, the Settlement provides an immediate and certain benefit to the Class in the form of a cash payment of $2.5 million. Co-Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is an excellent result for the Class.

65.     In consultation with their damages experts, Plaintiffs estimated that if they prevailed on all of the claims using an 80/20 multi-trader approach to damages, overcoming all obstacles and risks discussed herein and in the accompanying motion, the maximum estimated recovery for the Exchange Act claims would be $28.1 million. The Settlement Amount of $2.5 million, therefore, represents approximately 9% of the maximum potential recoverable damages under the Exchange Act. Plaintiffs' estimated recovery under the Securities Act is $33.26 million,

17

24

which could be reduced if a negative causation defense succeeds, and the percentage recovery for the Securities Act claims is thus potentially even higher than the Exchange Act claims. These types of percentages are routinely approved as fair, adequate, and reasonable.

## V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

66.    As stated in the Postcard Notice and the long form Notice available on the Settlement website, Class Members who wish to participate in the Settlement must submit a Claim Form by March 15, 2024. *See* Exhibits A-B to Ewashko Decl. The Notice explains that the Net Settlement Fund, including any interest earned thereon, after deduction of certain enumerated fees and expenses, shall be paid to Authorized Claimants on a pro rata basis according to the Court-approved Plan of Allocation. *E.g.*, Notice, Ewashko Decl. Ex. B at pp. 10-14.

67.    Plaintiffs and Co-Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who suffered losses as a result of the conduct alleged in the Action similar to any result if Plaintiffs were successful at trial. Co-Lead Counsel developed the Plan of Allocation in consultation with an independent expert with the goal of distributing net settlement funds to eligible Class Members in a fair and reasonable manner relative to their pro rata losses.

68.    Specifically, under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or other acquisition of Berry common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss Amounts will depend upon several factors, including when each Authorized Claimant purchased and/or sold Berry common stock, the transactions prices, and requires that the Berry common stock be held over an alleged corrective disclosure date for an authorized Claimant

18

25

to have a Recognized Claim.  In general, the Recognized Loss Amount will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and sale price, whichever is less.  The Recognized Loss Amount also incorporates the "90-day look back" provision of the PSLRA. The sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims.

## VI.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

69.     The Court's Preliminary Approval Order stated that the "Court finds and preliminarily concludes that the perquisites of class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied for the Class" for the purposes of Settlement. *See* ECF No. 151 at 2.  There have been no changes to alter the propriety of class certification for settlement purposes.

## VII.    CO-LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE AND SHOULD BE APPROVED

### A.     The Fee Application

70.     As compensation for their efforts, Co-Lead Counsel requests an award of attorneys' fees in the amount of 33 and 1/3% of the Settlement Fund, or $833,333.33, and reimbursement of $365,621.35 in expenses reasonably incurred in the prosecution and settlement of the Action.  *See* Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Supporting Memorandum (the "Fee Motion") filed herewith.  Plaintiffs' Counsel have vigorously prosecuted this case on a fully contingent basis for over three years without any compensation whatsoever, and incurring substantial expenses without any guarantee of success.

19

71.    The Notice provides that Co-Lead Counsel would apply for a fee award in an amount up to one-third (33 1/3%) of the Settlement Fund and that Co-Lead Counsel would request reimbursement of litigation expenses in an amount not to exceed $370,000, which may include an application for an incentive payment to Plaintiffs directly related to their representation of the Class.

72.    As discussed in the Fee Motion, use of the percentage-of-fund method in determining the appropriate fee recovery is the preferred method in the Fifth Circuit as it directly aligns the interests of the class and counsel and incentivizes attorneys to take undesirable cases.  It is also supported by the Supreme Court and the PSLRA.

73.    The requested fee is well within the range of fees awarded by courts in the Fifth Circuit and in comparable securities class actions.

74.    Based on the time and labor expended by Plaintiffs' Counsel, the amount involved and results achieved, the risks and complexities of the litigation, the quality of representation, the contingent nature of the representation, preclusion of other employment, and undesirability of the Action, Co-Lead Counsel respectfully submits the requested fee award is fair and reasonable and should be approved by the Court.

**B.    Plaintiffs' Counsel's Work and Expertise**

75.    Plaintiffs' Counsel devoted significant time and effort prosecuting this Action and achieving the Settlement, supporting the requested fee.  Prior to reaching the agreement in principle to settle the Action, Plaintiffs' Counsel had, among other things: (i) reviewed and analyzed, *inter alia*, Berry's SEC filings, press releases, and conference call transcripts, analyst reports, and news articles concerning Berry; (ii) conducted numerous interviews with former

20

employees of the Company; (iii) drafted the detailed Complaint; (iv) analyzed and addressed Defendants' motion to dismiss arguments; (v) analyzed and addressed Defendants' arguments in opposition to class certification; (vi) reviewed and analyzed tens of thousands of documents produced by Defendants in response to 59 requests for production of documents; (vii) reviewed and analyzed Defendants' responses to interrogatories; (viii) defended and taken multiple depositions; (ix) consulted with experts on the industry, market efficiency, loss causation, and damages issues; (x) responded to Defendants' discovery requests and produced documents in response to those requests; (xi) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of the Action and potential damages; and, (xii) engaged in a full-day virtual mediation session before the Mediator and participated in additional negotiations via telephone and email in regards to the terms of the Settlement.

76.     Plaintiffs' Counsel also consulted with experts regarding the Plan of Allocation and prepared the documents required for preliminary and final approval of the Settlement.  Plaintiffs' Counsel have expended time in overseeing the Notice process and will continue to expend necessary time and resources in preparing for and appearing at the final Settlement Hearing and ensuring the finalization of the claims process.

77.     The expertise and experience of Plaintiffs' Counsel is an important factor to be weighed in assessing a fair fee.  Plaintiffs' Counsel have extensive experience prosecuting securities class actions and other complex litigation.  ECF Nos. 112-3, 112-4 (firm resumes).

78.     At all times, Plaintiffs' Counsel provided comprehensive and focused efforts to achieve the best possible results for the Settlement Class, with no certainty of reimbursement for their time.  As set forth herein and by the lodestar reports of Plaintiffs' Counsel (Exs. B-E and

21

summarized below, Plaintiffs' Counsel expended 5,021.47 hours for a total lodestar of $3,272,963.22  The hourly rates for Plaintiffs' Counsel range from $415 to $1,100, and for professional staff from $110 to $375.  *See* Exs. B-E.  These rates are comparable to those normally charged by securities action law firms and normally charged in the community where the attorneys practice.  *Id.*

| LAW FIRM | HOURS | LODESTAR |
|---|---|---|
| Pomerantz LLP | 2,007.42 | $1,574,553.72 |
| Rosen Law Firm, P.A. | 1,234.05 | $640,911.25 |
| Bragar Eagel & Squire, P.C. | 615.50 | $459,386.25 |
| Levi & Korsinsky, LLP | 1,164.50 | $598,112 |
| TOTAL | 5,021.47 | $3,272,963.22 |

79.     Plaintiffs' Counsel's total lodestar is $3,272,963.22, and the requested one-third of the Settlement Fund, or $833,333.33 equates to a negative multiplier of .2547, which is well below the typical range of positive multipliers routinely approved by courts in securities class actions and other complex litigation in this Circuit.  Moreover, the lodestar multiplier does not include additional time that will be expended in completing the claims process.

C.     **Standing and Caliber of Opposing Counsel**

80.     The quality of the work performed by Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Defendants were represented by experienced and qualified attorneys well-versed in securities litigation at BakerHostetler LLP.  In the face of this knowledgeable and formidable opposition, Co-Lead Counsel was nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle it on terms that are favorable to the Class.

22

**D.      The Risks of Contingent Litigation**

81.      Plaintiffs' Counsel undertook and prosecuted this Action on an entirely contingent basis with no guarantee of any compensation.  Plaintiffs' Counsel knew from the outset that they would expend a substantial amount of time prosecuting this Action yet receive no compensation if the Action ultimately proved unsuccessful.  Thus, the contingent nature of payment of fees and expenses and the risks and complexity of the Action should be given substantial weight by the Court in considering the instant application for fees and expenses.

82.      As described above, this Action involved serious legal and practical hurdles that could have resulted in no recovery at all.  Continued litigation would have entailed significant risks to the Class, as the Action could be derailed in any number of ways before a final judgment in Plaintiffs' favor was entered (and withstood possible appeal).

83.      As a result of consistent and persistent efforts in the face of substantial risks and uncertainties, Plaintiffs' Counsel achieved a significant recovery for the benefit of the Class.

**E.      The Reaction of the Class to the Requested Fee**

84.      As discussed above, the Postcard Notice has been mailed to 15,664 potential Class Members and their nominees, and the Notice contains information regarding the 33 1/3% fee award requested by Co-Lead Counsel.  As of the date of this Declaration, there have been no objections to the proposed fee request.

**F.      Payment of the Requested Expenses and Costs is Fair and Reasonable**

85.      Plaintiffs' Counsel is also moving for payment of $365,621.35 in litigation expenses reasonably and actually incurred in connection with commencing and prosecuting the claims against Defendants, as outlined in the accompanying declarations and summarized below.

23

30

*See* Exs. B-E.  Plaintiffs' Counsel advanced all of the litigation expenses.  Pursuant to the Preliminary Approval Order, Co-Lead Counsel notified Class Members that they would seek a maximum of $370,000 in expenses.  *See, e.g.*, Ewashko Decl. Ex. B.  Thus, Plaintiffs' Counsel's requested expenses, when combined with Plaintiffs' request for an incentive award, is more than $4,000 lower than the maximum $370,000 listed in the Notice.

| LAW FIRM | EXPENSES |
|---|---|
| Pomerantz LLP | $345,524.22 |
| Rosen Law Firm, P.A. | $16,567.96 |
| Bragar, Eagel & Squire, P.C. | $120 |
| Levi & Korsinsky, LLP | $3,409.17 |
| TOTAL | $365,621.35 |

86.    The expenses requested are reflected in the records of Plaintiffs' Counsel, prepared in the normal course of business, and are an accurate record of the expenses incurred.  *See* Exs. B-E.  The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action.  The expenses were incurred largely in conjunction with experts, discovery, mediation, private investigation, and court costs.  These expenses were all incurred for the benefit of the Class, and as explained in the Fee Motion, are of the type generally billed to, and reimbursed by, private clients.

87.    From the beginning of the case, Plaintiffs' Counsel were aware that they might never recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved.  Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of funds advanced by them to prosecute this Action.  Thus, Plaintiffs' Counsel were

24

31

motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

88.     In view of the complex nature of the Action, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.  Accordingly, Co-Lead Counsel respectfully submits that the request for expenses be granted.

## VIII.  PLAINTIFFS' REQUEST FOR AWARDS IS REASONABLE AND SHOULD BE APPROVED

89.     Pursuant to the PSLRA (15 U.S.C. § 78u-4(a)(4)), Plaintiffs each seek modest reimbursement awards of $10,000 in recognition of their time and effort expended as Class representatives.

90.     As detailed in the Plaintiffs' declarations, each actively participated in the litigation by, *inter alia*: (i) reviewing all pleadings, motions, and other documents; (ii) frequently communicating with counsel concerning the status of the case, court documents, strategy, and settlement discussion; (iii) searching through personal records to produce documents and information responsive to Defendants' discovery requests; (iv) preparing and sitting for depositions; (v) consulting with Co-Lead Counsel regarding pursuing mediation, the overall settlement prospects and objectives, and status of the Parties' negotiations; and (vi) approving the Settlement.  *See* Exs. F-H.

91.     Plaintiffs should be compensated for their time and efforts in participating in this litigation.  Courts routinely grant substantial awards to lead plaintiffs as fully detailed in the Fee Motion.  Plaintiffs conferred substantial benefit upon the Class due to their significant efforts as identified in the paragraph above and in their declarations.  Thus, Co-Lead Counsel believe the

25

requested awards of $10,000 each ($30,000 in total) for their time and efforts spent on behalf of the Class would be fair and reasonable.

## IX.   CONCLUSION

92.   In view of the significant recovery to the Class, the substantial risks of this litigation, the substantial efforts of Plaintiffs' Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Plaintiffs' Counsel, Plaintiffs and Co-Lead Counsel respectfully submit that: the Settlement should be finally approved as fair, reasonable, and adequate; the Plan of Allocation should be approved as fair and reasonable; the Class be finally certified for settlement purposes only; a fee in the amount of 33 and 1/3% of the Settlement Fund should be awarded to Plaintiffs' Counsel; litigation expenses in the amount of $365,621.35 should be reimbursed in full; and Plaintiffs should be awarded $10,000 each for their costs, time, and efforts expended on behalf of the Class.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2024.

/s/ Omar Jafri_____
Omar Jafri

/s/Phillip Kim
Philip Kim

26

33

## CERTIFICATE OF SERVICE

I certify that on this 5th day of January, 2024, I electronically filed the Joint Declaration of Omar Jafri and Phillip Kim in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Certification of Settlement Class; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs, using the Court's CM/ECF system, which will be sent electronically to all counsel of record.

/s/ *Omar Jafri*