## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| LUIS TORRES, ALLIA DEANGELIS, DARRICK INMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BERRY CORPORATION, ARTHUR T. SMITH, CARY BAETZ, GARY A. GROVE, BRENT S. BUCKLEY, KAJ VAZALES, and EUGENE J. VOILAND, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:20-cv-03464-S <br> ) <br> ) <br> ) JUDGE KAREN G. SCHOLER <br> ) <br> ) <u>CLASS ACTION</u> <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
## <u>SETTLEMENT AND PLAN OF ALLOCATION</u>

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT........................................................................................1

II.   PRELIMINARY APPROVAL AND NOTICE ...............................................................3

III.  THE SETTLEMENT IS FAIR, REASONABLE,  AND ADEQUATE AND
      WARRANTS FINAL APPROVAL.................................................................................3

      A.    Legal Standards...................................................................................................3

      B.    Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class ..........5

      C.    The Settlement Was Negotiated At Arm's-Length................................................7

      D.    The Settlement Provides Adequate Relief, Given the Cost, Risk, and Delay
            of Trial and Appeal.............................................................................................8

      E.    The Stage of the Proceedings and the Amount of Discovery Completed...........13

      F.    The Range and Certainty of Possible Recovery ................................................13

      G.    The Opinion of Co-Lead Counsel, Plaintiffs, and Absent Class Members ........15

      H.    The Settlement Treats All Class Members Equitably ........................................16

      I.    The Additional Rule 23(e) Factors Support Approval ......................................17

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................19

V.    THE NOTICE OF SETTLEMENT SATISFIES  RULE 23 AND DUE PROCESS
      REQUIREMENTS........................................................................................................20

VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY APPROVED.........................22

VII.  CONCLUSION............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
C.A. No. 4:17-CV-3852, 2019 U.S. Dist. LEXIS 17652 (S.D. Tex. Jan. 30, 2019)................5

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009)......................................................................................9

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ....................................................................................18

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001)......................................................................................6

*Billitteri v. Sec. Am., Inc.*,
No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 92713 (N.D. Tex. Aug. 4, 2011)............6, 8, 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................18

*Buettgen v. Harless*,
C.A. No. 3:09-CV-791-K, 2011 U.S. Dist. LEXIS 53888 (N.D. Tex. May 19, 2011) .............6

*Buettgen v. Harless*,
Civil Action No. 3:09-cv-00791-K, 2013 U.S. Dist. LEXIS 193649
(N.D. Tex. Nov. 13, 2013)........................................................................................10

*Buford v. Cargill, Inc.*,
C.A. No. 05-0283, 2012 U.S. Dist. LEXIS 161232 (W.D. La. Nov. 8, 2012)........................18

*Celeste v. Intrusion Inc.*,
No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841 (E.D. Tex. Dec. 16, 2022) ...... *passim*

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051 (W.D. La. Feb. 11, 2015)...................12, 17, 22

*Claudet v. Cytec Ret. Plan*,
C.A. No. 17-10027 SECTION "L"(1), 2020 U.S. Dist. LEXIS 103040 (E.D. La. June
12, 2020) ..............................................................................................................14

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977)............................................................................. *passim*

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ..............................................................................22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
C.A. No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143 (N.D. Tex. Apr. 25, 2018) .. *passim*

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008)......................................................................................20

ii

*Fishoff v. Coty Inc.*,
   No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242 (S.D.N.Y. Jan. 25, 2010)...................10

*Glickenhaus & Co. v. Household Int'l Inc.*,
   787 F.3d 408 (7th Cir. 2015)...................................................................................................11

*Gottlieb v. Wiles*,
   11 F.3d 1004 (10th Cir. 1993) ...............................................................................................12

*Hampton v. Aqua Metals, Inc.*,
   No. 17-cv-07142-HSG, 2021 U.S. Dist. LEXIS 192236 (N.D. Cal. Oct. 5, 2021)................17

*Hays v. Eaton Grp. Attys., LLC*,
   C.A. No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029 (M.D. La. Feb. 4, 2019)..........7, 8

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sept. 4, 2018).................19

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498 (D. Nev. Oct. 19,
   2012) .......................................................................................................................................15

*In re Advanced Battery Techs. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014)............................................................................................10

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) .....................................................................................9

*In re Chesapeake Energy Corp.*,
   C.A. No. H-21-1215, 2021 U.S. Dist. LEXIS 158564 (S.D. Tex. Aug. 23, 2021) .........4, 5, 21

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982)..................................................................................................19

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981)....................................................................................................6

*In re Educ. Testing Serv. Praxis Principles of Learning and Teaching, Grades 7-12 Litig.*,
   447 F. Supp. 2d 612 (E.D. La. 2006) ......................................................................................14

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007)..................9

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004)..............................................................................................9

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012).............................................................................................19

*In re MicroStrategy, Inc. Sec. Litig.*,
   150 F. Supp. 2d 896 (E.D. Va. 2001) ......................................................................................16

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977)..................................................................................................21

iii

*In re OCA, Inc. Sec. & Deriv. Litig.*,
  C.A. No. 05-2165 SECTION R(3), 2008 U.S. Dist. LEXIS 84869 (E.D. La. Oct. 17,
  2008) ..........................................................................................................................22

*In re OCA, Inc. Sec. & Derivative Litig.*,
  C.A. No. 05-2165 SECTION R(3), 2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2,
  2009) ..........................................................................................................................11

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13, 2011) ...............19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) .....................................................................................18

*In re Sprint Corp. ERISA Litig.*,
  443 F. Supp. 2d 1249 (D. Kan. 2006) ......................................................................................12

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012) ................................................................................10, 11

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................................................10

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017)......................................................................................................7

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ..................................................................................4, 7

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983)................................................................................................4, 12

*Manchaca v. Chater*,
  927 F. Supp. 962 (E.D. Tex. 1996) ..........................................................................................13

*Miller v. Republic Nat'l Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977)......................................................................................................4

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982)...................................................................................................14

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983)...............................................................................4, 7, 8, 13, 15

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) .......10, 11, 15

*Stott v. Capital Fin. Servs.*,
  277 F.R.D. 316 (N.D. Tex. 2011)..............................................................................................11

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................................................11

*Sved v. Chadwick*,
  783 F. Supp. 2d 851 (N.D. Tex. 2009) ................................................................................8, 13

**Statutes**

Private Securities Litigation Reform Act ........................................................................8, 20, 22

Securities Act of 1933 ......................................................................................................2

Securities Exchange Act of 1934 ....................................................................................2

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................20, 21

Fed. R. Civ. P. 23(e)(2) ..................................................................................................4

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................5

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) ................................................................................17

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................16

Fed. R. Civ. P. 23, Advisory Committee Notes to 2018 Amendments...........................5

**Treatises**

Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023)...............................12

**Codes**

15 U.S.C. § 77z-1(a)(7)....................................................................................................20, 21

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Luis Torres and Allia DeAngelis, and additional Plaintiff Darrick Inman (collectively, "Plaintiffs"), on behalf of themselves and the Class, respectfully submit this Memorandum of Law in support of their unopposed motion for final approval of class action settlement (the "Motion") and request entry of an order finally approving the proposed settlement and Plan of Allocation and certifying the Class.[1]

## I.    PRELIMINARY STATEMENT

Subject to this Court's approval, the proposed Settlement resolves all claims alleged in the Action against Defendants[2] in exchange for a $2,500,000 cash payment to the Class.  Plaintiffs and their counsel respectfully submit that the Settlement is an excellent result for the Class, resulting from vigorous litigation and extensive arm's-length negotiations among the Parties with the assistance of a well-respected mediator, Jed D. Melnick, Esq. ("Melnick" or the "Mediator") of JAMS.

---

[1] All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement dated September 18, 2023 (ECF No. 150-1) ("Stipulation") or the Joint Declaration of Omar Jafri and Phillip Kim in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Declaration" or "Joint Decl."), being filed concurrently herewith.  The Joint Declaration is attached to the Appendix in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.  References to "Exhibits" or "Ex." are to the Exhibits included in the Appendix.

[2] Defendants are Berry Corporation ("Berry" or the "Company"), Arthur T. Smith, Cary Baetz, Gary A. Grove, Brent S. Buckley, Kaj Vazales, and Eugene J. Voiland (collectively, the "Individual Defendants" and, together with Berry, "Defendants" and, together with Plaintiffs, the "Parties").

As described below and in the Joint Declaration,[3] Plaintiffs and Co-Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy. The Settlement is a fair and reasonable compromise given the risks and expenses of continued litigation. While Plaintiffs and Co-Lead Counsel believe that the Claims have merit, there is no guarantee of success. Weighed against such risks, the Settlement, which represents between approximately 8% to 10% of the estimated damages for the claims raised under the Securities Exchange Act of 1934 ("Exchange Act"), is well within the range of reasonableness, offering immediate relief for Class Members. The percentage recovery under the Securities Act of 1933 ("Securities Act") is higher after accounting for a potential negative causation defense. As such, the resolution of the Action with the recovery of $2,500,000 for the Class, which was based on both sides accepting a mediator's proposal, is beneficial and in the best interests of the Class.

For the reasons discussed herein, Plaintiffs and Co-Lead Counsel believe that the proposed Settlement is in the best interests of the Class and is fair, reasonable, and adequate. It satisfies the requirements of Rule 23 and the Fifth Circuit and provides a significant recovery for the Settlement Class. The reaction of the Class further confirms the fairness, reasonableness, and adequacy of the Settlement. Specifically, to date, no objections have been received from any Class Member and there have been no requests for exclusion. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and certify the Class for purposes of settlement only pursuant to Rules 23(a) and 23(b)(3).

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this Motion, the Court is referred to it for factual and procedural background, a detailed history of the efforts undertaken by Plaintiffs and Co-Lead Counsel, the settlement negotiations, dissemination of Notice, further factors bearing on the fairness and reasonableness of the Settlement and Plan of Allocation, and Co-Lead Counsel's request for an award of attorneys' fees and expenses.

2

Plaintiffs also request that the Court approve the proposed Plan of Allocation, as set forth in the Notice published on the Settlement website. The Plan of Allocation, which was developed by Co-Lead Counsel in consultation with Plaintiffs' damages expert, fairly distributes the Net Settlement Fund in accordance with the claims in this litigation, providing each Class Member who files a valid claim a pro rata share based upon his or her recognized loss. It is substantively similar to plans that have been approved and used to allocate recoveries in other securities class actions. Accordingly, the Plan of Allocation is fair, reasonable, and adequate and warrants final approval.

## II.    PRELIMINARY APPROVAL AND NOTICE

On October 18, 2023, the Court granted preliminary approval of the Settlement, which was entered on October 19, 2023. ECF No. 151 (the "Preliminary Approval Order"). The Court also approved the proposed forms of Notice. *Id.* at ¶ 8. Pursuant to and in compliance with the Preliminary Approval Order, beginning on November 16, 2023, the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), caused the Postcard Notice to be mailed to potential Class Members. *See* Ex. A, ¶¶ 3-6 (Declaration of Jack Ewashko of A.B. Data ("Ewashko Decl.")). As of January 3, 2024, 15,664 Postcard Notices have been mailed. *Id.* at ¶ 6. In compliance with the Court's Preliminary Approval Order, the Summary Notice was also transmitted over *PR Newswire*, and the Notice and Claim Form posted on A.B. Data's website as described further below. *Id.* at ¶¶ 7, 9.

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

### A.    Legal Standards

Courts within this Circuit and throughout the country have long recognized a strong public policy and presumption in favor of settlements, particularly in the class action context. *See Cotton*

3

*v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (settlements are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").[4] Further, "courts are to adhere to a strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010). Accordingly, although the issue of whether a proposed settlement should be granted final approval is a matter within the sound discretion of the district court, the court "should not decide the merits of the action or attempt to substitute its own judgment for that of the parties" in reviewing class settlements. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Klein*, 705 F. Supp. 2d at 649 ("Where the court finds that counsel have adequately represented the interests of the class, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").

Since Rule 23(e)'s amendments in December 2018, courts in this Circuit have analyzed settlements under a combined analysis which includes both Rule 23(e)(2) and the Fifth Circuit's *Reed* factors.[5] *See*, *e.g.*, *In re Chesapeake Energy Corp.*, C.A. No. H-21-1215, 2021 U.S. Dist.

---

[4] All citations and internal quotations are omitted, unless otherwise noted.

[5] Pursuant to Rule 23(e)(2), which governs final approval, a court's inquiry as to whether a settlement is fair, reasonable, and adequate must consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The *Reed* factors closely parallel and overlap with Rule 23(e)(2) and include: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) the plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

LEXIS 158564, at *15 (S.D. Tex. Aug. 23, 2021) ("[B]ecause the Rule 23 and *Reed* factors overlap, courts in this circuit often combine them in analyzing class settlements.") (negative treatment on other grounds). The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments Rule 23; *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, C.A. No. 4:17-CV-3852, 2019 U.S. Dist. LEXIS 17652, at *7 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in Fed. R. Civ. P. 23 (e)(2) as well as the Fifth Circuit's *Reed* factors").

Thus, the combined inquiry includes consideration of the following factors: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length (*i.e.*, it was not the produce of fraud or collusion); (3) whether the relief provided for the class is adequate considering the duration, costs, risks, and delay of trial and appeal; (4) the stage of the proceedings and amount of discovery completed; (5) the probability of success on the merits; (6) the range and certainty of recovery; (7) the opinions of the participants, including class counsel, class representatives, and the absent class members; and (8) whether the proposal treats class members equitably relative to each other. These factors are satisfied here.

### B.    Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Plaintiffs and Co-Lead Counsel adequately represented the Class throughout the litigation and resolution of the Action. Plaintiffs' interests here are the same as other Class Members having purchased shares of the same stock, based on the same materially false and misleading statements or omissions alleged

5

to be made by Defendants, and having the same interest in obtaining the largest recovery possible. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.").

Plaintiffs monitored and actively participated in the litigation, including producing documents and sitting for depositions, maintained regular contact with their counsel regarding the Action's progress, and evaluated and support the proposed Settlement. *See* Exs. F, G, and H. *See also Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001) (adequate class representatives in securities fraud actions are "informed and can demonstrate they are directing the litigation"); *Buettgen v. Harless*, C.A. No. 3:09-CV-791-K, 2011 U.S. Dist. LEXIS 53888, at *14-15 (N.D. Tex. May 19, 2011) (class representatives adequate because they were informed of the progress of the case; moved to be appointed lead plaintiff; were producing documents; and one of two proposed representatives had been deposed).

Plaintiffs also adequately represented the Class by selecting qualified counsel. Co-Lead Counsel are highly experienced in prosecuting securities class actions and other complex litigation, with a long and successful track record in such cases. *See* ECF Nos. 112-3, 112-4 (Co-Lead Counsel firm resumes); *see also Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 92713, at *56-57 (N.D. Tex. Aug. 4, 2011) ("the trial court is entitled to rely upon the judgment of experienced counsel for the parties") (quoting *Cotton*, 559 F.2d at 1330). Plaintiffs' Counsel adequately represented the Settlement Class by, among other things, thoroughly investigating the allegations in the Complaint; conducting interviews with former employees of the Company; drafting the Complaint; fully analyzing and addressing Defendants' motion to dismiss arguments; fully analyzing and addressing Defendants' arguments in opposition to class

6

certification; conducting extensive discovery that included the production of documents, response to interrogatories, and depositions; consulting with experts on the industry, market efficiency, loss causation, and damages issues; engaging in a rigorous mediation process that included a full-day virtual mediation session before the Mediator; and securing preliminary approval of the Settlement and moving to enforce the Settlement. Joint Decl. ¶ 6. Therefore, Plaintiffs' Counsel were well-informed about the strengths and weaknesses of the Action, enabling them to appropriately evaluate the Settlement's fairness, reasonableness, and adequacy. *See*, *e.g.*, *Hays v. Eaton Grp. Attys., LLC*, C.A. No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *23-24 (M.D. La. Feb. 4, 2019) (representation adequate where counsel has "substantial experience in litigating complex class actions and is familiar with the factual and legal issues of the case"). Accordingly, this factor favors approval of the Settlement.

### C.    The Settlement Was Negotiated At Arm's-Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length," and *Reed* calls for an examination into whether there was "fraud or collusion behind the settlement." *Reed*, 703 F.2d at 172. Where a settlement results from arm's-length negotiations between experienced counsel, there is a strong presumption that the settlement is fair, adequate, and reasonable. *Klein*, 705 F. Supp. 2d at 650 ("courts are to adhere to a strong presumption that an arms-length class action settlement is fair"). Courts recognize that "[t]he involvement of an experienced and well-known mediator is also a strong indicator of procedural fairness." *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017). Here, the proposed Settlement was the product of extensive arm's-length negotiations, facilitated by a mediator experienced in securities class actions, Mr. Melnick, among highly experienced counsel

7

knowledgeable about the Action.[6] *See Erica P. John Fund, Inc. v. Halliburton Co.*, C.A. No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, at \*18 (N.D. Tex. Apr. 25, 2018) ("the settlement was obtained through formal mediation . . . which strongly suggests that the settlement was not the result of improper dealings"); *Billitteri*, 2011 U.S. Dist. LEXIS 92713, at \*44 (similar).  The proposed Settlement was achieved only after a full-day virtual mediation session followed by additional negotiations over the next two months, all overseen by Mr. Melnick, and is the result of the Parties' acceptance of the mediator's proposal.  *See Sved v. Chadwick*, 783 F. Supp. 2d 851, 861 (N.D. Tex. 2009) (fact that "settlement agreement was the product of a hard-fought mediation" supports finding of no collusion or fraud).  This arm's-length process supports a presumption of fairness, free of fraud or collusion.

**D.     The Settlement Provides Adequate Relief, Given the Cost, Risk, and Delay of Trial and Appeal**

Rule 23(e)(2)(C) directs the Court to evaluate whether the relief provided for the class is fair, reasonable, and adequate considering the "costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C).  The second *Reed* factor also instructs the Court to consider "the complexity, expense, and likely duration of the litigation."  *Reed*, 703 F.2d at 172.  This factor is satisfied where the settlement provides immediate relief for the class and where "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be appealed."  *Hays*, 2019 U.S. Dist. LEXIS 17029, at \*25.  "Even where the claims are not particularly complex, approval of settlement is favored where settling avoids the risks and burdens of potentially protracted litigation."  *Id*.

---

[6] Like Plaintiffs, Defendants were at all times represented by highly experienced and sophisticated counsel at BakerHostetler LLP.

Securities class actions are notoriously complex, often taking exceptionally long to litigate, making settlement favorable. *Cotton*, 559 F.2d at 1331 ("It is common knowledge that class action suits have a well deserved reputation as being most complex."); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007) ("[s]ecurities class actions are generally complex and expensive to prosecute"). This case was no exception – the claims are complex and it is certain that continued litigation would have been costly, risky, and protracted.

Plaintiffs' first hurdle would be overcoming the outstanding motion for class certification, for which there is no guarantee of success. Indeed, the Court granted Defendants' Motion For Evidentiary Hearing on Class Certification based in part on Defendants' arguments that the Parties each relied heavily on expert testimony that had not been tested. ECF Nos. 137, 139. "When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). And "even if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004).

And although Plaintiffs were successful in overcoming Defendants' motion to dismiss, the Court's Order highlighted some of the issues Plaintiffs will face. *See* ECF No. 83. First, the Court held only that "Plaintiffs have adequately specified at least some allegedly misleading statements or omissions," leaving a question open as to which statements might be sustained at summary judgment or at trial. *Id.* at 2. Defendants continue to deny all of Plaintiffs' allegations and would likely put forth strong arguments as to falsity and loss causation, including their argument

9

throughout the litigation that the alleged corrective disclosures did not reveal any "new" information.  *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *62 (N.D. Tex. Nov. 8, 2005) ("If litigation were to proceed, the issues would be hotly disputed by the parties.  Litigation relating to such fact-intensive and difficult-to-prove claims would . . . be extraordinarily complicated and time consuming."); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) ("Securities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet.").  Further, the Order states that "the Court anticipates that it will revisit [scienter] at a later phase in the litigation after discovery takes place." ECF No. 83 at 2; *see In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the . . . litigation to assess the risks involved.").  Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010); *see also Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841, at *13-14 (E.D. Tex. Dec. 16, 2022) ("Securities claims are particularly difficult to prove because of the high bar for establishing falsity and scienter.").  As such, it is quite uncertain whether Plaintiffs could prevail at summary judgment and trial.

If the case did proceed to trial, Plaintiffs would have to prove loss causation and damages, and defenses thereto pose substantial risks to Plaintiffs' potential recovery at trial because each side would have presented expert testimony on the issue.  "One cannot predict which expert's testimony or methodology a jury would find reliable.  If the jury agreed with Defendants, Plaintiffs would have had their damages significantly reduced or their claims fail as a matter of law." *Buettgen v. Harless*, 2013 U.S. Dist. LEXIS 193649, at *28 (N.D. Tex. Nov. 13, 2013); *In re*

*Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1242 (D.N.M. 2012) ("Damages in this case, as is common in securities class actions, would likely have been reduced to a 'battle of the experts,' and it is virtually impossible to predict with any certainty which testimony would be credited."). Finally, "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief." *Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *63; *see*, *e.g.*, *Glickenhaus & Co. v. Household Int'l Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation).

In sum, success is not guaranteed. Continuing litigation would present substantial risks and likely take years, with the addition of extensive costs. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *In re OCA, Inc. Sec. & Derivative Litig.*, C.A. No. 05-2165 SECTION R(3), 2009 U.S. Dist. LEXIS 19210, at *38-39 (E.D. La. Mar. 2, 2009) (continued litigation, including through discovery, class certification, trial, and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement"). The Settlement provides an immediate favorable result as opposed to the risk of a smaller recovery, or no recovery at all, after years of delay and mounting expense. *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case.").

The value of the immediate recovery under the $2.5 million Settlement significantly outweighs "'the possibility of some greater relief at a later time, taking into consideration the

11

additional risks and costs that go hand in hand with protracted litigation.'" *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993) (abrogated on other grounds)).  This is particularly true here, as according to the damages expert retained by Co-Lead Counsel, when using an 80/20 multi-trader model,[7] the immediate recovery represents between approximately 8% to 10% of the maximum potential recoverable damages of between $25.3 and $28.1 million for the Exchange Act claims if Plaintiffs prevailed on all claims.[8]  Such a recovery is well within the range of reasonableness.  *See* Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023)[9] at pp. 17-18, Figs. 18 & 19 (median recovery in securities class actions from 2013 to 2022 ranged from 1.5% to 2.5%; for cases with losses in the range of $20 million to $49 million the median recovery from 2011 to 2022 was 5.2%); *see also Celeste*, 2022 U.S. Dist. LEXIS 226841, at *20 (considering the range of possible recovery "in light of the 'likelihood of prevailing at trial and other factors'" and noting that it is common for "plaintiffs to recover only three-to-six cents on the dollar" in class actions) (quoting *Maher v. Zapata Corp.*, 714 F.2d at 460); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051, at *22 (W.D. La. Feb. 11, 2015) (similar).  When

---

[7] The 80/20 multi-trader model has been endorsed by Cornerstone Research, an economic consulting firm frequently retained by defendants in class action securities litigation.  *See* William H. Beaver, James K. Malernee and Michael C. Keeley, "Stock Trading Behavior and Damage Estimation in Securities Cases," Cornerstone Research working paper, 1993.

[8] The estimated damages for the Securities Act claims are likely lower after accounting for the defense of negative causation.  There is no double recovery for the Securities Act claims and the Exchange Act claims given that the Class Period overlaps.

[9] Available at https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--action-litigation--2022-full-.html.

considering the substantial risks, costs, and delay of continued litigation discussed above, Plaintiffs respectfully submit that the Settlement represents a favorable recovery.

### E.     The Stage of the Proceedings and the Amount of Discovery Completed

The next factor that the Court must assess is "the stage of the proceedings and the amount of discovery completed." *Reed*, 703 F.2d at 172. The inquiry under this factor is whether the plaintiff has a sufficient understanding of the strengths and weaknesses of the case "to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate." *Sved*, 783 F. Supp. 2d at 861. As discussed above, at the time of Settlement, Plaintiffs' Counsel had conducted a thorough investigation and substantial discovery. *See also* Joint Decl. ¶ 58. This included drafting and filing the detailed Complaint, successfully opposing a motion to dismiss, briefing the motion for class certification, reviewing and analyzing tens of thousands of documents, defending and taking numerous depositions, and participating in a lengthy, hard-fought mediation process. *Id.* at ¶ 75. Thus, by the time an agreement was reached on the Settlement, Plaintiffs and their counsel had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

### F.     The Range and Certainty of Possible Recovery

"A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case," as well as the range of possible recovery in the action. *Reed*, 703 F.2d at 172. "In ascertaining whether a settlement falls within the range of possible approval, courts will compare the settlement amount to the relief the class could expect to recover at trial, i.e., the strength of the plaintiff's case." *Halliburton*, 2018 U.S. Dist. LEXIS 69143, at \*20-21. In making this assessment, "[t]he trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained." *Cotton*, 559 F.2d at 1330

("inherent in compromise is a yielding of absolutes and an abandoning of highest hopes"); *see also Halliburton*, 2018 U.S. Dist. LEXIS 69143, at *20-21 (the Court should not "try the case via the fairness hearing because the very purpose of the compromise is to avoid the delay and expense of such a trial").  Accordingly, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982); *Claudet v. Cytec Ret. Plan*, C.A. No. 17-10027 SECTION "L"(1), 2020 U.S. Dist. LEXIS 103040, at *16-17 (E.D. La. June 12, 2020) (there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion").  Indeed, "final approval is frequently given to settlements even when the settlement amount is a very small fraction of the damages amount projected by the Plaintiffs."  *Halliburton*, 2018 U.S. Dist. LEXIS 69143, at *21; *see also In re Educ. Testing Serv. Praxis Principles of Learning and Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 622 (E.D. La. 2006) ("In considering the range of possible recovery, the Court need not consider recoveries that are beyond the range of the most minimal probability.").

Here, under the terms of the Settlement, the Class will receive $2.5 million in exchange for the release of all Claims against Defendants.  Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their claims pursuant to the Exchange Act at both summary judgment and after a jury trial, if the Court certified the same class period as the Class Period, and if the Court and jury accepted Plaintiffs' damages theory, the total maximum damages would be approximately $28.1 million.  This is the best-case scenario.  So, the $2.5 million Settlement represents approximately 9% of the maximum recoverable damages if Plaintiffs prevailed on all Exchange

14

Act claims. This percentage is well within the range of reasonableness that courts routinely approve. *See, e.g.*, *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *20 (approving $3.25 million settlement noting "while the high end of the class's potential recovery was $42.7 million, the low end of the class's potential recovery was $0.00—with the balance of probabilities weighing in favor of recovery closer to the low end than to the high end"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498, at *9 (D. Nev. Oct. 19, 2012) (approving settlement representing 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years"). As discussed above, given the complexities, uncertainties, and expense inherent in continued litigation, the proposed Settlement is in the best interests of the Class, and importantly, falls within the range of reasonableness.

### G.   The Opinion of Co-Lead Counsel, Plaintiffs, and Absent Class Members

Courts must also consider "the opinions of the class counsel, class representatives, and absent class members" in determining the propriety of a settlement. *Reed*, 703 F.2d at 172. "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *72 ; *see also Billitteri*, 2011 U.S. Dist. LEXIS 92713, at *56-57 (quoting *Cotton*, 559 F.2d at 1330) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.")

Here, Plaintiffs' Counsel have considerable experience in complex class action and securities litigation and had substantial knowledge of the strengths and weaknesses of the case prior to the extensive arm's-length settlement negotiations before an experienced Mediator,

ultimately concluding that the terms of the Settlement were fair, reasonable, adequate and in the best interests of the Class. Plaintiffs also support the proposed Settlement. *See* Exs. F., G. and H.

In addition, the Court should consider the reaction of the Class, including the number of requests for exclusion and any objection to the Settlement. *See In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906 (E.D. Va. 2001) ("perhaps the most significant factor" in determining whether a settlement is adequate is the class's reaction to it). The deadline to file objections and requests for exclusion is January 7, 2024, and to date, no objections or requests for exclusion have been received. Joint Decl. ¶ 8; Ewashko Decl. ¶¶ 10-11. This reaction weighs heavily in favor of final approval of the proposed Settlement. *See Halliburton*, 2018 U.S. Dist. LEXIS 69143, at \*22 ("Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement").[10]

### H. The Settlement Treats All Class Members Equitably

Rule 23(e)(2)(D) requires that courts evaluate whether a settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Here, the Plan of Allocation is substantially similar to the plans of allocation in comparable securities class action settlements, with all members of the Class, including Plaintiffs, recovering a pro rata distribution from the Net Settlement Fund based on the same recognized loss calculation formula. *See* Long Notice (ECF No. 150-3) at pp. 10-14; *see also Celeste*, 2022 U.S. Dist. LEXIS 226841, at \*15-16 (where plan of allocation "formulated by competent and experienced counsel" and provides each "class member a pro rata share . . . based on the number of shares purchased during the relevant period"

---

[10] If any objections or requests for exclusion are received after this Motion is filed and are still considered timely, Co-Lead Counsel will address them in the reply brief, which will be filed with the Court no later than January 30, 2024.

distribution is equitable); *LHC Grp.*, 2015 U.S. Dist. LEXIS 26051, at *34-35 (approving plan of allocation where class members receive pro rata share based on investment loss).

### I.    The Additional Rule 23(e) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) considers whether the relief is adequate, taking into account "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

First, the procedures for processing the claims of the Class and distributing the Settlement proceeds to eligible claimants here are widely used in securities class action litigation.  The proceeds of the Settlement will be distributed to Class Members who submit a valid and timely claim to the Court-appointed Claims Administrator, A.B. Data.[11]  A.B. Data will provide claimants with an opportunity to cure any deficiencies in the claim or request review of the denial of their claim by the Court and will then distribute to claimants their pro rata share of the Net Settlement Amount upon approval of the Court.  Stipulation at ¶ 7.11(d).  If after six months from the initial distribution and after payment of any Notice and Administration Costs, Taxes, and attorneys' fees and expenses, any funds remain in the Net Settlement Fund, a second distribution shall be made to Authorized Claimants if economically feasible.  Stipulation at ¶ 7.7.  Further re-distributions

---

[11] A.B. Data has been approved by the Court in the Preliminary Approval Order and is a well-known claims administrator with substantial experience in administering class action securities fraud settlements.  *See, e.g.*, *Hampton v. Aqua Metals, Inc.*, No. 17-cv-07142-HSG, 2021 U.S. Dist. LEXIS 192236, at *33 (N.D. Cal. Oct. 5, 2021) ("[t]he Court finds that A.B. Data has extensive experience implementing notification and claims administration programs in class actions").

will be repeated until it is no longer feasible or economical to do so. *Id.  See Celeste*, 2022 U.S. Dist. LEXIS 226841, at *15-16 (finding similar process fair and reasonable).

Second, as set forth in the Notice, Co-Lead Counsel have applied for a fee of 33 and 1/3% of the Settlement Fund for services rendered on behalf of the Class.  Co-Lead Counsel's accompanying Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses fully details the terms of the proposed attorneys' fees and explains the reasonableness of the fee request in light of the work performed, results obtained, and risks in the litigation.[12]  As detailed therein, the requested fee is reasonable in light of the work performed and the results obtained, and is consistent with other fee awards in comparable complex class action. *See, e.g.*, *Halliburton*, 2018 U.S. Dist. LEXIS 69143, at *42 ("The 33 ⅓ % requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[i]t is very common to see 33% contingency fees in cases with funds of less than $10 million); *Buford v. Cargill, Inc.*, C.A. No. 05-0283, 2012 U.S. Dist. LEXIS 161232, at *6 (W.D. La. Nov. 8, 2012) ("district courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee"); *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *30 (awarding 33 ⅓ % of $3.25 million settlement).  Further, Class Members had an opportunity to comment on Co-Lead Counsel's fee request before the Settlement Hearing and to date, no objections have been received.  Joint Decl. ¶ 8.  Importantly, approval of the requested attorneys'

---

[12] Both the United States Supreme Court and the Fifth Circuit recognize that counsel should be compensated for efforts expended in creating a common fund for the benefit of a class. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).

18

fees is separate from approval of the Settlement, and pursuant to the Settlement Stipulation, the Settlement cannot be terminated based on any ruling on attorneys' fees. Stipulation at ¶ 8.3.

Last, with respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement under which Defendants may terminate the Settlement in the event that requests for exclusion from the Settlement Class reach a certain threshold. *See* Stipulation at ¶ 11.4. As is customary in securities class action settlements, the Supplemental Agreement terms are confidential to "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *33 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Halliburton*, 2018 U.S. Dist. LEXIS 69143, at *23 (approving settlement with "supplemental confidential agreement" regarding opt out numbers).

For all of the above reasons, Plaintiffs respectfully submit that the Court should grant final approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to approval of the settlement as a whole in that the plan must be "fair, adequate and reasonable." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *65 (E.D. Mich. Dec. 13, 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.").

Here, the proposed Plan of Allocation, which was developed in consultation with Plaintiffs' damages expert, is fair, reasonable, and adequate. The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a pro rata basis based on their recognized loss. Joint Decl. at ¶¶ 66-68. The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the Exchange Act. Moreover, the Plan of Allocation was disclosed in the Notice that was distributed to potential Class Members and nominees and, to date, there have been no objections to the Plan of Allocation. *See* Ewashko Decl. at Ex. B; Joint Decl. at ¶ 54. Thus, the Plan of Allocation is fair and reasonable.

**V.     THE NOTICE OF SETTLEMENT SATISFIES  RULE 23 AND DUE PROCESS REQUIREMENTS**

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. § 77z-1(a)(7). A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). The Court has already found that the notice program utilized here, as set forth in the Preliminary Approval Order, meets these requirements. ECF No. 151 at ¶ 17.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated 15,664 copies of the Postcard Notice via First-Class Mail to all Class Members who

can be identified through reasonable investigation. *See* Ewashko Decl. at ¶ 6, submitted herewith. The Claims Administrator also mailed 4,967 Notice Packets, and caused the Long Notice and the Claim Form to be posted to the Claims Administrator's website. *Id.*, ¶¶ 6, 9. In addition, the Claims Administrator transmitted the Summary Notice over *PR Newswire*. *Id.*, ¶ 7. Finally, the Claims Administrator created a toll-free telephone number and website to assist potential Class Members with inquiries regarding the litigation, the Settlement, and the claims process. *Id.*, ¶ 8.

The Notice provides Class Members with, among other things, (i) an explanation of the nature of the litigation and the Claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional information about the litigation, by contacting Class Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 77z-1(a)(7); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *Chesapeake Energy*, 2021 U.S. Dist. LEXIS 158564, at *55 ("Due process is satisfied if the notice provides class members with the information reasonably necessary for them to make a decision whether to object to the settlement.") (negative treatment on other grounds). The Notice also provides recipients with information on how to submit a Proof of Claim and Release. Ewashko Decl. at Ex. B.

Plaintiffs and their counsel have satisfied all of the elements of the notice plan approved by the Court. *See generally* Joint Decl. Accordingly, the notice program implemented constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B). Courts routinely find that comparable notice programs meet the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *LHC Grp.*, 2015 U.S. Dist. LEXIS 26051, at *11-14; *In re OCA, Inc. Sec. & Deriv. Litig.*, C.A. No. 05-2165 SECTION R(3), 2008 U.S. Dist. LEXIS 84869, at *46-48 (E.D. La. Oct. 17, 2008).

## VI.    THE SETTLEMENT CLASS SHOULD BE FINALLY APPROVED

"[T]he United States Court for the Fifth Circuit has indicated a class may be certified for settlement purposes [even] when doubt exists as to certification for litigation[.]" *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 280 (W.D. Tex. 2007). The Court's Preliminary Approval Order stated that the "Court finds and preliminarily concludes that the perquisites of class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied for the Class" for the purposes of Settlement. *See* ECF No. 151 at ¶ 2. No events have occurred to alter the propriety of the Court's finding that the prerequisites for class certification have been met, and no objections to certification have been received. Joint Decl. ¶ 8. For the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Supporting Memorandum (ECF No. 149), incorporated herein by reference, and the Court's Preliminary Approval Order, Plaintiffs respectfully request that the Court grant final certification to the Class under Rules 23(a) and (b)(3), including the appointment of Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel for the Class.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) approve the Settlement as fair, reasonable, and adequate; (ii) approve the Plan of Allocation as fair and reasonable pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); and (iii) certify the class for purposes of settlement only.

DATED: January 5, 2024                                    Respectfully Submitted,


**POMERANTZ LLP**

*/s/ Omar Jafri*
Joshua B. Silverman (*Pro Hac Vice*)
Omar Jafri (*Pro Hac Vice*)
Brian P. O'Connell (*Pro Hac Vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel:     (312) 377-1181
Fax:     (312) 377-1184
E-mail: jbsilverman@pomlaw.com
          ojafri@pomlaw.com
          boconnell@pomlaw.com


**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim (*Pro Hac Vice*)
Ha Sung (Scott) Kim (*Pro Hac Vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax:     (212) 202-3827
Email: pkim@rosenlegal.com
          skim@rosenlegal.com

*Lead Counsel for Plaintiffs*

**GRAVES LAW OFFICE**
Curtis C. Graves
12700 Park Central Drive
Suite 520
Dallas, Texas 75251
Telephone: (214) 321-6940

23

Facsimile: (866) 770-6949
curtis@cgraveslaw.com

**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe
Texas Bar No. 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: 972-521-6868
Facsimile: 346-214-7463
wbriscoe@thebriscoelawfirm.com

*Liaison Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Eitan Kimelman
60 E 42nd Street, Suite 4600
New York, New York 10165
Phone: 212-697-6484
Fax:    212-697-7296
Email: eitank@bgandg.com

**LEVI & KORSINSKY, LLP**
Daniel Tepper
55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
dtepper@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Marion C. Passmore  (*Pro Hac Vice*)
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-3599
Facsimile: (212) 214-0506
Email: passmore@bespc.com

*Additional Counsel for Plaintiffs*

24

## CERTIFICATE OF CONFERENCE

This is to certify that counsel for Plaintiffs conferred with counsel for Defendants regarding Plaintiffs' motion. On January 5, 2024, counsel for Defendants confirmed to Plaintiffs over email that they do not oppose the motion and take no position on Plaintiffs' request for attorneys' fees, litigation expenses and reimbursement awards to Plaintiffs.

*/s/ Omar Jafri*

25

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 5, 2024, I served a copy of Plaintiffs' Motion For Final Approval Of Class Action Settlement And Approval Of Plan Of Allocation to counsel of record for Defendants using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

Executed on January 5, 2024

*/s/ Omar Jafri*